# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROY C. SPEGELE, individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff, | § § | No. 5:17-cv-967 |
| v. | § § | Hon. Orlando L. Garcia |
| USAA LIFE INSURANCE COMPANY, | § § | |
| Defendant. | § § § | |

## DEFENDANT USAA LIFE INSURANCE COMPANY'S
## <u>MEMORANDUM IN OPPOSITION TO CLASS CERTIFICATION</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  Factual Background ......................................................................................... 3

    A.  The flexibility of universal life insurance makes it beneficial to many consumers. ................................................................................................. 3

    B.  Background on pricing universal life policies. ....................................... 4

    C.  Mortality expectations are the driving force in USAA Life's cost of insurance rates........................................................................................... 5

    D.  The policies at issue could never have been sold if USAA Life had not taken expenses and profit into account in setting its rates. ..................... 6

    E.  USAA Life's selling representatives at times alerted policyholders that cost of insurance charges help cover profit and expenses. ...................... 7

    F.  Plaintiff purchased his UL3 policy in 1992. ......................................... 8

II.  Legal Standard ............................................................................................... 9

    A.  The Supreme Court's *Wal-Mart* and *Comcast* opinions raised the evidentiary burden a plaintiff must satisfy to win class certification. ................... 9

    B.  Plaintiff must satisfy his evidentiary burden by a preponderance of the evidence. ................................................................................................. 9

    C.  Recent cost of insurance class action rulings have denied class certification or dismissed the claims altogether.................................... 10

III.  Plaintiff cannot satisfy Rule 23(a)(4)'s "adequacy" requirement.................... 10

    A.  Plaintiff cannot satisfy Rule 23(a)(4)'s adequacy requirement because a material percentage of his proposed class would be harmed if he prevails. ......... 11

        1.  The intra-class conflict in this case. ........................................... 11

        2.  Plaintiff's "heads I win, tails you lose" artifice. ........................ 13

    B.  Plaintiff is an inadequate class representative because he abandoned nearly 30 percent of his class after two years of discovery. ............................. 14

    C.  A unique defense applicable to Plaintiff further undermines Rule 23(a)(4) adequacy as well as Rule 23(a)(3) typicality. ...................................... 16

IV.  Plaintiff cannot satisfy his burden of demonstrating that classwide proof can resolve all liability elements, damages, and affirmative defenses. .................... 17

A. The "predominance" standard............................................................. 17

B. Plaintiff has not shown how he could prove a breach of contract on a classwide basis ............................................................................... 17

C. Plaintiff cannot satisfy his burden of demonstrating that his "fraudulent concealment" allegations can be resolved on a classwide basis. ......................... 19

   1. Fifth Circuit precedent on the intersection of fraudulent concealment and class certification. ......................................... 19

   2. Plaintiff's "fraudulent concealment" theory—a linchpin of his response to USAA Life's statute of limitations defense—cannot be resolved using classwide evidence.......................................... 20

D. Plaintiff cannot satisfy his burden of demonstrating that the statute of limitations defense as to Count III can be resolved on a classwide basis............ 22

   1. Fifth Circuit precedent on statute of limitations as applied to class certification. ............................................................... 22

   2. The evidence shows the need for a separate individualized inquiry involving the statute of limitations. ....................................... 23

E. The laws of the fifty states apply, making a nationwide class impossible. .......... 24

   1. The choice of law provision in the UL3 and UL4 policies require application of the laws of all fifty states. ................................. 25

   2. Texas has adopted a rebuttable presumption applying the law of the state where the policy was purchased. ................................. 27

   3. The other relevant Restatement factors require application of the laws of all fifty states. ............................................. 28

V. Plaintiff cannot satisfy the requirements for a Rule 23(b)(2) class. ................................ 32

A. Rule 23(b)(2) certification is unwarranted unless the injunction would benefit every class member and harm none of them............................................. 32

B. Rule 23(b)(2) certification is unwarranted if the case seeks money damages and notice and opt-out privileges are necessary. ................................... 33

VI. Plaintiff cannot satisfy his burden for certifying a New York-only class........................ 34

VII. If this Court admits Plaintiff's expert's new damages model, then Plaintiff's damages model cannot be consistent with his liability theory........................................... 34

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                         **Page(s)**

*AEI Life LLC v. Lincoln Benefit Life Co.*,
   892 F.3d 126 (2d Cir. 2018)............................................................................26

*Aerosmith Penny II, LLC v. Glob. Fin. & Leasing, Inc.*,
   No. H-17-3541, 2018 WL 1394028 (S.D. Tex. Mar. 20, 2018) ............................27

*Ahmad v. Old Republic Nat'l Title Ins. Co.*,
   690 F.3d 698 (5th Cir. 2012) ..........................................................................9, 17

*Allison v. Citgo Petroleum Corp.*,
   151 F.3d 402 (5th Cir. 1998) ...............................................................................33

*Alston v. Virginia High Sch. League, Inc.*,
   184 F.R.D. 574 (W.D. Va. 1999)..........................................................................13

*Andy Warhol Found. for the Visual Arts, Inc. v. Federal Ins. Co.*,
   189 F.3d 208 (2d Cir. 1999)..................................................................................18

*Ballan v. Upjohn Co.*,
   159 F.R.D. 473 (W.D. Mich. 1994) ......................................................................15

*Britt Green Trucking, Inc. v. FedEx Nat'l, LTL, Inc.*,
   No. 09-cv-445, 2013 WL 6051752 (M.D. Fla. Nov. 15, 2013)............................19

*Burleson v. Liggett Grp. Inc.*,
   111 F. Supp. 2d 825 (E.D. Tex. 2000)..................................................................31

*Casa Orlando Apartments v. Federal National Mortgage Association*,
   624 F.3d 185 (5th Cir. 2010) ..........................................................................29, 30

*Cheatwood v. Barry Univ., Inc.*,
   No. CI 001-3986, 2002 WL 4629 (Fla. Cir. Ct. Jan. 1, 2002) ...............................15

*CLN Props., Inc. v. Republic Servs., Inc.*,
   688 F. Supp. 2d 892 (D. Ariz. 2010) ....................................................................29

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)..........................................................................................9, 34

*Conestoga Trust v. Columbus Life Insurance Co.*,
   759 F. App'x 227 (5th Cir. 2019) .........................................................................27

*Corley v. Entergy Corp.*,
   220 F.R.D. 478 (E.D. Tex. 2004)..........................................................................23

*Cortez v. Best Buy Stores, LP*,
   No. CV 11-05053, 2012 WL 255345 (C.D. Cal. Jan. 25, 2012) ...........................................19

*DeCesare v. Lincoln Benefit Life Co.*,
   852 A.2d 474 (R.I. 2004) ........................................................................................................26

*Duchardt v. Midland Nat'l Life Ins. Co.*,
   265 F.R.D. 436 (S.D. Iowa 2009) ..........................................................................................13

*Feller v. Transamerica Life Ins. Co.*,
   No. 16-cv-1378, 2017 WL 6496803 (C.D. Cal. Dec. 11, 2017)..............................................14

*Fleisher v. Phoenix Life Ins. Co.*,
   No. 11-cv-8405, 2013 WL 12224042 (S.D.N.Y. July 12, 2013).............................................14

*Gene & Gene LLC v. BioPay LLC*,
   541 F.3d 318 (5th Cir. 2008) ..................................................................................................17

*Ginwright v. Exeter Fin. Corp.*,
   280 F. Supp. 3d 674 (D. Md. 2017) ........................................................................................19

*Glover v. Connecticut Gen. Life Ins. Co.*,
   No. 16-cv-827 (S.D. Iowa Jan. 11. 2019) .........................................................................10, 28

*Great Am. Ins. Co. v. Primo*,
   512 S.W. 3d 890 (Tex. 2017)...................................................................................................18

*Gregurek v. United of Omaha Life Ins. Co.*,
   No. CV 05-6067, 2009 WL 4723137 (C.D. Cal. Nov. 10, 2009).......................................19, 21

*Guillory v. United States*,
   699 F.2d 781 (5th Cir. 1983) ..................................................................................................30

*Gyamarthy & Assoc., Inc. v. TIG Ins. Co.*,
   No. 02-CV-1245, 2003 WL 21339279 (N.D. Tex. June 3, 2003) .....................................29, 32

*Hallmark Cty. Mut. Ins. Co. v. Ace Am. Ins. Co.*,
   283 F. Supp. 3d 559 (W.D. Tex. 2017)....................................................................................18

*Hanks v. Lincoln Life & Annuity Co.*,
   330 F.R.D. 374 (S.D.N.Y. 2019) .............................................................................................14

*Harkes v. Accessory Corp.*,
   No. CIVA2:09-CV-02556, 2010 WL 919616 (D.N.J. Mar. 10, 2010)....................................31

*In re American Med. Sys. Inc.*,
   75 F.3d 1069 (6th Cir. 1996) ..................................................................................................24

*In re Corrugated Container Antitrust Litig.*,
  659 F.2d 1322 (5th Cir. 1981) .............................................................................20

*In re Great Southern Life Insurance Co. Sales Practices Litigation*,
  192 F.R.D. 212 (N.D. Tex. 2000) ...............................................................28, 29, 32

*In re Heartland Payment Sys.*,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...................................................................9

*In re Industrial Life Ins. Litig.*,
  MDL No. 1371 (E.D. La. Jan. 11, 2006) ...............................................................23

*In re Jackson Nat'l Premium Litig.*,
  193 F.R.D. 505 (W.D. Mich. 2000) ........................................................................29

*In re Monumental Life Insurance Co.*,
  365 F.3d 408 (5th Cir. 2004) ..........................................................................23, 24

*Jimenez v. Sun Life Assurance Co.*,
  486 F. App'x 398 (5th Cir. 2012) ..........................................................................27

*Johnson v. Kansas City S. Ry. Co.*,
  208 F. App'x 292 (5th Cir. 2006) ..........................................................................23

*Johnson v. Yahoo! Inc.*,
  No. 14 CV 2028, 2018 WL 835339 (N.D. Ill. Feb. 13, 2018) ................................15

*Kelley v. Galveston Autoplex*,
  196 F.R.D. 471 (S.D. Tex. 2000) ...........................................................................20

*Krot v. Fid. Nat'l Title Co.*,
  No. 03-14-250-CV, 2014 WL 7464084 (Tex. App. Ct. Dec. 31, 2014) .................22

*Langbecker v. Electronic Data Sys. Corp.*,
  476 F.3d 299 (5th Cir. 2007) .................................................................11, 12, 33

*Larson v John Hancock Life Insurance Co.*,
  No. 16 813803, 2017 WL 4284163 (Cal. Super. Mar. 23, 2017) ...........................14

*Lincoln Benefit Life Co. v. Manglona*,
  No. CIV. 13-2196, 2014 WL 3608893 (S.D. Tex. July 3, 2014)...........................26

*Ludlow v BP, P.L.C.*,
  800 F.3d 674 (5th Cir. 2015) .................................................................................35

*Maderazo v. VHS San Antonio Partners, L.P.*,
  No. 06-CA-535, 2019 WL 4254633 (W.D. Tex. Jan. 22, 2019) (Garcia, J.) .........35

*Maloney v. Microsoft Corp.*,
No. 09-2047, 2011 WL 5864064 (D.N.J. Nov. 21, 2011) ......................................................17

*Maxon v. Sentry Insurance Co.*,
No. 18-cv-254, 2019 WL 4540057 (W.D. Wisc. Sept. 19, 2019) ...........................................10

*Mayo v. Hartford Life Insurance Co.*,
354 F.3d 400 (5th Cir. 2004) .................................................................................................27

*McManus v. Fleetwood Enters., Inc.*,
320 F.3d 545 (5th Cir. 2003) .................................................................................................22

*Mistetsky v. Bilek*,
No. CV H-09-2195, 2010 WL 11583151 (S.D. Tex. Nov. 24, 2010) ....................................20

*Morgan Stanley Grp. Inc. v. New England Life Ins. Co.*,
225 F.3d 270 (2d Cir. 2000)..................................................................................................18

*National Union Fire Ins. Co. v. American Eurocopter Corp.*,
692 F.3d 405 (5th Cir. 2012) .................................................................................................31

*National W. Life Ins. Co. v. Rowe*,
164 S.W.3d 389 (Tex. 2005)...................................................................................................30

*Neely v. Ethicon, Inc.*,
No. 00-CV-569, 2001 WL 1090204 (E.D. Tex. Aug. 15, 2001) ...........................................31

*Ohio Nat'l Life Ins. Corp. v. Riley-Hagan*,
No. H-08-2285, 2008 WL 5158089 (S.D. Tex. Dec. 9, 2008) ...............................................28

*Pickett v. Iowa Beef Processors*,
209 F.3d 1276 (11th Cir. 2000) .............................................................................................13

*Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*,
100 F. App'x 296 (5th Cir. 2004) ..........................................................................................20

*Pioneer Valley Casket Co. v. Service Corp. Int'l*,
No. H-05-3399, 2008 WL 11395528 (S.D. Tex. Nov. 24, 2008) ...........................................11

*Primerica Life Ins. Co. v. Baccus*,
2007 WL 9697630 (N.D. Tex. May 14, 2007) .......................................................................28

*Pullen v. Farmers Grp., Inc.*,
No. B-02-206, 2006 WL 8445280 (S.D. Tex. Mar. 27, 2006) ...............................................16

*Res. Now Grp. v. O'Shea*,
No. 17-cv-726, 2018 WL 453924 (E.D. Tex. Jan. 17, 2018) .................................................27

*Schydlower v. Pan Am. Life Ins. Co.*,
 No. 04-CA-441, 2007 WL 9702858 (W.D. Tex. Jan. 18, 2007) ............................................20

*Seeligson v. Devon Energy Prod. Co.*,
 761 F. App'x 329 (5th Cir. 2019) ..........................................................................................23

*Silver v. Pa. Higher Educ. Assistance Agency*,
 No. 14-cv-652, 2020 WL 607054 (N.D. Cal. Feb. 7, 2020) ...................................................19

*Spence v. Glock, Ges.m.b.H.*,
 227 F.3d 308 (5th Cir. 2000) ...........................................................................................27, 29

*Taylor v. Midland Nat'l Life Ins. Co.*,
 No. 16-140, 2009 WL 7500238 (S.D. Iowa May 3, 2019) ...................................10, 21, 28, 32

*Taylor v. Midland Nat'l. Life Ins. Co.*,
 No. 16-140 (S.D. Iowa Sept. 27, 2019) .............................................................................10, 21

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
 546 F.3d 196 (2d Cir. 2008)......................................................................................................9

*Telles v. Midland College*,
 No. 17-cv-83, 2018 WL 7352426 (W.D. Tex. Apr. 30, 2018) .............................................9, 17

*Thao v. Midland Life Ins. Co.*,
 No. 09-C-1158, 2012 WL 1900114 (E.D. Wisc. May 24, 2012) ......................................13, 14

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
 445 F.3d 311 (4th Cir. 2006) ..................................................................................................24

*Velasquez v. Crown Life Ins. Co.*,
 No. CIV M97-64, 1999 WL 33305652 (S.D. Tex. Aug. 10, 1999)........................................31

*Verde v. Stoneridge, Inc.*,
 No. 14-CV-225, 2016 WL 9022449 (E.D. Tex. Nov. 7, 2016) .........................................20, 23

*Vogt v. State Farm Life Insurance Co.*,
 No. 16-cv-04170, 2018 WL 1955425 (W.D. Mo. Apr. 24, 2018)...........................................19

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011).....................................................................................................9, 33, 34

*Warren v. Reserve Fund, Inc.*,
 728 F.2d 741 (5th Cir. 1984) .............................................................................................16, 17

*XL Specialty Ins. Co. v. Osprey Underwriting Agency, Ltd.*,
 No. 10-cv-4570, 2011 WL 13341026 (S.D. Tex. Dec. 2, 2011)..............................................27

*Zachery v. Texaco Exploration & Prod. Inc.,*
    185 F.R.D. 230 (W.D. Tex. 1999) ......................................................................................17

**Other Authorities**

Restatement (Second) of Conflict of Laws § 6..............................................................................29

Restatement (Second) of Conflict of Laws § 145..........................................................................30

Restatement (Second) Conflict of Laws § 188 ........................................................................31, 32

Restatement (Second) of Conflicts of Laws § 192 ...................................................................27, 28

Rule 23(a)...........................................................................................................................10 ,11, 32

Rule 23(b) ...................................................................................................................3, 17, 32, 33

Plaintiff ignores three core issues that, individually or together, require the denial of his motion for class certification. First, a recent wave of similar cost of insurance class actions has resulted in denials of class certification and dismissals with prejudice. Plaintiff acknowledges none of these cases. Nor does Plaintiff acknowledge two earlier cost of insurance class actions where certification was denied. The same rationales that led these other courts to deny class certification should lead this Court to do likewise here.

The second core issue concerns Fifth Circuit precedent governing Plaintiff's "fraudulent concealment" theory, as well as the related issue of USAA Life's statute of limitations defense. This precedent holds that a need for individualized inquiries to resolve these issues can be enough, by itself, to preclude class certification. Rather than confront this precedent, Plaintiff relies on a single district court opinion from California for the idea that the statute of limitations is irrelevant to class certification. That is not consistent with the precedent of the Fifth Circuit and federal courts throughout Texas, which have universally reached the opposite conclusion.

The third core issue is the legal standard for class certification. Over the past decade, the Supreme Court and the Courts of Appeals have raised the bar for certifying a class. Gone are the days when pleadings alone could satisfy Rule 23's class certification requirements; now a plaintiff must present evidence that his claim can be fairly and efficiently decided on a classwide basis. This requires showing—not just alleging—that each requisite element of Rule 23 has been met, and this showing must be made by a preponderance of the evidence. Failure to carry this burden on even one of the rule's prerequisites requires the denial of certification. Plaintiff glosses over these standards and does not even include a legal standard section in his brief.

In one example of how the modern standard plays out in practice, Plaintiff must present evidence that his theories of liability will, if successful, benefit the entire putative class, not just a

select subset. If some class members would suffer if Plaintiff wins, then Plaintiff cannot be an "adequate" class representative as required by Rule 23(a)(4). As explained below, however, a significant percentage of the class would be injured if Plaintiff's theory of the case were to prevail: They would pay higher charges, not lower, going forward.

This intra-class conflict is enough, by itself, to require the denial of class certification. But there is another adequacy issue beyond that: Plaintiff's last-minute abandonment of nearly 30 percent of the putative class. Until the moment he filed his motion for class certification, Plaintiff purported to represent the purchasers of four separate versions of USAA Life's universal life insurance policies. When he filed his motion, however, Plaintiff unceremoniously and without explanation dropped two of those four policies from his class definition, leaving nearly 30,000 class members in the lurch. A plaintiff who treats so many class members so cavalierly cannot serve as a class representative.

Even if Plaintiff could show that he is an adequate class representative, he cannot meet the requirements of Rule 23(b)(3) or (b)(2). Rule 23(b)(3)'s "predominance" requirement means Plaintiff must show that the evidence that would resolve his claim can also fairly resolve the claims of the other 85,000 proposed class members. In this case, several key issues defy classwide resolution. For example, whether USAA Life breached any contract, and whether Plaintiff can prevail on his effort to prove fraudulent concealment, depends on the content of pre-sale oral conversations that vary from policyholder to policyholder. USAA Life's sales representatives at times told customers precisely what Plaintiff claims was concealed: that the "cost of insurance" component of the policy takes into account non-mortality factors, such as expense and profit. The extent to which class members understood from the beginning that USAA Life considered non-mortality factors when setting rates is critically important to

resolving liability, both as to Plaintiff's prima facie case and as to USAA Life's statute of limitations defense. Three court opinions—two within the past year—have denied class certification in similar class actions based on the need to consider this type of evidence.

A separate individualized hearing with different evidence would have to be held to resolve the statute of limitations issue on another liability theory—that cost of insurance rates should have been lowered due to improving mortality. For more than a decade, articles in the popular press have reported improvements in mortality in the general population. Any possible tolling of the statute of limitations on this theory at least arguably comes to an end when a policyholder becomes aware of this trend. But determining which class members learned of improving mortality, and when, requires an individualized inquiry.

Plaintiff's alternative request for a Rule 23(b)(2) class also falls short. Certification under Rule 23(b)(2) is appropriate only when the proposed injunction would benefit the entire class. Again, however, some putative class members here—especially senior citizens—would suffer if Plaintiff's theory were adopted: They would pay higher rates in the future, not lower. Still other class members would not be affected at all by any injunction, as they have either died (with their beneficiaries receiving death benefits) or have seen their policies lapse. A proposed injunction that would benefit only a subset of the proposed class is not a candidate for certification.

## I.  Factual Background

### A.  The flexibility of universal life insurance makes it beneficial to many consumers.

This case challenges several decades' worth of rates that USAA Life assessed on a type of life insurance known as "universal life." Like other types of life insurance, universal life provides a death benefit to a beneficiary if the insured dies while the insurance is in force. But universal life can also serve as a savings tool, and can do so more flexibly than traditional

"whole life" policies. Under a universal life policy, policyholders can pay higher premiums or drop a lump sum payment into their cash accumulation account, thus boosting the policy's cash value. Conversely, policyholders can lower premium payments or withdraw a lump sum from their cash accumulation account, thereby lowering the policy's cash value. Policyholders can even stop paying premiums altogether, so long as there is enough cash value in the policy to keep it in force. Ex. 1, Expert Report of Craig Merrill ("Merrill Rep.") at 7; Ex. 2, Expert Rebuttal Report of Timothy C. Pfeifer ("Pfeifer Rep.") ¶ 13.

Universal life policies, including those at issue here, disclose various charges associated with the policy. In the case of the UL3 and UL4 policies, the charges include a maintenance charge, a 3 percent of premium charge, and the cost of insurance charge. The maintenance charge is modest; for Plaintiff, it amounted to $30 per year. The premium charge is also small; for Plaintiff it amounted to $12 per year. The cost of insurance charge, by comparison, is orders of magnitude higher than any other charge. Ex. 3, Declaration of Amanda Hamala ("Hamala Decl.") ¶ 13; Pfeifer Rep. ¶¶ 9, 22.

**B. Background on pricing universal life policies.**

Different customers pay different prices for life insurance. All other things being equal, men pay more than women, Baby Boomers pay more than millennials, smokers pay more than non-smokers, and so on. In industry jargon, the rates for people with different combinations of characteristics appear in different "cells"—boxes in a very large grid. Typically, cells are broken down by age, gender, net amount of risk (in essence, how much the insurance company would have to pay out of its own funds if an insured dies), and rating classification (smoker, non-smoker, high risk, etc.). Pfeifer Rep. ¶¶ 23-24; Hamala Decl. ¶ 18. The rates for a 40-year-old, non-smoking man with $25,000 net amount at risk will be far different than for a 30-year-old female smoker with $50,000 net amount at risk. For the UL3 policy, USAA Life used more than

4

400 unique pricing cells; for the UL4 policy, it used approximately 1,300 unique pricing cells. Pfeifer Rep. ¶ 25; Hamala Decl. ¶ 18; Ex. 4, Deposition of Scott Witt ("Witt Dep.") at 48.

Mortality expectations used when the cells are created never match the subsequent, actual experience—even great actuaries are incapable of seeing the future. Consequently, when USAA Life updated its mortality expectations for its universal life products, some cells demonstrated improved mortality, while other cells had mortality expectations that were worse than originally expected. Hamala Decl. ¶ 19; Pfeifer Rep. ¶ 49.

Plaintiff's theory of the case is that USAA Life's cost of insurance charges should consist of a "mortality-only" cost, with the goal of recovering just enough money to pay expected death benefits. Depending on the cell, these hypothetical rates are frequently higher than the rates USAA Life actually used or intends to use. This happens with greater frequency at older ages, when mortality expectations rise dramatically. Merrill Rep. at 17, 36-45; Hamala Decl. ¶ 21.

**C.  Mortality expectations are the driving force in USAA Life's cost of insurance rates.**

Although USAA Life considers profit goals and anticipated expenses when setting cost of insurance rates, the main driver is its expectation of future mortality. As USAA Life's head of actuarial pricing testified, "the most important assumption is the mortality." Ex. 5, Deposition of Amanda Hamala ("Hamala Dep.") at 184-85. Another USAA Life senior actuary noted that "mortality would have been the most important factor used in developing those [cost of insurance] rates." Ex. 6, Deposition of Rebecca Rosser ("Rosser Dep.") at 50-52. Still another former senior actuary, Elizabeth Branaum, put it this way: "the cost of insurance rates roughly parallel the actual expected mortality rates." Ex. 7, Deposition of Elizabeth Branaum ("Branaum Dep.") at 64. Various charts in the Merrill expert report submitted with this brief illustrate the same point. While the curve for mortality expectations mimics the curves for USAA Life's cost

of insurance rates, there is no similar relationship between the expense and cost of insurance curves. Merrill Rep. at 13-16.

**D.   The policies at issue could never have been sold if USAA Life had not taken expenses and profit into account in setting its rates.**

Cost of insurance rates are designed by actuaries, and all actuaries must follow published Actuarial Standards of Practice. These standards require that insurance products be projected to generate a profit after a certain number of years. Pfeifer Rep. ¶¶ 15, 34. Without such a showing, illustrations cannot be used in the sales process, Rosser Dep. at 53-54, and without illustrations, as a practical matter no sales could be made. New York regulations likewise require an anticipation of profit after a set number of years. *Id.*; Hamala Decl. ¶¶ 11-13; Ex. 8, Declaration of Constance B. Foster ("Foster Rep.") ¶ 29; Pfeifer Rep. ¶ 15.

Far and away the largest charge on the UL3 and UL4 policies is the cost of insurance charge. Pfeifer Rep. ¶ 9; Hamala Decl. ¶ 13. As one senior USAA Life actuary explained, "It's required that the policy generate profit to meet self-support testing and [Actuarial Standard of Practice] 24, and the cost of insurance is the main charge through which profit can be developed in the product." Rosser Dep. at 108-09; *see also* Hamala Dep. at 149-50, 168-69. That is why the entire life insurance industry—not just USAA Life—considers profit goals and anticipated expenses when setting cost of insurance rates—precisely what Plaintiff says they may not consider. One of USAA Life's experts, Craig Merrill, said, "I have never seen an insurance company use mortality experience directly from a mortality table as the sole basis for setting cost of insurance rates." Merrill Rep. at 4. Tim Pfeifer, another expert, who has led the development of scores of universal life policies, is likewise "not aware of any insurer that designs cost of insurance rates to cover only expected death benefits." Pfeifer Rep. ¶ 26. Not surprisingly, state

insurance regulators are well aware that cost of insurance rates include some allowance for expenses and a reasonable profit. Foster Decl. ¶ 2.

**E.   USAA Life's selling representatives at times alerted policyholders that cost of insurance charges help cover profit and expenses.**

Four selling representatives confirmed that they advised their clients, at the time of sale, that cost of insurance charges helped USAA Life earn a profit, cover expenses, or both. Ex. 9, Declaration of Ashley Randall ("Randall Decl.") ¶ 7; Ex. 10, Declaration of Caesar Morales ("Morales Decl.") ¶ 8; *see also* Ex. 11, Declaration of Tiffany Grubb ("Grubb Decl.") ¶¶ 6-7; Ex. 12, Declaration of Mark Shriver ("Shriver Decl.") ¶ 8. Plaintiff's counsel subjected all four sales representatives to vigorous cross-examination. In response, the sales representative not only confirmed but further explained how they told class members that cost of insurance rates took into account non-mortality elements. For example, Morales, who has sold more than 900 universal life policies, Ex. 13, Deposition of Caesar Morales ("Morales Dep.") at 39-40, testified:

> Q: [I]s there somebody that you recall telling you that the cost of insurance includes profit and expenses?
>
> A: Over the years . . . it's been said numerous times.

*Id.* at 71. Randall testified that "it was common to explain . . . cost of insurance would include the cost of . . . administering the policies [and] generating a profit." Ex. 14, Deposition of Ashely Randall ("Randall Dep.") at 35; *see also id.* at 36, 50-51. Another selling representative, Tiffany Grubb, testified:

> Q: [D]o you tell - UL3 UL4 policy owners that cost of insurance covers USAA's overhead?
>
> A: In some conversations yes I would have said that.

Ex. 15, Deposition of Tiffany Grubb ("Grubb Dep.") at 89; *see also* Ex. 16, Deposition of Mark Shriver ("Shriver Dep.") at 48-49.

These sales representatives also made a common-sense point as to why this issue comes up: The cost of insurance charge is by far the largest deduction from the cash value of the policy. As Morales explained, profit "has to come from somewhere." Morales Dep. at 69-70; *see also* Shriver Dep. at 64-65.

### F.   Plaintiff purchased his UL3 policy in 1992.

Plaintiff Roy Spegele purchased a $25,000 UL3 policy in 1992. Plaintiff was in New York when he spoke to a USAA Life sales representative about the possibility of purchasing his policy. Deposition of Roy Spegele ("Spegele Dep.") at 40. The policy was delivered to him in New York. *Id.* When shown his policy language stating that "[t]his policy is subject to the laws of the state where the policy is delivered," Plaintiff acknowledged that his policy is "governed by the State of New York." *Id.* at 40-41. If he lived in New Jersey when he bought his policy, he said, he would expect that it would be governed by the laws of New Jersey. *Id.* at 41.

Plaintiff bought his policy based on his mistaken belief that the policy would be fully paid up after 20 years. *Id.* at 15-16, 19-20, 30. He admitted that nothing in his policy illustration—which he received at the time of the sale—said his payments would cease after 20 years. *Id.* at 26-27. He also admitted that his illustration shows he would be making payments at ages 60, 70, and 95. *Id.* at 27-28.

Plaintiff alleges that USAA Life should have lowered his cost of insurance rates because of improvements in mortality expectations. But Plaintiff also admitted he knew that mortality was improving, and yet waited 25 years to file his lawsuit. *Id.* at 76. Separately, Plaintiff alleged that his policy should have disclosed that cost of insurance rates reflected non-mortality factors, but he admitted that if his policy had disclosed that fact, he likely would have kept it anyway. *Id.* at 47. He also admitted he would not have cared about language stating that cost of insurance takes into account expenses or investment experience. *Id.* at 47-48.

## II.    Legal Standard

### A.    The Supreme Court's *Wal-Mart* and *Comcast* opinions raised the evidentiary burden a plaintiff must satisfy to win class certification.

In the past decade, the Supreme Court and nearly every federal court of appeals have heightened the standards plaintiffs must satisfy to win class certification. The genesis of the modern standard is the Supreme Court's ruling in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011), where the Court declared that a review of merits evidence is not just allowed, but is the general rule. The Court variously referred to plaintiff's burden as one of presenting "significant proof" or "convincing proof" that the claims "can be proved on a classwide basis." *Id.* at 355-59. The Court reiterated this point in *Comcast Corp. v. Behrend*, holding that a plaintiff must support all Rule 23(a) elements and at least one 23(b) element "through evidentiary proof." 569 U.S. 27, 33 (2013). Plaintiffs must demonstrate that they have satisfied all four elements of Rule 23(a) and at least one element of Rule 23(b). *Ahmad v. Old Republic Nat'l Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012).

### B.    Plaintiff must satisfy his evidentiary burden by a preponderance of the evidence.

"The party seeking certification bears the burden of establishing these [Rule 23(a) and (b)] requirements by a preponderance of the evidence." *Telles v. Midland College*, No. 17-cv-83, 2018 WL 7352426, at *2 (W.D. Tex. Apr. 30, 2018); *In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1051 (S.D. Tex. 2012); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 202 (2d Cir. 2008). Plaintiff is thus obliged to present evidence supporting all Rule 23(a) requirements and at least one 23(b) requirement and to satisfy that burden by a preponderance of the evidence.

**C.   Recent cost of insurance class action rulings have denied class certification or dismissed the claims altogether.**

Four recent cost of insurance class action rulings, two of which denied class certification, signal a shift in the application of the foregoing legal standards to cost of insurance class actions. In *Taylor v. Midland National Life Insurance Co.*, the court denied class certification because (1) the laws of the 50 states applied, and (2) some agents had disclosed that cost of insurance rates reflected non-mortality factors, thereby making the "fraudulent concealment" inquiry highly individualized. No. 16-cv-140, 2019 WL 7500238, at *10-13 (S.D. Iowa May 3, 2019). On reconsideration, Plaintiff sought certification of just a single-state class, but the Court again denied certification, finding that the fraudulent concealment inquiry still could not be resolved through classwide evidence. Ex. 18, *Taylor v. Midland Nat'l. Life Ins. Co.*, No. 16-140, Dkt. 200, Opinion at 9-12 (S.D. Iowa Sept. 27, 2019). Similarly, a federal court in Connecticut dismissed a cost of insurance class action. Ex.19, *Glover v. Connecticut Gen. Life Ins. Co.*, No. 16-cv-827, Dkt. 145, Hr'g Tr. at 5 (D. Conn. Jan. 11, 2019). And just a few months ago, in *Maxon v. Sentry Insurance Co.*, the court dismissed a cost of insurance class action after finding that the policy did not require cost of insurance rates to be comprised exclusively of mortality expectations. No. 18-cv-254, 2019 WL 4540057, at *3-4 (W.D. Wisc. Sept. 19, 2019), *appeal docketed*, No. 19-3501 (7th Cir. Dec. 23, 2019).

**III.   Plaintiff cannot satisfy Rule 23(a)(4)'s "adequacy" requirement.**

This case presents a simple, compelling reason to deny class certification: Plaintiff cannot demonstrate, by a preponderance of the evidence, that he is an adequate class representative, as required by Rule 23(a)(4). One flaw present here prompted another court to deny class certification in a similar class action, but this case also involves additional reasons precluding adequacy that were not presented, or even available, in other cost of insurance class actions.

10

### A. Plaintiff cannot satisfy Rule 23(a)(4)'s adequacy requirement because a material percentage of his proposed class would be harmed if he prevails.

If some class members would benefit and others would be harmed under Plaintiff's theory of the case, that creates an intra-class conflict that precludes Plaintiff from satisfying the adequacy requirement of Rule 23(a)(4). *Langbecker v. Electronic Data Sys. Corp.*, 476 F.3d 299, 314-15 (5th Cir. 2007); *Pioneer Valley Casket Co. v. Service Corp. Int'l*, No. H-05-3399, 2008 WL 11395528, at *6 (S.D. Tex. Nov. 24, 2008) (*recommendation adopted*) (denying class certification due to intra-class conflict).

### 1. The intra-class conflict in this case.

The declaration of Plaintiff's expert, Scott Witt, summarizes Plaintiff's theory of classwide damages. At his deposition, Witt admitted that he calculated damages for just one person—Plaintiff—and analyzed the mortality of just one of more than a thousand separate pricing cells. Witt Dep. at 48-49, 62; Pfeifer Report ¶ 41. Even for this one cell, Witt computed damages only for Count I and not for Count II, which challenges USAA Life's right to consider expenses in setting its rates, or Count III, which asserts that USAA Life had to lower its rates if and when mortality improved. Witt Dep. at 76, 79-80.

USAA Life's experts performed the computations that Witt did not. When they did, they found a putative class riddled with conflicting interests. Tim Pfeifer sampled some of the 1,700 cells to determine if subsequent mortality expectations were better or worse than the expectations when the policies were issued. For a significant percentage of the proposed class, mortality expectations worsened over time. Pfeifer Rep. ¶¶ 48-49. People in this category would pay higher charges if Plaintiff prevails. *Id.*

Craig Merrill, another expert, analyzed whether Plaintiff's theory in Count I—that cost of insurance rates should mirror mortality expectations and nothing else—would benefit the entire

class. That analysis showed that it is not unusual for the "mortality only" rate (the theory advanced by Plaintiff) to exceed the actual rate assessed by USAA Life. Below is a chart from the Merrill report, highlighting for certain cells the fact that Plaintiff's proposed rates can and often do exceed USAA Life's actual rate. The grids that accompany these charts confirm that many policyholders would pay higher rates if Plaintiff prevails. Merrill Rep. at 42-43.



The intra-class conflict becomes even more glaring in light of Count V, which seeks declaratory and injunctive relief. This relief would force USAA Life to charge "mortality only" rates in the future. If this Court entered the requested injunction or declaration, some policyholders would inevitably be worse off. Some policyholders who might be better off today would be worse off later if they keep using their policies the same way; other policyholders who seem better off today would be worse off if their use of the policy changes. This is true for each of Plaintiff's liability theories. *See* Merrill Rep. at 51-52, 54-55; Pfeifer Rep. ¶¶ 52-53.

Under Fifth Circuit precedent, these sorts of consequences must be considered, and may be dispositive, when it comes to class certification. In *Langbecker*, the Fifth Circuit upheld a finding

of an intra-class conflict, finding that some class members would suffer basis under plaintiff's requested injunction. 476 F.3d 315.[1] The same is true here.

### 2. Plaintiff's "heads I win, tails you lose" artifice.

The intra-class conflict in this case is a powerful impediment to class certification—so powerful that it persuaded the court in another class action to deny certification based solely on a similar conflict. *See Thao v. Midland Life Ins. Co*., No. 09-C-1158, 2012 WL 1900114, at *9-10 (E.D. Wisc. May 24, 2012). Recognizing this, Plaintiff has tried to neutralize the conflict through a "heads I win, tails you lose" damages model. This approach was not articulated in Plaintiff's expert report, Merrill Rep. at 3, 49, but in his deposition, Plaintiff's expert testified that when USAA Life's actual rate is higher than his hypothetical alternative rate, he would use his hypothetical rate—but when the opposite is true, he would use the actual (lower) USAA Life rate. Witt Dep. at 55-57; Pfeifer Rep. ¶ 50; Merrill Rep. at 17, 49.

For the reasons outlined in USAA Life's motion to exclude Witt's testimony (filed contemporaneously with this brief), that approach is legally untenable. For one thing, it is contradicted by Plaintiff's own prior pleadings. Plaintiff has repeatedly told this Court his simple, bedrock liability theory: USAA Life must restrict its cost of insurance charge to the expected cost of paying death benefits—no more, no less. *See* Dkt. 59 at 3-5. The belatedly disclosed approach of Plaintiff's expert is entirely inconsistent with this theory.

---

[1] Other courts concur that, when a plaintiff seeks an injunction, future conduct should be considered in assessing intra-class conflicts. *See Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000); *Duchardt v. Midland Nat'l Life Ins. Co.*, 265 F.R.D. 436, 449-50 (S.D. Iowa 2009) (harm to some class members arises "both in the past, and moving forward from the present"); *Alston v. Virginia High Sch. League, Inc.*, 184 F.R.D. 574, 579 (W.D. Va. 1999).

This case, moreover, presents an even stronger basis for the denial of certification than *Thao* did.[2] In *Thao,* the intra-class conflict arose from just one liability theory, yet the court denied certification because restricting cost of insurance rates to recouping expected mortality costs would result in some policyholders paying higher premiums. *Thao*, 2012 WL 1900114, at *9-10. In this case, in contrast, the intra-class conflict stems from multiple liability theories; under any of them, some policyholders would be worse off if Plaintiff wins.

### B.   Plaintiff is an inadequate class representative because he abandoned nearly 30 percent of his class after two years of discovery.

Plaintiff is an inadequate class representative for a second, independent reason: At the last minute, he abandoned the interests of more than 30 percent of the putative class he claimed to represent. Such a radical narrowing of the class definition has not been litigated in any other cost of insurance class action.

For more than two years, this case proceeded with a broad class definition:

> All persons who own or owned a life insurance policy issued or administered by Defendant, the terms of which provide or provided for: 1) an insurance or cost of insurance charge or deduction calculated using a rate that is determined based on Defendant's expectations as to future mortality experience; 2) additional but separate policy charges, deductions, or expenses; 3) an investment, interest-bearing, or savings component; and 4) a death benefit.

Complaint ¶ 43. Plaintiff understood that this class definition encompassed not just the UL3 and UL4 policies, but also the UL1 and UL2 policies. He issued interrogatories that expressly

---

[2] In several cases cited by Plaintiff, there was no intra-class conflict because plaintiffs limited their class to policyholders subjected to a rate increase. *See, e.g.*, *Feller v. Transamerica Life Ins. Co.*, No. 16-cv-1378, 2017 WL 6496803, at *9 (C.D. Cal. Dec. 11, 2017); *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405, 2013 WL 12224042, at *12 (S.D.N.Y. July 12, 2013). Similarly, in *Larson v John Hancock Life Insurance Co.*, No. 16 813803, 2017 WL 4284163, at *8 (Cal. Super. Mar. 23, 2017), the company applied a "margin" over mortality-only rates, so, again, there could not be an intra-class conflict. In *Hanks v. Lincoln Life & Annuity Co.*, 330 F.R.D. 374, 381 & n.1 (S.D.N.Y. 2019), the court rejected the intra-class conflict argument partly because the plaintiff, unlike Plaintiff here, did not seek an injunction.

defined "Class Policies" as including "Universal Life I ('or UL1')," and "Universal Life II (or

'UL 2')," Ex. 20 at Interrog. No. 9, and his document requests expressly sought documents about

the same policies, Ex. 21 at Request No. 1. Plaintiff's Notice of 30(b)(6) deposition likewise

explicitly referred to the UL1 and UL2 products, defining "Policies" to include both. Ex. 22.

Plaintiff deposed nine of USAA Life's current and former employees, and at every deposition, a

portion of the questioning covered the UL1 and UL2 policies. Questions about these policies

appeared on more than 200 pages of testimony. *See* Ex. 23.

Without requesting leave of court to amend the class definition, Plaintiff announced a

new, narrower class when he moved for class certification. The new definition abandons UL1

and UL2 policyholders:

> All persons who own or owned a Universal Life 3 and/or a
> Universal Life 4 life insurance policy issued or administered by
> USAA Life Insurance Company, or its predecessors in interest,
> that was active as of March 1999.

Pl. Br. at 2. This definition abandons over 30 percent of the class—some 13,000 UL1

policyholders and more than 22,000 UL2 policyholders. Hamala Decl. ¶ 9.

A plaintiff cannot satisfy Rule 23(a)(4)'s adequacy requirement where, as here, he

abandons, without leave of court and without explanation, a material percentage of his class.

*Ballan v. Upjohn Co.*, 159 F.R.D. 473, 486 (W.D. Mich. 1994); *Johnson v. Yahoo! Inc.*, No. 14

CV 2028, 2018 WL 835339, at *4 (N.D. Ill. Feb. 13, 2018); *Cheatwood v. Barry Univ., Inc.*, No.

CI 001-3986, 2002 WL 4629, at *5 (Fla. Cir. Ct. Jan. 1, 2002) (jettisoning class members "raises

serious adequacy questions"). Some courts, it is true, have found class representatives adequate

after the narrowing of a class definition. But none of those cases involve a plaintiff who

abandoned such a large percentage of the class after purporting to pursue their interests for more

than two years, and who offers no explanation of his shift. Plaintiff's shift here is another independent reason to deny certification.

### C.   A unique defense applicable to Plaintiff further undermines Rule 23(a)(4) adequacy as well as Rule 23(a)(3) typicality.

If a class member is subject to a unique defense, he cannot adequately represent the class, nor can he fairly be considered a "typical" class member. *See, e.g.*, *Pullen v. Farmers Grp., Inc.*, No. B-02-206, 2006 WL 8445280, at *5 (S.D. Tex. Mar. 27, 2006) (unique defense precludes adequacy); *Warren v. Reserve Fund, Inc.*, 728 F.2d 741, 747 (5th Cir. 1984) (unique defense precludes typicality).

Here, Plaintiff is subject to just such a defense: the statute of limitations. He has asserted that USAA Life should have lowered its rates because mortality constantly improved. Yet Plaintiff admitted at his deposition that he was aware of generally improving mortality, which at least arguably put him on notice of his claim many years ago:

> Q: As you sit here today . . . would you say you're generally aware, generally knowledgeable that mortality, that live expectancy has improved, gotten better in the last two decades?
>
> A: Yes.
>
> Q: That's something you're aware of?
>
> A: Yes.

Spegele Dep. at 76. Plaintiff also knew, based on his annual statements and an illustration he received in 2010, that his cost of insurance rate was rising at the same time he knew mortality was improving. Hamala Decl. ¶ 14.

Whether USAA Life will ultimately prevail on the statute of limitations defense is not the issue here. The issue is that this defense would become a focus of any trial. If USAA Life prevails on this defense, judgment would be entered against the entire class, even though other class members might have viable tolling arguments. That is why a defense unique to a named

16

plaintiff precludes a finding of adequacy and typicality. *Warren*, 728 F.2d at 747 (5th Cir. 1984); *see also Zachery v. Texaco Exploration & Prod. Inc.*, 185 F.R.D. 230, 240 (W.D. Tex. 1999).

## IV.    Plaintiff cannot satisfy his burden of demonstrating that classwide proof can resolve all liability elements, damages, and affirmative defenses.

### A.   The "predominance" standard.

In evaluating whether Plaintiff can satisfy Rule 23(b)(3)'s "predominance" requirement, a court must look at all liability elements, damages, and affirmative defenses, and must carefully consider how the case could be fairly tried on a classwide basis. Plaintiff bears the burden of demonstrating that the trial can be resolved through a "generalized set of facts." *Ahmad*, 690 F.3d at 703. Again, Plaintiff must satisfy this requirement by a "preponderance of the evidence." *Telles*, 2018 WL 7352426, at *2.

If classwide proof is not available, even for just one element of the case, class certification must be denied. *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 328-29 (5th Cir. 2008) (classwide proof not available for affirmative defense); *Maloney v. Microsoft Corp.*, No. 09-2047, 2011 WL 5864064, at *2 (D.N.J. Nov. 21, 2011) ("[I]f one element of a claim can be proven only by resort to individual treatment, class certification is inappropriate"). While Plaintiff's failure to demonstrate the resolution of just one issue via classwide evidence may require the denial of class certification, in this case several key issues can be resolved only on an individualized basis, as explained below.

### B.   Plaintiff has not shown how he could prove a breach of contract on a classwide basis

For reasons that will be explained in USAA Life's forthcoming motion for summary judgment (due a week after the filing of this brief), Plaintiff's policy allows USAA Life to consider non-mortality elements when it sets cost of insurance rates. But if this Court finds the contract ambiguous on that point, then USAA Life would be entitled, as a matter of due process,

to present extrinsic evidence about the intent of the parties. That evidence involves conversations that took place when the policies were sold and vary from transaction to transaction.

Depending on varying state laws, if a contract is ambiguous, courts look to extrinsic evidence, including conversations, to decipher the reasonable expectation of the parties. That is the rule, for example, in Plaintiff's home state of New York, *see Andy Warhol Found. for the Visual Arts, Inc. v. Federal Ins. Co.,* 189 F.3d 208, 215 (2d Cir. 1999); *Morgan Stanley Grp. Inc. v. New England Life Ins. Co.,* 225 F.3d 270, 275-76 (2d Cir. 2000), as well as in Texas, *see Great Am. Ins. Co. v. Primo*, 512 S.W. 3d 890, 894 (Tex. 2017); *Hallmark Cty. Mut. Ins. Co. v. Ace Am. Ins. Co*., 283 F. Supp. 3d 559, 567-68 (W.D. Tex. 2017). Only if ambiguity remains after that analysis does the court apply other rules of contract construction, such as construing the ambiguity against the drafter. *Morgan Stanley Grp.*, 225 F.3d at 275-76.

Under these principles, Conversations between policyholders and their selling representatives during the sales process would be highly relevant to decipher the intent of the parties. In many of these conversations, the selling representatives told their clients that cost of insurance rates take into account non-morality elements. In uncontradicted testimony, four USAA Life sales representatives explained that they had conversations to that effect with prospective customers. *See* Exs. 9-12; Morales Dep. at 71; Randall Dep. at 35-36, 50-51; Grubb Dep. at 89; Shriver Dep. at 48-49. It would be impossible to determine which class members received this information without painstaking individualized inquiries:

> Q: Is there any way that you could go about to identify a UL3 policy owner that you've made that statement to?
>
> A: Well, you would have to go and interview members that I've talked to over the years that had a UL3 and ask them.

Morales Dep. at 81.

Similar evidence persuaded another court to deny class certification, finding that "whether an agent provides details on the [cost of insurance] charge depends on the agent's personal presentation style, as well as the agent's responses to any questions raised by a particular customer." *Gregurek v. United of Omaha Life Ins. Co.*, No. CV 05-6067, 2009 WL 4723137, at *7 (C.D. Cal. Nov. 10, 2009). In contrast, in the *Vogt v. State Farm Life Insurance Co.* ruling Plaintiff has cited, the defendant asked the court to "assume" that some class members "became aware of the fact that [cost of insurance] rates were based on factors other than those specified in the Policy." No. 16-cv-04170, 2018 WL 1955425, at *6 (W.D. Mo. Apr. 24, 2018). The court declined to do so because "State Farm has presented no evidence to suggest that the claims of any class member is time barred." *Id.* Here, USAA Life does not ask this court to make any assumptions, but instead has presented the evidence that was absent in *Vogt*. Faced with analogous evidence, courts routinely deny class certification.[3]

### C. Plaintiff cannot satisfy his burden of demonstrating that his "fraudulent concealment" allegations can be resolved on a classwide basis.

#### 1. Fifth Circuit precedent on the intersection of fraudulent concealment and class certification.

Plaintiff has alleged that USAA Life fraudulently concealed its behavior, thus tolling the statute of limitations, Compl. ¶ 41, but argues that this is no barrier to class certification. Pl. Br. at 28. He relies on a district court opinion from the Central District of California, stating that "[c]ourts have been nearly unanimous . . . in holding that possible differences in the application of a statute of limitations to individual class members . . . does not preclude certification of a

---

[3] *See, e.g.*, *Silver v. Pa. Higher Educ. Assistance Agency*, No. 14-cv-652, 2020 WL 607054, at *14 (N.D. Cal. Feb. 7, 2020); *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 688 (D. Md. 2017); *Britt Green Trucking, Inc. v. FedEx Nat'l, LTL, Inc.*, No. 09-cv-445, 2013 WL 6051752, at *12 (M.D. Fla. Nov. 15, 2013); *Cortez v. Best Buy Stores, LP*, No. CV 11-05053, 2012 WL 255345, at *7 (C.D. Cal. Jan. 25, 2012).

class action." *Id.* (quoting *Schramm v. JPMorgan Chase Bank, N.A.*, No. CV09-9442, 2011 WL 5034663 (C.D. Cal. Oct. 19, 2011)). That may or may not be the law in the Ninth Circuit. But Fifth Circuit precedent, none of which Plaintiff cites, has repeatedly held that individualized inquiries involving fraudulent concealment can, and often do, preclude class certification.

For example, in addressing a fraudulent concealment argument, the Fifth Circuit has ruled that "proving due diligence class-wide on a claimant-by-claimant basis would be particularly difficult." *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1325 (5th Cir. 1981). In another case, the Fifth Circuit found that the "predominance" prong of Rule 23(b)(3) had not been met because the court would need to consider individualized evidence about "whether each class member could take advantage of the fraudulent concealment doctrine." *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 100 F. App'x 296, 301 (5th Cir. 2004). These cases are far from alone, as shown in the cases cited in the footnote.[4]

> **2.  Plaintiff's "fraudulent concealment" theory—a linchpin of his response to USAA Life's statute of limitations defense—cannot be resolved using classwide evidence.**

Plaintiff's new class definition includes all holders of UL3 and UL4 policies that have been active at any point from 1999 to the present. Many of these policies, including Plaintiff's, were originally purchased decades ago. Plaintiff bought his policy nearly thirty years ago, in 1992, and the most recent class member purchase was made in 2008. The age of these transactions presents obvious and pervasive statute of limitations issues.

---

[4] *Verde v. Stoneridge, Inc.*, No. 14-CV-225, 2016 WL 9022449, at *9 (E.D. Tex. Nov. 7, 2016) (*recommendation adopted*); *Mistetsky v. Bilek*, No. CV H-09-2195, 2010 WL 11583151, at *10 (S.D. Tex. Nov. 24, 2010) (*recommendation adopted*); *Kelley v. Galveston Autoplex*, 196 F.R.D. 471, 477–78 (S.D. Tex. 2000); *Schydlower v. Pan Am. Life Ins. Co.*, No. 04-CA-441, 2007 WL 9702858, at *8 (W.D. Tex. Jan. 18, 2007).

Plaintiff hopes to insulate himself and the class from those issues through a claim of "fraudulent concealment," which in his view would toll the limitations period. Compl. ¶ 41. According to Plaintiff, USAA Life fraudulently concealed the "improper deductions" it took from his policy—in other words, it allegedly concealed that cost of insurance rates took into account not just mortality, but also expenses and profit. *Id.*

By definition, there cannot have been any "fraudulent concealment" if USAA Life disclosed these facts to its policyholders. At times, USAA Life did exactly that. As previously noted, four separate affidavits and deposition testimony confirm that USAA Life's selling representatives told prospective purchasers, as part of the sales process, that cost of insurance rates took into account non-mortality factors, such as profit and expense. *Supra*, at 7-8. Only an individualized inquiry can determine who received this sort of disclosure and who did not.

Three separate judicial opinions, based on similar affidavits, denied class certification. In *Taylor*, the court relied on just two agent affidavits stating that the agents at times disclosed that cost of insurance rates encompassed "non-mortality factors." The court denied certification because plaintiff had not presented classwide evidence on the question of fraudulent concealment. 2019 WL 7500238, *10-13. After plaintiff sought certification of just a statewide class, the court reaffirmed its earlier ruling that the fraudulent concealment inquiry required the denial of class certification. Ex. 18, *Taylor*, No. 16-140, Dkt. 200, Opinion at 9-12. Based on similar affidavits, another court ruled that determining who received the relevant disclosure "will require individualized findings specific to each class member, and is not amenable to collective resolution." *Gregurek*, 2009 WL 4723137, at *8.

While parsing the different conversations is enough, by itself, to warrant the denial of class certification, the fraudulent concealment issue raises a second individualized inquiry that

would require the examination of additional, individualized evidence. The doctrine of fraudulent concealment requires class members to establish that they relied on the alleged act of concealment. *Krot v. Fid. Nat'l Title Co.*, No. 03-14-250-CV, 2014 WL 7464084, at *4 (Tex. App. Ct. Dec. 31, 2014). Here, Plaintiff alleges that USAA Life fraudulently concealed its allegedly unlawful conduct by sending annual statements that "identified each month's cost of insurance charge while affirmatively concealing the factors that Defendant used to calculate the cost of insurance rates." Compl. ¶ 41. But Plaintiff has not presented, and cannot present, classwide proof that might show that each class member received, read, understood, or in any way *relied* on these annual statements. The element of reliance is inherently individualized, which is why the Fifth Circuit has made clear that "[r]eliance issues are fatal to a Rule 23(b)(3) class for claims of fraudulent concealment." *McManus v. Fleetwood Enters.*, *Inc.*, 320 F.3d 545, 549 (5th Cir. 2003).

### D.   Plaintiff cannot satisfy his burden of demonstrating that the statute of limitations defense as to Count III can be resolved on a classwide basis.

Another individualized hearing, with different evidence, would have to be held to resolve a different statute of limitations defense unique to Count III. Count III asserts that USAA Life's cost of insurance rates should have been lowered due to improving mortality. But some class members knew mortality was improving long enough ago that their claims are now time-barred. Determining who was aware of this trend, and therefore who may see their claims foreclosed by the statute of limitations, can only be resolved on an individualized basis.

#### 1.   Fifth Circuit precedent on statute of limitations as applied to class certification.

As with the related "fraudulent concealment" issue, Plaintiff relies on a Central District of California case in claiming that any statute of limitations inquiry is irrelevant to class certification. Pl. Br. at 28. That simply cannot be squared with the precedent that prevails in this

Circuit. For example, in *Seeligson v. Devon Energy Prod. Co*., 761 F. App'x 329, 339 (5th Cir. 2019), the Fifth Circuit ruled that a district court must consider the statute of limitations in its predominance analysis. Similarly, in *Corley v. Entergy Corp*., 220 F.R.D. 478, 488 (E.D. Tex. 2004), the court found "too many individualized issues regarding the applicable statute of limitations" to justify certification.[5]

Plaintiff cites *In re Monumental Life Insurance Co*., 365 F.3d 408, 421 (5th Cir. 2004), for the idea that statute of limitations issues "can be decided on a classwide basis." Pl. Br. at 29. But right before the language Plaintiff cites, the Fifth Circuit explained when classwide evidence cannot suffice: "Had defendants provided evidence—or even alleged—that media treatment of this issue was more prevalent in some regions of the country than in others, the district court's observation that individualized hearings are required to determine the geographic reach of constructive notice might be sustainable." *Id.* On remand, the district court denied certification based individualized statute of limitations issues. Why? Because the defendant submitted evidence that the central issue in the case was covered by media across the country. Ex. 24, *In re Industrial Life Ins. Litig.*, MDL No. 1371, Dkt. 735, Order at 10 (E.D. La. Jan. 11, 2006) ("individualized hearings would be necessary to determine whether an individual plaintiff had read about defendants' alleged discriminatory practices").

### 2. The evidence shows the need for a separate individualized inquiry involving the statute of limitations.

As in *Monumental Life*, media coverage about a key liability theory—here, that mortality was improving—creates individualized statute of limitations issues. Exhibit 25 documents the

---

[5] *See also Johnson v. Kansas City S. Ry. Co*., 208 F. App'x 292, 296-97 (5th Cir. 2006) ("individual issues, e.g., statute of limitations, deed interpretation, and center-line theory, predominate over the common ones"); *Verde*, 2016 WL 9022449, at *10 (statute of limitations and other issues "require an individualized inquiry").

extensive media coverage about improved mortality in the United States, and includes articles from 1999 to 2012. The extent of any class member's knowledge of this trend is inherently individualized. Stories about improving mortality have appeared at different times in different newspapers for decades. The coverage tended to be extensive in areas with older populations, such as Miami and Phoenix, and less extensive elsewhere, as in Minneapolis and Boston. *Id.* Only an individualized inquiry can resolve who might have been put on notice of mortality improvement and who was not.

Plaintiff's own experience confirms this. While Plaintiff denied having seen three articles from local newspapers reporting on mortality improvement, Spegele Dep. at 74-76, he admitted his awareness of the general trend. *Id.* at 76. At trial, Plaintiff may say he did not learn of mortality improvement soon enough to bar his claim, but that just proves USAA Life's point: The resolution of this issue for Plaintiff has no bearing on the same issue for the 80,000 other members of the putative class. That is why, when faced with analogous media coverage, the district court in *Monumental Life* denied class certification on remand. *See also Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 325, 327-29 (4th Cir. 2006) (media coverage of underlying issue raises individualized limitations inquiries).

### E.   The laws of the fifty states apply, making a nationwide class impossible.

The issues described above are more than enough to require the denial of class certification. Plaintiff also cannot win certification of a nationwide class for yet another reason: His claims arise under state law, which means the Court would have to instruct the jury on the laws of all fifty states. The impracticability of this task has routinely led courts to deny class certification. "If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing the jury." *In re American Med. Sys. Inc.*, 75 F.3d 1069,

1085 (6th Cir. 1996). The legal variations arising from Plaintiff's breach of contract and conversion claims are material and numerous, as detailed the legal variation appendix. Ex. 26.

Plaintiff never argues that a nationwide class can be certified if the laws of all fifty states would apply, tacitly conceding that it cannot. Pl. Br. at 33-35 (seeking certification of a New York-only class as alternative relief if the Court finds that the laws of the 50 states apply). He instead argues that even though class members bought their policies in different states, and even though Plaintiff's own policy provides that it will be governed by New York law (where Plaintiff bought his policy), and even though state regulators in all fifty states had jurisdiction to regulate the policies sold in their states, this Court should apply Texas law to the claims of all class members around the country. As explained below, this theory cannot be squared with the choice of law provision in Plaintiff's own policy or with fundamental principles of choice of law.

### 1.   The choice of law provision in the UL3 and UL4 policies require application of the laws of all fifty states.

Plaintiff's policy includes a choice of law provision that selects New York law to govern any contract claims (in this case, Counts I, II, and III): "This policy is subject to the laws of the state where the policy is delivered. If part of the policy does not follow that law, it will be treated as if it does." Dkt. 1-1 at 6.

Plaintiff dismisses this provision as a "conformity with law" provision rather than a "choice of law" provision. These are indeed different concepts: A "conformity with law" provision says that if something in the policy conflicts with state law, then a court should amend the clause to make it lawful. A "choice of law" provision, on the other hand, describes which state's law will apply in the event of a dispute. Plaintiff's policy contains both. It first states that the policy "is subject to the laws of the state where the policy is delivered." *Id.* This is classic

"choice of law" language. The second is a "conformity" provision stating that "if part of the policy does not follow that law, it will be treated as if it does." *Id.*

Four of the cases Plaintiff cites do not even discuss contracts with both "conformity" and "choice of law" language.[6] The contracts in these cases contain only conformity language (akin to the second sentence in the USAA Life clause) but not choice of law language (akin to the first sentence in the USAA Life clause). Only *AEI Life LLC v. Lincoln Benefit Life Co*., 892 F.3d 126, 132 (2d Cir. 2018), and *DeCesare v. Lincoln Benefit Life Co*., 852 A.2d 474, 483 (R.I. 2004), addressed whether "subject to" language like that found in USAA Life's policy is a choice of law provision. The *AEI* court deferred to the holding in *DeCesare* that "subject to" is not choice of law language because it is "not nearly as explicit or unambiguous as the choice-of-law language this and other courts routinely recognize." *Id.* at 133 (quoting *DeCesare*, 852 A.2d at 482).

Whatever the merits of this view under Rhode Island law, it does not reflect Texas law, which governs choice of law matters in this Court. In *Lincoln Benefit Life Co. v. Manglona*, No. CIV. 13-2196, 2014 WL 3608893, at *1-4 (S.D. Tex. July 3, 2014), the court addressed an insurance policy with language very much like USAA Life's: "This policy is subject to the laws of the state where the app[lication] was signed. If any of the policy does not comply with the law, it will be treated by [Lincoln] as if it did." The court construed this as a choice of law provision "that selects the law of the place where the insured applied for the Policy as the law governing any contractual disputes." *Id.* at *3.

---

[6] *See* Pl. Br. at 13-14 (citing *National Sur. Corp. v. Mack*, No. CV15-35, 2015 WL 8779995 (D. Mont. 2015); *Metro. Life Ins. Co. v. Dysart*, No. 2007-116, 2008 WL 5101686 (D.V.I. Dec. 1, 2008); *Insurance Co. of N. Am. v. San Juan Excursions, Inc*., No. C05-20172, 2006 WL 2635635 (W.D. Wash. Sept. 12, 2006); *Crisler v. Unum Ins. Co.,* 233 S.W.3d 658 (2006)).

More broadly, courts in this Circuit routinely interpret policy provisions to be choice of law provisions when they use language like "subject to the laws," as USAA Life's policy does. *See*, *e.g.*, *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 311 (5th Cir. 2000); *Jimenez v. Sun Life Assurance Co.*, 486 F. App'x 398, 407 (5th Cir. 2012); *Res. Now Grp. v. O'Shea*, No. 17-cv-726, 2018 WL 453924, at *2 (E.D. Tex. Jan. 17, 2018); *Aerosmith Penny II, LLC v. Glob. Fin. & Leasing, Inc*., No. H-17-3541, 2018 WL 1394028, at *3 (S.D. Tex. Mar. 20, 2018); *XL Specialty Ins. Co. v. Osprey Underwriting Agency, Ltd*., No. 10-cv-4570, 2011 WL 13341026, at *2 (S.D. Tex. Dec. 2, 2011) (*recommendation adopted*). This Court should follow these authorities and hold that the choice of law provision in Plaintiff's policy requires the application of New York law on his contract claims.

### 2.   Texas has adopted a rebuttable presumption applying the law of the state where the policy was purchased.

Even if there were not a valid choice of law provision in Plaintiff's policy, Section 192 of the Restatement (Second) of Conflicts of Laws would control the analysis for all of Plaintiff's claims. Section 192 controls in precisely the situation Plaintiff claims exists in this case—when there is no choice of law provision. It provides that "the local law of the state where the insured was domiciled at the time the policy was applied for" should be applied if there is no choice of law provision.

Plaintiff never mentions Section 192, but the Fifth Circuit and federal courts throughout Texas have repeatedly invoked it to apply a state law that differs from the insurance company's headquarters. For example, in *Conestoga Trust v. Columbus Life Insurance Co.*, 759 F. App'x 227, 233 (5th Cir. 2019), the Fifth Circuit applied Michigan law because the plaintiff lived in Michigan at the time of purchase, even though the defendant was headquartered in Ohio. In *Mayo v. Hartford Life Insurance Co.*, 354 F.3d 400, 405-06 (5th Cir. 2004), the Fifth Circuit

applied Texas law because the policyholder lived in Texas at the time of purchase, even though the insurance company was based in Connecticut. *See also Ohio Nat'l Life Ins. Corp. v. Riley-Hagan*, No. H-08-2285, 2008 WL 5158089, at *2 (S.D. Tex. Dec. 9, 2008) (relying on Section 192, holding that Texas law applied to claims of Ohio-headquartered insurance company); *Primerica Life Ins. Co. v. Baccus*, 2007 WL 9697630, at *4 n.6 (N.D. Tex. May 14, 2007) (citing Section 192, holding that Texas law applied when insurance company was headquartered in Georgia because policyholder lived in Texas at time of purchase).

Two recent cost of insurance class actions relied on Section 192 as part of their choice of law analysis. In each instance, the court applied the laws of the states where the policyholders lived at the time of the purchase, as opposed to the law of the states where the insurance company was headquartered. *Taylor v. Midland Nat'l Life Ins. Co.*, No. 16-140, 2009 WL 7500238, at *8-9 (S.D. Iowa May 3, 2019); Ex. 19, *Glover*, Dkt. 145, Hr'g Tr. at 4-5. This Court should take the same well-settled approach and decline Plaintiff's invitation to export Texas law to cover the claims of class members from other states.

### 3. The other relevant Restatement factors require application of the laws of all fifty states.

Even if there were no choice of law provision, and even if the presumption described above did not apply, this Court would still have to apply the laws of the states of each class member to their claims, making a nationwide class impossible.

For claims not otherwise resolved by a choice of law provision or other means, Texas uses the Restatement's multi-factor "most significant relationship" test. Plaintiff's analysis of the "most significant relationship" test cites just one case: *In re Great Southern Life Insurance Co. Sales Practices Litigation*, 192 F.R.D. 212 (N.D. Tex. 2000), which applied Texas law on a nationwide basis. *See* Pl. Br. at 10-12. That opinion is an outlier. It has been criticized by other

courts. *See, e.g.*, *In re Jackson Nat'l Premium Litig.*, 193 F.R.D. 505, 510-11 (W.D. Mich. 2000); *CLN Props., Inc. v. Republic Servs., Inc.*, 688 F. Supp. 2d 892, 897-98 (D. Ariz. 2010). A more recent opinion from the Northern District of Texas expressly refused to follow it, criticized it, and applied the law of the 50 states. *Gyamarthy & Assoc., Inc. v. TIG Ins. Co*., No. 02-CV-1245, 2003 WL 21339279, at *1-2 (N.D. Tex. June 3, 2003). The court in *Gyamarthy* characterized *Great Southern* as "a wholesale 'defendant lives here' approach to the choice of law analysis." *Id.* at *2. That is not the law.

Rather than follow *Great Southern*, this Court should follow well-settled Fifth Circuit and Texas federal court precedent favoring application of the laws of all 50 states. Starting with the general choice of law factors (Section 6 of the Restatement) the Fifth Circuit, like most courts, focuses on the impact on states' policies and the expectation of the parties.[7] Both strongly favor application of the laws of all fifty states. *Spence*, 227 F.3d at 312-13, explains why. There, the defendant's allegedly defective guns were assembled and tested in Georgia, defendant's headquarters were in Georgia, and the defendant was regulated by Georgia law. But because the product was purchased in all states, the case "implicates the tort policies of all 51 jurisdictions." *Id*. at 313. The Fifth Circuit repeated this point in *Casa Orlando Apartments v. Federal National Mortgage Association*, 624 F.3d 185, 193 (5th Cir. 2010), finding that each state has an interest

---

[7] Here is the complete list of Section 6 factors:

> (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6.

in applying its own laws. That is especially important when the legal standards vary from state to state; and here, Plaintiff never claims otherwise. *See also Guillory v. United States*, 699 F.2d 781,785 (5th Cir. 1983) (applying Louisiana law to tort claim because state of plaintiff's residence "has an interest in guaranteeing a just recovery for its citizens").

The interest of each class member's home jurisdiction is even more pronounced in the insurance world, which is primarily regulated by the states. *See National W. Life Ins. Co. v. Rowe*, 164 S.W.3d 389, 391 (Tex. 2005). These states reviewed and approved the policy forms and remain interested in ensuring that their legal and regulatory requirements govern the interpretation of the class policies.

The "protection of justified expectations" also favors the application of the laws of the policyholder's home state. When plaintiffs live across the country, their reasonable expectations do not "point to the application of a single jurisdiction's laws," but instead favor application of the laws of the plaintiff's home state. *Casa Orlando*, 624 F.3d at 193. Plaintiff himself admitted that, because of the choice of law provision in the policy, he understood that his policy would be governed by the laws of New York; he also agreed that this would "be the same with all 50 states, wherever the policy was delivered those laws would govern." Spegele Dep. at 39-42.

For Plaintiff's conversion claim, the tort-specific factors of section 145 of the Restatement[8] also apply. In this context, the Fifth Circuit has held that the presence of a choice

---

[8] Here are the Section 145 factors:

> (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145.

of law provision—whether it applies to all claims or not—means that the relationship of the parties is centered in each policyholder's state of residence. *National Union Fire Ins. Co. v. American Eurocopter Corp.*, 692 F.3d 405, 409 (5th Cir. 2012). Here, each policyholder's relationship with USAA Life revolves around a state-specific policy form that was approved, regulated, and delivered in that state.

The place where the "conduct causing the injury" occurred is at best inconclusive. True, USAA Life is headquartered in Texas, but class members reviewed marketing materials, spoke with sales representatives (often located at regional offices), underwent medical examinations, made premium payments from, and chose to purchase, fund, or lapse their policy in their respective home states. *See Velasquez v. Crown Life Ins. Co.*, No. CIV M97-64, 1999 WL 33305652, at *4 (S.D. Tex. Aug. 10, 1999). Plaintiff testified that he bought his policy because he saw a local advertisement and had a telephone conversation with a USAA Life representative, not because of any actions taken in Texas. *See* Spegele Dep. at 18-22, 30-31.

Finally, the alleged "injury" here occurred in each class member's home state. They lived in these states when they discussed their purchase, filled out their applications in their home states, and wrote checks from local banks. Plaintiff admitted these points as well. Spegele Dep. at 61-64; *see also Neely v. Ethicon, Inc.*, No. 00-CV-569, 2001 WL 1090204, at *7 (E.D. Tex. Aug. 15, 2001) (applying the laws of fifty states because injury occurred where each putative class member lived); *Burleson v. Liggett Grp. Inc.*, 111 F. Supp. 2d 825, 829-30 (E.D. Tex. 2000) (defendants' headquarters were in other states, but Texas law applied because products were marketed to plaintiffs in Texas).

The same result obtains under the contract-specific factors of Restatement (Second) Conflict of Laws § 188. *See Harkes v. Accessory Corp.*, No. CIVA2:09-CV-02556, 2010 WL

919616, at *2 n.3 (D.N.J. Mar. 10, 2010) (tort and contract sets of factors are "similar"); *Gyarmathy*, 2003 WL 21339279, at *2 (conducting a combined "general analysis of sections 6, 145, and 188"). Each class member's home state still bears the most significant relationship to the class claims because that is where the contract was issued, where the subject matter of the contract (the insured life) was centered, and where the contract would eventually be performed (where the death benefit would be paid). *See Taylor*, 2019 WL 7500238, at *9-10 (analyzing § 188 and holding that the laws of the 50 states applied in a cost of insurance class action).

In sum, Fifth Circuit and Texas federal court precedent, as opposed to the outlier *Great Southern* case, establish that the laws of the 50 states apply under the most significant relationship test. This fact alone dooms Plaintiff's request for a nationwide class.

## V.     Plaintiff cannot satisfy the requirements for a Rule 23(b)(2) class.

Plaintiff seeks certification under Rule 23(b)(2) in light of his request for an injunction. As with Rule 23(b)(3), analysis of this request is unnecessary if the Court finds that Plaintiff is either an inadequate or atypical class representative, both of which are Rule 23(a) elements that Plaintiff must satisfy before moving to Rule 23(b). In any event, this case cannot qualify for Rule 23(b)(2) certification because (1) the injunction, if granted, would not benefit all putative class members, (2) the case mainly seeks damages, not injunctive relief, and (3) notice to class members and opt-out rights would be necessary, but these features are not available under Rule 23(b)(2).

### A.     Rule 23(b)(2) certification is unwarranted unless the injunction would benefit every class member and harm none of them.

Rule 23(b)(2) requires that an injunction benefit the entire class; it can be invoked when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." The

Supreme Court emphasized this point in *Dukes*: "The key to the (b)(2) class is . . . the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members. . . . In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." 564 U.S. at 360 (citations omitted). *See also Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998) (class must be "a homogenous and cohesive group with few conflicting interests among its members").

Plaintiff cannot demonstrate that his proposed injunction would benefit all class members. As explained above, if Plaintiff wins, many putative class members would pay higher rates. In addition, a material percentage of Plaintiff's proposed class no longer have active policies, as their policies lapsed or death benefits have been paid. These class members would derive no benefit from the proposed injunction. When a requested injunction fails to benefit the class as a whole, certification should be denied. *See, e.g., Langbecker*, 476 F.3d at 316-17; *Alison*, 151 F.3d at 415.

### B.   Rule 23(b)(2) certification is unwarranted if the case seeks money damages and notice and opt-out privileges are necessary.

A class may not be certified under Rule 23(b)(2) "where (as here) the monetary relief is not incidental to the injunctive or declaratory relief" or "when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 564 U.S. at 360-61; *see also Allison*, 151 F.3d at 415. Plaintiff's case revolves around individualized monetary relief for putative class members under multiple damages theories. The claim for declaratory relief adds nothing to these claims because a finding that USAA Life breached the class policies would be a necessary predicate for damages under any of his other theories. The individualized monetary relief requested under Counts I-IV is therefore much more than "incidental" to the claim for injunctive relief, rendering (b)(2) certification inappropriate.

33

Count V cannot qualify for Rule 23(b)(2) certification for yet another reason: notice and opt-out rights would be necessary, but the rule does not provide for those rights. *Dukes*, 564 U.S. at 361-62. The rule presumes that a requested injunction would benefit everyone; if it would, a mandatory, non-opt-out class makes sense. *Id.* at 362-63. But that would not be true in this case—again, Plaintiff's requested injunction would leave many class members worse off than they are now, paying higher rates as they get older. Certification under Rule 23(b)(2) would risk locking those policyholders into Plaintiff's preferred outcome, whether they like it or not.

**VI.    Plaintiff cannot satisfy his burden for certifying a New York-only class.**

In the alternative, Plaintiff asks this court to certify a class comprised of only New York policyholders. Other than the "variation in state law" problem discussed above, every reason to deny a nationwide class also compels the denial of a statewide class. Plaintiff's inability to satisfy Rule 23(a)(4)'s "adequacy" requirement due to intra-class conflicts, his abandonment of nearly 30 percent of his class, and the existence of a unique defense apply whether Plaintiff seeks a national or single-state class. The same is true with respect to the "predominance" and "cohesion" requirements under Rule 23(b)(3) and (b)(2), respectively. No class—nationwide or statewide—should be certified here.

**VII.   If this Court admits Plaintiff's expert's new damages model, then Plaintiff's damages model cannot be consistent with his liability theory.**

One final principle precludes certification of any class, nationwide or New York-only. The Supreme Court's ruling in *Comcast* requires Plaintiff to present a damages model that is consistent with his theories of liability. If it is not, class certification must be denied. 569 U.S.at 35.

USAA Life has separately moved to exclude Plaintiff's damages model, which is transparently designed to neutralize the intra-class conflict discussed above. If that motion is granted, it would leave Plaintiff with no class-wide damages model and would require the denial

34

of class certification. But if the Court denies that motion, Plaintiff's damages model would still conflict with his liability theory. That theory claims cost of insurance rates cannot take into account expected expenses or desired profit, but the damages model of Plaintiff's expert uses rates that indisputably takes those factors into account. Hamala Decl. ¶ 21. This fundamental disconnect between the liability theory and damages model is yet another flaw that, under *Comcast*, requires the denial of class certification. *Accord Ludlow v BP, P.L.C.*, 800 F.3d 674, 690-91 (5th Cir. 2015); *Maderazo v. VHS San Antonio Partners, L.P.*, No. 06-CA-535, 2019 WL 4254633, at * 7 (W.D. Tex. Jan. 22, 2019) (Garcia, J.).

WHEREFORE, Defendant USAA Life Insurance Company requests that this Court deny Plaintiff's motion for class certification.

Dated: February 24, 2020                                Respectfully submitted,

                                                        USAA LIFE INSURANCE
                                                        COMPANY

                                                        By: /s/ Eric S. Mattson
                                                        Joel S. Feldman (pro hac vice)
                                                        jfeldman@sidley.com
                                                        Eric S. Mattson (pro hac vice)
                                                        emattson@sidley.com
                                                        Kevin P. Zimmerman (pro hac vice)
                                                        kevin.zimmerman@sidley.com
                                                        Sidley Austin LLP
                                                        One South Dearborn Street
                                                        Chicago, Illinois 60603
                                                        Phone: (312) 853-7000
                                                        Fax: (312) 853-7036

                                                        Michael D. Mulvaney (pro hac vice)
                                                        mmulvaney@maynardcooper.com
                                                        Thomas J. Butler (pro hac vice)
                                                        tbutler@maynardcooper.com
                                                        Maynard Cooper & Gale
                                                        1901 Sixth Avenue North
                                                        Regions Harbert Plaza

Suite 2400
Birmingham, Alabama 35203
Phone: (205) 254-1000
Fax: (205) 254-1999

David A. Jones
Texas Bar No. 00795086
david@innocentijones.com
Innocenti Jones PLLC
110 E. Houston Street, 8th Floor
San Antonio, Texas 78205
Phone: (210) 819-4340
Fax: (210) 807-7947

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2020, a copy of the foregoing Defendant USAA Life Insurance Company's Memorandum in Opposition to Class Certification was sent via CM/ECF to all counsel of record.


/s/ Eric S. Mattson