**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ROY C. SPEGELE, individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff, | § § | No. 5:17-cv-967 |
| v. | § § | Hon. Orlando L. Garcia |
| USAA LIFE INSURANCE COMPANY, | § § § | |
| Defendant. | § | |

**USAA LIFE INSURANCE COMPANY'S REPLY IN SUPPORT OF
MOTION TO EXCLUDE EXPERT DECLARATION OF SCOTT J. WITT**

**Introduction**

In an effort to avoid the exclusion of his damages model, Plaintiff has argued himself into a series of self-defeating positions that spell the end of his individual claims, his request for class certification, or both. USAA Life showed in its motion to exclude (Doc. 59) that the damages model of Plaintiff's expert is untethered to Plaintiff's theory of liability. Plaintiff's theory—that cost of insurance rates must be based only on USAA Life's mortality expectations, and that the rates must precisely mirror those expectations—would, if adopted, lead to some class members facing *higher* rates. As USAA Life explained in its response to Plaintiff's motion for class certification, that creates an intra-class conflict that makes certification impossible. *See* Doc. 61 at 11-14.

Through his expert, Plaintiff tries to dodge this reality by asserting a new theory: cost of insurance rates, he now contends, need not be based only on USAA Life's mortality expectations; they just need to be capped at those hypothetical mortality-only rates. Besides being raised too late, this new theory is legally untenable, for reasons outlined below and in USAA Life's opening motion. As a fallback position, Plaintiff argues that his expert can create a new damages model that would eliminate the unlawful "heads I win, tails you lose" aspect of his extant model. That proposal too comes too late. In any event, it would just underscore the intra-class conflict that the original model tried to circumvent in the first place, thereby requiring the denial of class certification.

**Argument**

I. **The Court should conduct a full *Daubert* analysis at the class certification stage.**

Plaintiff asserts that only a "limited" inquiry into the reliability of his expert's report is appropriate at class certification. Doc. 71-1 at 3-4. A few cases have taken this position, but the

1

Fifth Circuit has not. To the contrary, the Fifth Circuit has held that class certification must rest on "admissible evidence," *see Unger v. Amedisys Inc.*, 401 F.3d 316, 319 (5th Cir. 2005), and expert opinion that does not meet the standards of Fed. R. Evid. 702 is, by definition, inadmissible. For these reasons, courts in this Circuit generally scrutinize challenges to the admissibility of expert opinions with the same rigor at class certification as they would at summary judgment or trial. *See Maderazo v. VHS San Antonio Partners, L.P.*, No. 06-cv-535, 2019 WL 4254633, at *6 (W.D. Tex. Jan. 22, 2019) (Garcia, J.); *Bell v. Ascendant Solutions, Inc.*, No. 01-cv-166, 2004 WL 1490009, at *2 (N.D. Tex. July 1, 2004), *aff'd*, 422 F.3d 307 (5th Cir. 2005); *Cannon v. BP Prod. N. Am., Inc.*, No. 10-cv-622, 2013 WL 5514284, at *6 (S.D. Tex. Sept. 30, 2013). It is also the majority rule nationally. *See Class certification hearing—Use of experts on class certification*, 1 McLaughlin on Class Actions § 3:14 (16th ed. 2019) ("Supreme Court insistence that Rule 23 criteria be *in fact* satisfied, makes arguments against full-blown *Daubert* analysis untenable.").

## II.     Plaintiff's attempt to avoid the exclusion of his expert's report dooms his individual claims.

In an effort to avoid the exclusion of the opinions of his expert, Scott Witt, Plaintiff talks in circles about what his theory of the case actually is. In his Complaint and other filings, Plaintiff repeatedly inserted the word "only" into his policy's cost of insurance rate provision, arguing that USAA Life may "use only its 'expectations as to future mortality experience'" when determining cost of insurance rates." Doc. 1 ¶ 31. But now, in an effort to show that Witt's "heads I win, tails you lose" model is consistent with his theory of the case, Plaintiff proffers a different interpretation. Plaintiff now concedes that USAA Life can take into account expenses, profit, and other factors when setting its rates, so long as the cost of insurance charges do not exceed those determined using hypothetical mortality-only rates. Doc. 71-1 at 4. Plaintiff also

says USAA Life can still consider "competitive pressures" that would lead to lower rates. *Id.* at 5 n.5. In other words, Plaintiff's new theory is that cost of insurance rates should be capped at the company's mortality expectations, rather than "based only on" those expectations.

That new theory, besides not being pled in the complaint, is obviously inconsistent with the policy language. Here is what the policy says:

> Current cost of insurance rates are based on our expectations as to future mortality experience. Any changes to cost of insurance rates will apply to all persons of the same age, sex and rate class.

Doc. 1-1 at 15.  Here is how Plaintiff asserted that the policy should be interpreted in his prior filings:

> Current cost of insurance rates are based [*only*] on our expectations as to future mortality experience. Any changes to cost of insurance rates will apply to all persons of the same age, sex and rate class.

Plaintiff's new theory is that the rates should be *capped* at USAA Life's mortality expectations. He wants to remove the words "based on" and rewrite the policy as follows:

> Current cost of insurance rates are ~~based on~~ [*capped at*] our expectations as to future mortality experience. Any changes to cost of insurance rates will apply to all persons of the same age, sex and rate class.

Not only does this new theory improperly alter the language of the policy, it also conflicts with the very next sentence of the policy, which provides the *actual* cap for cost of insurance rates: "the Table of Monthly Guaranteed Cost of Insurance Rates found in the Policy Schedule page." Doc. 1-1 at 15. It would make no sense to provide a table of maximum rates if the rates were already capped through some other mechanism that Plaintiff has divined in the policy language.

So one of two things is true. Either Plaintiff has altered his theory of the case such that he now believes the "expectations as to future mortality experience" language to be a *cap* on the cost of insurance rate, or Plaintiff is stuck with the theory of the case he repeatedly outlined in

3

prior pleadings. Under the first scenario, USAA Life would be entitled to summary judgment because Plaintiff's new interpretation is plainly inconsistent with the policy. But if Plaintiff is bound by his prior theory of the case, the Court should exclude Witt's report because his model is too far removed from that theory.

### III.     Witt's model is untethered to Plaintiff's original theory of liability.

Plaintiff and his expert contend that Witt's report is still tethered to his theory of liability because Witt is not obligated to calculate and credit any "offset" that USAA Life hopes to recover on account of actual rates that were lower than Plaintiff's hypothetical rates. Doc. 71-1 at 2, 4-5; Doc. 74-3 at 6-7 ¶ 15. Both Plaintiff and his expert have a fundamentally mistaken understanding of the concept of an "offset." An offset, also called a "setoff," is "a defendant's counterdemand against the plaintiff, *arising out of a transaction independent of the plaintiff's claim.*" *See* Black's Law Dictionary (11th ed. 2019) (emphasis added). USAA Life is not pursuing an "offset" arising from some independent transaction; it is insisting that any damages model conform to basic principles governing contract damages. Under those principles, the model must at least attempt to put class members in "the same position, so far as money can do it, as [they] would have been had there been no injury or breach." *Lee v. S. Home Sites Corp.*, 429 F.2d 290, 293 (5th Cir. 1970); *see also E.J. Brooks Co. v. Cambridge Sec. Seals*, 105 N.E.3d 301, 304 (N.Y. 2018) ("[C]ompensatory damages must return the plaintiff, as nearly as possible, to the position it would have been in had the wrongdoing not occurred—but do no more."). Witt's current model does not do that.

An example proves the point. In *Halberstam v. Allianz Life Insurance Co.*, plaintiff owned a life insurance policy, and the court determined that the defendant had improperly lapsed the policy. No. 16-cv-6854, 2018 WL 6683852, at *1-2 (E.D.N.Y. Dec. 19, 2018). The plaintiff

4

was entitled to a reinstatement of the policy, but to put him in "the same economic position that he would have occupied" without the breach, the court had to account for "the premium payments equivalent to the amounts that the [plaintiff] would have paid" between the wrongful lapse and the present day. *Id* at *2. This was not the result of an "offset"—it was just part of the proper calculation of damages.

The same principle applies here. Plaintiff repeatedly alleged in his Complaint and other filings that "[t]he Class Policies authorize USAA to use only its mortality expectations when determining the [Cost of Insurance] Rate used to calculate the [Cost of Insurance] Charge." Doc. 55-1 at 4; *see also* Doc. 59 at 3-5. To put Plaintiff in the same position he would have been in had there been no breach (under Plaintiff's theory of breach), Witt would have to calculate hypothetical cost of insurance rates designed to recoup only USAA Life's expected payout of death benefits, and then compare the charges using hypothetical rates with the actual charges. That is not what he did. Instead, Witt's model selects the *lesser* of the hypothetical cost of insurance rates or the rates USAA Life actually used. The problem is not that the model fails to calculate an "offset," but that it fails to calculate damages attributable to the alleged breach. This makes it "ill-fitting" and inadmissible. *See Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1233-34 (11th Cir. 2009).

Plaintiff also points to Witt's testimony in *Vogt v. State Farm Life Insurance Co.* as evidence of the admissibility of his model here. *See* Doc. 71-1 at 3 n.3, 5-6. But Plaintiff is careful not to say that Witt survived a *Daubert* challenge in that case—he didn't. As the *Vogt* court explained after the trial, the defendant did not make a timely *Daubert* motion, so it "waived its objections to the admissibility of Scott Witt's testimony." No. 16-cv-4170, 2018 WL 4937330, at *2 (W.D. Mo. Oct. 11, 2018), *appeal docketed*, No. 18-3419 (8th Cir.). *Vogt* thus

5

only examined the sufficiency of the evidence at trial, which required State Farm to meet "a much higher standard than a *Daubert* motion." *Id.* at *3. USAA Life is asking this Court to take a step the court in *Vogt* was never asked to take.

Plaintiff has also offered as supplemental authority the Northern District of California's recent order in *Bally v. State Farm Life Insurance Co.*, No. 18-cv-4954 (N.D. Cal. Apr. 2, 2020), but that opinion has little bearing on the issues before this Court. First, the court relied on Ninth Circuit authority that a *Daubert* analysis "should not prevent a court from considering expert testimony at the class certification stage" because "inadmissibility alone is not a proper basis to reject evidence submitted in support of class." *Id.* at 6-7. But that is not the law in the Fifth Circuit, where "findings must be made based on adequate admissible evidence to justify class certification." *Unger*, 401 F.3d at 319. Beyond that, Witt's report in *Bally* did what he should have done (but did not do) here. In *Bally*, Witt's model *did* "charge a higher rate than the policyholder was actually charged" if the hypothetical mortality-only rate was higher than the actual rate. *Bally* Order at 11-12. Consequently, there was no disconnect between the damages model and the theory of liability, as there is here. *Bally* also says nothing about the inadequacies in Witt's model with respect to Count II or Count III.

**IV.    It is too late for Plaintiff to fix Witt's faulty analysis.**

Plaintiff tries to assure the Court that Witt's model need not be excluded because Witt can adjust the calculations for the class later. *See* Doc. 71-1 at 5-6. But "we'll fix it later" is not an acceptable response at this stage of the case. In *Comcast*, the Supreme Court "rejected the view" that "plaintiffs' 'assurances' that they could fix the model at the merits stage would be sufficient for certification." *Cannon,* 2013 WL 5514284, at *5, *12; *Carrera v. Bayer Corp.*, 727 F.3d 300, 311 (3d Cir. 2013). "The fault for not supplying a more detailed expert report lies

with" the party that served it. *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 362 F. Supp. 2d 526, 559 (D.N.J. 2005).

In making this belated request, Plaintiff also argues himself into a corner. If Witt were allowed to change his damages model to reflect Plaintiff's actual theory of the case, then Plaintiff would be left with no answer to the pervasive intra-class conflict discussed in USAA Life's opposition to class certification. *See* Doc. 61 at 11-14; *see also Taylor v. Midland Nat'l Life Ins. Co.*, No. 16-cv-140, 2019 WL 7500238, at *3 (S.D. Iowa May 3, 2019), *cited in* Doc. 71-1 at 3 n.3 (finding, under a limited *Daubert* inquiry, that a report from Witt need not be excluded, but then denying class certification). Plaintiff claims that the proposed change to has model would have only a "minute impact" on the numbers, *see* Doc. 71-1 at 6, but he has no way to know this: His expert hasn't done the work. In contrast, USAA Life's experts have done substantial analysis on this front, and the data they have uncovered points to precisely the opposite conclusion. *See* Doc. 62-2, Pfeifer Rep. ¶¶ 48-49; Doc. 62-1, Merrill Rep. at 42-43; *see also* Doc. 64-1, Hamala Decl. ¶ 21.

## V. Witt's damages model does not—and cannot—calculate Count II damages.

In Count II, Plaintiff alleges that USAA Life breached the policy by considering expenses when setting cost of insurance rates. Witt's report says that damages for Count II can be calculated by "isolating that part of overcharges attributable to non-mortality related expenses." Doc. 55-3, Witt Decl. ¶ 71. But at his deposition, he admitted that his model does no such thing. Instead, Witt sets damages for Count II exactly equal to damages for Count I on the assumption that anything besides mortality—including profit—is an "expense." Ex. 1, Witt Dep. at 70.

Plaintiff now doubles down on the alleged factual support for the argument that "expenses" equals "anything besides mortality." For instance, he points to testimony from two

7

USAA Life witnesses acknowledging that the company considered expenses when setting rates. *See* Doc. 71-1 at 7-8 (citing Doc. 74-3, Witt Decl. II ¶ 17). But that ignores the fact that USAA Life actuaries also considered many other assumptions, such as investment experience, lapses, and profit, none of which can fairly be considered "expenses." *See* Ex. 2, Branaum Dep. at 40-41; Ex. 3, Hamala Dep. at 154; Ex. 4, Rosser Dep. at 47, 52-54, 108-109, 127-128; Doc. 55-21 (Witt Ex. 17) at 000002-04 (listing pricing assumptions). Witt himself agrees with this undisputed fact. Doc. 55-3, Witt Rep. ¶ 53 (highlighting testimony "confirming USAA's use of expenses, profit, investment experience, lapse, and tax assumptions in determining COI Rates"); *see also* Ex. 1, Witt Dep. at 74. At the beginning of this case, Plaintiff himself believed that "USAA factored into cost of insurance rates components for its tax liabilities, profit assumptions, investment earnings, and capital and reserve requirements." Doc. 29 at 8 n.1. He cannot walk away from these admissions now merely to try to salvage Count II.

USAA Life's cost of insurance rates were based on mortality but also took into account expenses and multiple other assumptions. Witt's model offers no way of isolating those other assumptions and limiting his analysis to the supposedly improper consideration of expenses—the very theory behind Count II. His report on this point should therefore be excluded. *See Cruson v. Jackson Nat'l Life Ins. Co.*, No. 18-40605, --- F.3d ----, 2020 WL 1443531, at *12 (5th Cir. Mar. 25, 2020) (expert report failed to explain how damages would be calculated, which meant it was "inadequate to meet plaintiffs' burden to show that these kinds of damages are appropriate for class treatment").

### VI. Witt failed to perform the required analysis to calculate damages for Count III.

Plaintiff initially concedes that Witt's failure to analyze Count III (or Count II) might make his model inadmissible. It "may be true at the merits stage or trial," Plaintiff admits, that

8

"Witt's model must be excluded because he does not perform all of the calculation steps for Count II and Count III." Doc. 71-1 at 7. Yet Plaintiff contends that this is not a problem at the class certification stage. Plaintiff cites a single case from the Southern District of New York stating that an expert need not "*perform* his analyses at the class certification stage." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 414 (S.D.N.Y. 2015). This approach is consistent with the practice of federal courts in New York that apply a "limited" *Daubert* inquiry at the class certification stage. *See In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 66 (S.D.N.Y. 2009). But as explained above, that is neither the prevailing nor the better rule. This Court should apply a full *Daubert* inquiry at this stage and exclude the testimony of Plaintiff's expert.

*Scotts* also illustrates why Witt's methodology is deficient. *Scotts* recognized (as USAA Life argues here) that courts routinely reject damages methodologies when they "do not attempt to isolate" the damages attributable to the allegedly wrongful conduct. 304 F.R.D. at 414. That rule did not require exclusion in *Scotts* because the expert's model *did* "match plaintiffs' theories of liability." *Id*. at 413-15. The same cannot be said of Witt's approach here.

The *Scotts* expert also explained how he would conduct his analysis. At his deposition, the expert "identified statistical methodologies by which he will be able to isolate" the damages attributable to the wrongful conduct, "and described each methodology in detail." *Id*. at 414. Again, for Count III, Witt did no such thing. Even if Witt was not obliged to "calculate the class-wide damages for 80,000+ policies at the class certification stage," *see* Doc. 71-1 at 1, he has not calculated damages for even the named Plaintiff for Count III. Witt explained what he *might* do to calculate those damages, but he provided no explanation for how he would generate hypothetical cost of insurance rates from the documents Plaintiff cites. He could not even identify which documents he would use. Ex. 1, Witt Dep. 80-83. Plaintiff now says Witt will use

9

certain qualitative actuarial memoranda identified in USAA Life's interrogatory responses, and that "Witt is clear about how such expectations would be incorporated into his model for Count III." Doc. 71-1 at 8-9. But the evidence Plaintiff cites for this proposition—portions of Witt's original declaration—says nothing about how Witt would use these memoranda to generate his hypothetical rates.

Creating these rates, moreover, is not simple arithmetic. Witt explained that, if he were charged with deducing mortality-only rates from USAA Life's documents, "this is where some actuarial judgment may come in." Ex. 1, Witt Dep. at 82-83. The *Bally* order Plaintiff identified as supplemental authority concluded that, in contrast to this case, "Witt Used His Actuarial Judgment." *Bally* Order at 8. For whatever reason, Witt has not explained how he would exercise that judgment in this case. Without such an explanation, his model is a speculative work in progress and must be excluded. *See In re Rail Freight Fuel Surcharge Antitrust Litig.* 725 F.3d 244, 254 (D.C. Cir. 2013).

Dated: April 6, 2020

Respectfully submitted,

By: /s/ Eric S. Mattson

David A. Jones
Texas Bar No. 00795086
david@innocentijones.com
INNOCENTI JONES PLLC
110 E. Houston Street, 8th Floor
San Antonio, Texas 78205
Phone: (210) 819-4340
Fax: (210) 807-7947

Joel S. Feldman (pro hac vice)
jfeldman@sidley.com
Eric S. Mattson (pro hac vice)
emattson@sidley.com
Kevin P. Zimmerman (pro hac vice)

10

kevin.zimmerman@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn St.
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

Michael D. Mulvaney (pro hac vice)
mmulvaney@maynardcooper.com
Thomas J. Butler (pro hac vice)
tbutler@maynardcooper.com
MAYNARD COOPER & GALE
1901 Sixth Avenue North
Regions Harbert Plaza
Suite 2400
Birmingham, Alabama 35203
Phone: (205) 254-1000
Fax: (205) 254-1999

*Counsel for Defendant USAA Life Insurance Company*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on April 6, 2020, a copy of the foregoing document was sent via CM/ECF to all counsel of record.

                     /s/ Eric S. Mattson
                     Eric S. Mattson