**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| ROY C. SPEGELE, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>USAA LIFE INSURANCE COMPANY,<br><br>        Defendant. | Case No. 5:17-cv-967-OLG |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

I.    SPEGELE SATISFIES THE ADEQUACY REQUIREMENT. ............................................ 2

   A.   There Are No Intra-Class Conflicts. .................................................................. 2

   B.   Spegele's Request for Certification of a Class of UL3 and UL4 Policy Owners
        Does Not Render Him Inadequate. ..................................................................... 4

   C.   Spegele Is Not Subject to Unique Defenses. ...................................................... 6

II.   SPEGELE SATISFIES PREDOMINANCE. ........................................................... 7

   A.   Extrinsic Evidence Regarding Class Members' Subjective Understandings of the
        Class Policies Will Not Be Admissible. ............................................................ 7

   B.   Spegele's Tolling Allegations Can Be Resolved Class-Wide. ........................... 9

   C.   Texas Law Applies to the Class. ...................................................................... 11

      1.   The Class Policies' Conformity with Laws Provision Is Not a
           Choice of Law Provision. ......................................................................... 11

      2.   Texas Has the Most Significant Relationship to the Parties and Issues in Dispute. ...... 12

III.  RULE 23(B)(2) IS SATISFIED. ......................................................................... 19

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

Cases

*Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303 (S.D. Cal. 2015) ..................................... 5

*American Airlines v. Wolens*, 513 U.S. 219 (1995) ................................................... 15

*Archer v. Tregellas*, 566 S.W.3d 281 (Tex. 2018) ..................................... 10

*Ballan v. Upjohn Co.*, 159 F.R.D. 473 (W.D. Mich. 1994) ..................................... 6

*Bally v. State Farm Life Insurance Co.*, 2020 WL 1643681 (N.D. Cal. Apr. 2, 2020) ............. 8, 9

*Caldera v. Am. Med. Collection Agency*, 320 F.R.D. 513 (C.D. Cal. 2017) ................................ 5

*Casa Orlando Apartments, Ltd. v. Federal Nat'l Mortg. Ass'n*,
  624 F.3d 185 (5th Cir. 2010) ......................................... 15

*Cheatwood v. Barry Univ., Inc.*, 2002 WL 4629 (Fla. Cir. Ct. Jan. 1, 2001) ............................... 6

*Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*,
  94 S.W.3d 163 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ........................................... 14

*CLN Props., Inc. v. Republic Servs., Inc.*, 688 F. Supp. 2d 892 (D. Ariz. 2010) ........................ 19

*Conestoga Tr. v. Columbus Life Ins. Co.*, 759 F. App'x 227 (5th Cir. 2019) ............................. 13

*Congdon v. Uber Techs., Inc.*, 291 F. Supp. 3d 1012 (N.D. Cal. 2018) ........................................ 8

*Cruson v. Jackson Nat'l Life Ins. Co.*, 2020 WL 1443531 (5th Cir. Mar. 25, 2020) ............... 8, 19

*DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex. 1990) ....................................... 15

*E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289 (5th Cir. 2020) ........................ 19

*Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953 (N.D. Cal. June 13, 2014) ............................... 8

*Ewert v. eBay, Inc.*, 2010 WL 4269259 (N.D. Cal. Oct. 25, 2010) ............................................ 8

*Feller v. Transamerica Life Ins. Co.*, 2017 WL 6496803 (C.D. Cal. Dec. 11, 2017) ................... 8

*Great American Insurance Co. v. Primo*, 512 S.W.3d 890 (Tex. 2017) ........................................ 8

*In re Great S. Life Ins. Co. Sales Practices Litig.*, 192 F.R.D. 212 (N.D. Tex. 2000) ..... 17, 18, 19

*Gregurek v. United of Omaha Life Insurance Co.*,
2009 WL 4723137 (C.D. Cal. Nov. 10, 2009).........................................................8

*Guillory v. United States*, 699 F.2d 781 (5th Cir. 1983)..........................................15

*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014).............................10

*Hallmark County Mutual Ins. Co. v. ACE American Ins. Co.*,
283 F. Supp. 3d 559 (W.D. Tex. 2017).....................................................................8

*In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*,
920 F. Supp. 2d 1050 (N.D. Cal. 2013) ..............................................................8, 16

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*,
270 F.R.D. 521 (N.D. Cal. 2010).............................................................................15

*In re Farmers & Ranchers Mut. Ins. Co.*,
2008 WL 2133116 (Tex. App.—San Antonio May 21, 2008, no pet.) ...................17

*In re Gen. Agents Ins. Co. of Am., Inc.*,
224 S.W. 3d 806 (Tex. App.—Houston [14th Dist.] 2007, no pet. .........................15

*In re Jackson Nat'l Life Ins. Co. Premium Litig.*, 193 F.R.D. 505 (W.D. Mich. 2000) ..............19

*In re Monumental Life Ins. Co.*, 365 F.3d 408 (5th Cir. 2004)....................................5

*In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013)....................11

*Inglish v. Prudential Ins. Co. of Am.*,
928 S.W.2d 702 (Tex. App.—Houston [1st Dist.] 1996, writ denied ....................17

*Johnson v. Yahoo! Inc.*, 2018 WL 835339 (N.D. Ill. Feb. 13, 2018)............................6

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) ......................................11, 15

*Leszczynski v. Allianz Ins.*, 176 F.R.D. 659 (S.D. Fla. 1997) ...................................15

*Lincoln Nat. Life Ins. Co. v. Bezich*, 33 N.E.3d 1160 (Ind. Ct. App. 2015) .................3

*Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400 (5th Cir. 2004)...................................13

*Nat'l Union*, 692 F.3d 405 (5th Cir. 2012) ..............................................................18

*Nat'l Western Life Ins. Co. v. Rowe*, 164 S.W. 3d 389 (Tex. 2005)............................16

*Ohio Nat. Life Assur. Corp. v. Riley-Hagan*, 2008 WL 5158089 (S.D. Tex. Dec. 9, 2008) ........13

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ..............................................15

*Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*,
   100 F. App'x 296 (5th Cir. 2004) ................................................................... 11, 13

*Primerica Life Ins. Co. v. Baccus*, 2007 WL 9697630 (N.D. Tex. May 14, 2007) ..................... 13

*Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 271 S.W. 3d 228 (Tex. 2008).............. 19

*Spence v. Glock, Ges.m.b.H*, 227 F.3d 308 (5th Cir. 2000) ........................................... 16

*Taylor v. Midland Nat'l Life Ins. Co.*,
   2019 WL 7500238 (S.D. Iowa May 3, 2019) ........................................... 10, 13, 17

*Torres v. S.G.E., Mgmt., L.L.C.*, 838 F.3d 629 (5th Cir. 2016) ........................................ 4, 10, 11

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) .......................................... 4

*United States v. Renda Marine, Inc.*, 667 F.3d 651 (5th Cir. 2012) ............................... 3

*Via Net v. TIG Ins. Co.*, 211 S.W. 3d 310 (Tex. 2006) .................................................. 10

*Vine v. PLS Fin. Servs., Inc.*, 331 F.R.D. 325 (E.D. Tex. 2019) ..................................... 4

*Vogt v. State Farm Life Ins. Co.*, 2018 WL 4937069 (W.D. Mo. Oct. 11, 2018).......................... 3

*Vogt*, 2018 WL 1747336 (W.D. Mo. Apr. 10, 2018)...................................................... 6

*Yue v. Conseco Life Ins. Co.*, 2009 WL 10671418 (C.D. Cal. Dec. 7, 2009).............................. 7

<u>Rules</u>

Fed. R. Civ. P. 5(b)(E) ............................................................................................ 22

<u>Other Authorities</u>

Restatement (Second) of Conflict of Laws § 6 (1971) ............................................ 22, 23, 27, 28

Restatement (Second) of Conflict of Laws § 188 (1971) ........................................... 20

Restatement (Second) of Conflict of Laws § 192 (1971) ................................... 16, 17, 18

Restatement (Second) of Conflict of Laws § 206 (1971) ........................................ 17

Restatement (Second) of Contracts § 211(2) (1981) .............................................. 19, 23

## <u>INTRODUCTION</u>

USAA does not contest satisfaction of Rule 23(a)'s requirements of numerosity, typicality, and adequacy of Class Counsel. Nor does USAA dispute that a class action would be superior under Rule 23(b)(3) for resolving each proposed class member's claims. USAA's challenges to the remaining certification requirements fail, and therefore, the proposed class should be certified.

First, USAA wrongly contends Spegele's proffered damages model would harm some class members. Under no circumstances is this true. Every class member would benefit if USAA were limited to using only its expectations as to future mortality experience to determine COI Rates such that USAA could not tack substantial, undisclosed loads onto those rates, and no class members could be harmed by having their COI overcharges returned.

Second, USAA's contention that Spegele is inadequate for narrowing his proposed class definition is unsupported by any reasoned case law.

Third, USAA's statute of limitations arguments fail. Even if Spegele and some class members read somewhere that mortality expectations were generally improving, that knowledge could not put any class member on notice that their assessed COI Rates violated the Policy or that *USAA's* expectations for the proposed class were similarly improving. USAA never disclosed its COI Rates, mortality assumptions, pricing information, or mortality studies to policy owners, so no class member knew, or could have known, what rates USAA was using or, much less, of the alleged wrongful conduct. Likewise, USAA fails to contest that Spegele's discovery rule allegations can be resolved class-wide, and recent Fifth Circuit precedent supports class-wide resolution of Spegele's fraudulent concealment allegations.

Fourth, USAA argues for application of individualized extrinsic evidence to interpret each policy at issue here, yet it fails to respond to Spegele's challenges to the tenuous extrinsic evidence it has offered. In any event, the Class Policies are standardized, form contracts, and the subjective understanding of the consumer is irrelevant. USAA seeks to flip on its head the rule that ambiguous standard form contract provisions are construed against the drafter, such that the burden would shift to those who did not draft the Policy—the very policy owners the rule is intended to protect. Undoubtedly, if the shoe were on the other foot, USAA would not argue that each of its policies should be construed consistent with the numerous and varied subjective understandings of its thousands of customers.

Fifth and finally, as to choice of law, USAA fails to refute the cases that conclude a conformity with laws provision like that in the Class Policies is not a choice of law provision—none of the cases upon which USAA relies address the issue at all. Further, USAA's most significant relationship analysis misconstrues the relevant factors. Thus, certification of a nationwide class under Texas law is appropriate. Still, even if the Court agrees with USAA's arguments, the Court should nevertheless certify a New York-only class, particularly where New York case law is clear that USAA's interpretation of the policies fails.

## I.    SPEGELE SATISFIES THE ADEQUACY REQUIREMENT.

### A.    There Are No Intra-Class Conflicts.

Instead of determining COI Rates "based on [USAA's] expectations as to future mortality experience" (Ex. 11[1] at 12), USAA employs undisclosed non-mortality considerations to increase COI Rates and inflate COI Charges to policy owners. Witt Dec. at ¶¶ 50-57. Spegele's damages methodology formulaically calculates the excess USAA included in COI Rates over rates it

---

[1] Exhibits from Spegele's class certification motion, opposition to summary judgment, and opposition to exclude expert are incorporated by reference and cited herein. Docs. 63 & 73-74.

internally determined using its "expectations as to future mortality experience." *Id.* at ¶¶ 62-70, 81-85. These excess amounts are appropriately accumulated at the policy-provided interest rate to compute total damages. *Id.* at ¶¶ 19(d) & 63. No policy owner will experience higher COI Charges or otherwise be worse off because of this lawsuit.

USAA attempts to manufacture an intra-class conflict by unilaterally amending Spegele's claims and requests that, *on USAA's behalf*, the calculated overcharges should be offset by the amounts USAA could have, but did not, charge class members in those rare instances where it charged less than its mortality expectations. Doc. 61 at 11-12. Of course, Spegele is under no obligation to pursue and prove USAA's unpled affirmative defense. *See United States v. Renda Marine, Inc.*, 667 F.3d 651, 659 (5th Cir. 2012); Doc. 36 (USAA failed to assert offset as a counterclaim or an affirmative defense).[2]

In any event, no policy owner can possibly be worse off from this action, including if this Court grants injunctive relief, because Spegele has only requested that USAA be prohibited from *overcharging* policy owners. Thus, a favorable order would require USAA to *lower* its contractually noncompliant COI Rates—no rates will be raised because of this action. *See Vogt v. State Farm Life Ins. Co.*, 2018 WL 4937069, at *3 (W.D. Mo. Oct. 11, 2018) (rejecting similar

---

[2] USAA mischaracterizes Spegele's damages methodology as a "heads I win, tails you lose" approach. Doc. 61 at 13. USAA's particular phrasing is of note because it is the very phrase used by the Indiana Court of Appeals in criticizing the interpretation offered by USAA here. That court recognized that it is, in fact, USAA's approach that would create an injustice. *See Lincoln Nat. Life Ins. Co. v. Bezich*, 33 N.E.3d 1160, 1171 (Ind. Ct. App. 2015), *transfer granted, opinion vacated by rule*, 37 N.E. 3d 493 (Ind. 2015) ("[W]e cannot help but comment upon the absurdity of [defendant insurer's] own interpretation of the COI rate provision, which is that the [Policy] *allows* [the insurer] *to unilaterally increase rates* on customers to reflect a change in mortality factors but offers no parallel commitment to decrease rates despite an overwhelming improvement in mortality. We have grave doubts that any policyholder of average intelligence would read the COI rate provision to confer on Lincoln that sort of 'heads we win, tails you lose' power") (emphasis in original).

argument, stating "State Farm has always taken the position that it had discretion under the policy to set rates at any level, so long as they were under the guaranteed maximum in the policy, and this lawsuit only lowered that ceiling, to the benefit of all class members").[3]

Finally, USAA contrives a disconnect between Spegele's liability theory and damages methodology, claiming that even COI Rates below USAA's "expectations as to future mortality experience" somehow include "expected expenses or desired profit." Doc. 61 at 35. As a threshold matter, this *post hoc* contention created solely for this litigation lacks any support in relevant pricing documents, likely because it lacks logical sense that USAA could recover expenses or profit through COI Rates that are below USAA's mortality expectations. Moreover, USAA identified and verified under oath its mortality expectations for the Class Policies. Witt Dec. at ¶¶ 44-49. Spegele's damages methodology uses those very expectations to determine the amount of the overcharges. In short, Spegele's damages model aligns with his theory of liability.[4]

### B. Spegele's Request for Certification of a Class of UL3 and UL4 Policy Owners Does Not Render Him Inadequate.

USAA next challenges Spegele's adequacy because the Class he seeks to certify is allegedly narrower than the class he initially defined in his Complaint. For instance, Spegele removed from the proposed Class individuals with New Jersey-issued policies after learning through discovery that, upon demand by the New Jersey Department of Insurance, USAA changed the language in

---

[3] Spegele agrees with USAA that damages for breach of contract are to put the non-breaching party in the same position they "would have been had there been no injury or breach." *See* Doc. 79 at 4. In this case, that means removing USAA's unauthorized loads from COI Charges; not, as USAA contends, by increasing COI Charges for policy-compliant (non-breaching) transactions.

[4] USAA's other criticisms of Spegele's expert's model are unfounded and have been previously addressed. *See* Doc. 73 at 7-10. But even if the Court were to conclude Spegele's damages model cannot be used to prove damages class-wide, the issue of whether USAA breached the contract is common to the Class and should be certified. *See Vine v. PLS Fin. Servs., Inc.*, 331 F.R.D. 325, 338 (E.D. Tex. 2019) (citing *Torres v. S.G.E., Mgmt., L.L.C.*, 838 F.3d 629, 645 n.74 (5th Cir. 2016) (en banc)); *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

its New Jersey policies to disclose that factors in addition to its mortality expectations were being considered.[5] *See* Doc. 63 at 27-28. USAA does not explain why tailoring the Class to meet the requirements of class certification to only those entitled to recover makes Spegele an inadequate representative.[6] USAA also cites no case for the proposition that a class definition in a complaint is binding on the plaintiff for the remainder of the case, or that a plaintiff is required to formally amend his complaint to move for certification on a narrower class definition. *Cf. Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 306 (S.D. Cal. 2015) ("[T]his Court agrees with plaintiff that the new definition is simply a narrower version of the class definition presented in the TAC, which is allowable.").

USAA's arguments also conflict with Rule 23(c)(1)(C), which allows a certification order to be modified or amended at any time before final judgment, and would undermine the Court's discretion to certify a class different from the one the plaintiff proposed. *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004). It also would be inefficient to prohibit a plaintiff from modifying a class definition to account for facts learned through discovery. *See Caldera v. Am. Med. Collection Agency*, 320 F.R.D. 513, 518 (C.D. Cal. 2017) (stating plaintiff "appropriately decided to narrow the class definition after conducting additional discovery").

While USAA recognizes that courts allow a class representative to move on a narrower class

---

[5] USAA's characterization that only "one state regulator (out of fifty)" took issue with the policy language is, at best, misleading. Doc. 80 at 2. Even USAA's own actuaries acknowledge that New Jersey's regulators conduct a far more thorough investigation compared to other state departments of insurance. *See* Ex. 6 at 133:22-134:3.

[6] While it is true that Spegele sought discovery as to the UL1 and UL2, which Spegele does not now include in the proposed class, those were predecessor policies to the UL3 and UL4; thus, materials pertaining to those policies were relevant, or at least potentially relevant, to a case focused on UL3 and UL4 only. Additionally, discovery confirmed that the UL1 and UL2 contained certain differences such that counsel for Spegele determined that they should not be included in the proposed class, differences that USAA would likely have challenged if Spegele had sought their inclusion in the class.

definition (Doc. 61 at 15), it asks the Court to instead follow three cases that are inapposite or provide no reasoning or support for their suggestion that a plaintiff's adequacy is impacted by proposing a narrower class definition (including a nearly 20-year old Florida state circuit court opinion not even applying Federal Rules).[7] These unpersuasive cases should not be followed.

### C.      Spegele Is Not Subject to Unique Defenses.

USAA also contends Spegele is inadequate because he is uniquely subject to its statute of limitations defense, but that is false and inconsistent with USAA's contention that its statute of limitations defense is applicable to the entire Class. *See* Doc. 61 at 20. In addition, USAA contends Spegele's awareness that mortality was improving, as a general proposition, is a fact uniquely applicable to him and arguably put him on notice of his claim that USAA breached his Policy by failing to reduce COI Rates in the face of its improving mortality. This argument fails. Spegele's awareness of generally improving mortality could not have put him on notice of his claim as a matter of law. USAA does not disclose its COI Rates, mortality assumptions, policy pricing, or mortality studies to policyholders. Spegele would have no way of knowing USAA was not reducing COI Rates to account for its improving mortality expectations. *See* Ex. B at 51:9-12, 54:10-13, 54:17-19, 60:1-4, 62:13-15; Ex. E at 46:20-22; Ex. 6 at 97:3-6, 97:18-98:12; Ex. C at 39:22-40:3; Ex. 5 at 125:4-9; Ex. 6 at 145:19-147:4; Ex. 3 at 142:3-25.

At most, Spegele could have been aware that the COI Charges deducted from his Cash Value

---

[7] *See* Doc. 61 at 15 (citing *Ballan v. Upjohn Co.*, 159 F.R.D. 473, 491-92 (W.D. Mich. 1994) (in a securities case, plaintiff sought *to shorten the class period* thereby reducing the damages available to class members); *Johnson v. Yahoo! Inc.*, 2018 WL 835339, at *4 (N.D. Ill. Feb. 13, 2018) (stating in dicta without analysis that plaintiff's move to exclude some class members in response to defendant's decertification motion raised adequacy concerns); *Cheatwood v. Barry Univ., Inc.*, 2002 WL 4629, at *5 (Fla. Cir. Ct. Jan. 1, 2001) (applying Florida rules, stating plaintiff's motion to narrow the class to exclude existing students from the class raised adequacy questions, relying on an inapposite case where a plaintiff was deemed inadequate for limiting the damages sought on behalf of the class)).

each month were increasing—but that was consistent with the fact that he was aging, which increased his mortality risk. *See Vogt*, 2018 WL 1747336, at *7 (W.D. Mo. Apr. 10, 2018) ("The mere fact that COI charges were increasing also could not have 'tipped' [plaintiff] off to the alleged overcharges, because COI charges increase as the insured ages, because of mortality expectations."); *Yue v. Conseco Life Ins. Co.*, 2009 WL 10671418, at *4 (C.D. Cal. Dec. 7, 2009) (holding policy owner is not put on notice of the insurer's inclusion of non-mortality loads in a COI rate because the annual notice "does not disclose the actual cost of insurance rates to policyholders but only advises as to the monthly cost of insurance charge deducted from the account value."); *see also* Doc. 67-1 at 8 ("Plaintiff's rates have gone up over time, but that is a function of the fact that he has gotten older.").

Furthermore, as USAA's own expert explains, aggregate trends in general mortality are not necessarily reflected in USAA's expectations for its own policies, due to the specific, military population served by USAA and the complexity of mortality improvement projections. Pfeifer Rpt. at ¶¶ 38-39, 45. Put simply, Spegele's general awareness that mortality was improving could not have put him on notice of his claims as a matter of law, and USAA's predominance argument that some class members may have known mortality was generally improving (Doc. 61 at 23) similarly fails.

## II.     SPEGELE SATISFIES PREDOMINANCE.

### A.     Extrinsic Evidence Regarding Class Members' Subjective Understandings of the Class Policies Will Not Be Admissible.

Although in its Answer to Spegele's Complaint USAA originally defended on grounds that the Policy was ambiguous, undoubtedly anticipating the class certification arguments it would make here, USAA abandoned that defense and now both parties contend the Class Policies are unambiguous, and USAA does not dispute that extrinsic evidence is inadmissible to interpret an

unambiguous policy. Nevertheless, USAA argues that the Court *might* conclude the Class Policies are ambiguous, and if it does, USAA claims extrinsic evidence in the form of its sales agents' statements to prospective policyholders would be admissible to show policyholders' subjective understandings of the policies' meaning. Doc. 61 at 18-19. USAA is wrong. As Spegele noted in his opening brief, Section 211(2) of the Restatement (Second) of Contracts, which Texas courts follow, precludes the use of extrinsic evidence of policyholders' subjective understandings that would result in varying interpretations of USAA's standardized Class Policies.[8] Doc. 63 at 25-26.[9] USAA did not respond to this argument at all.

USAA also fails to challenge the cases specifically cited by Spegele that apply Texas and New York law and hold that ambiguous insurance contracts are construed against the insurer-drafter without resort to extrinsic evidence. Doc. 63 at 26, 34-35. Instead, USAA cites two different Texas cases and two different New York cases (Doc. 61 at 18) that do nothing to support its argument that extrinsic evidence will be admissible in the event of ambiguity. First, neither Texas case allowed admission of extrinsic evidence to interpret an ambiguous insurance policy. In fact, *Great American Insurance Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017), does not say extrinsic

---

[8] Indeed, USAA's supplemental authority (Doc. 77) even recognized "that suits involving form contracts often lend themselves to class treatment." *Cruson v. Jackson Nat'l Life Ins. Co.*, 2020 WL 1443531, at *10 (5th Cir. Mar. 25, 2020).

[9] USAA's relies on *Gregurek v. United of Omaha Life Insurance Co.*, 2009 WL 4723137 (C.D. Cal. Nov. 10, 2009), where the court decertified a class after concluding individualized sales presentations could result in differing interpretations of the policy at issue. Just this month the analysis of *Gregurek* was rejected in another COI rate case in *Bally v. State Farm Life Insurance Co.*, 2020 WL 1643681, at *9 (N.D. Cal. Apr. 2, 2020). And *Gregurek,* which applied California law, was already an outlier under California law even before the *Bally* case. *See, e.g.*, *In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*, 920 F. Supp. 2d 1050, 1065 (N.D. Cal. 2013) *vacated pursuant to settlement*, 2013 WL 10349975 (N.D. Cal. Nov. 8, 2013); *Feller v. Transamerica Life Ins. Co.*, 2017 WL 6496803, at *11 (C.D. Cal. Dec. 11, 2017); *Congdon v. Uber Techs., Inc.*, 291 F. Supp. 3d 1012, 1021-22 (N.D. Cal. 2018); *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953, at *22 (N.D. Cal. June 13, 2014); *Ewert v. eBay, Inc.*, 2010 WL 4269259, at *7 (N.D. Cal. Oct. 25, 2010).

evidence is admissible to resolve an ambiguity at all, and *Hallmark County Mutual Insurance Co. v. ACE American Insurance Co.*, 283 F. Supp. 3d 559, 567 (W.D. Tex. 2017), says that, in a duty to defend case, extrinsic evidence to resolve an ambiguity in the *underlying petition* may help determine whether the claims therein triggered the insurer's duty to defend. USAA's New York cases likewise do not advance its argument. Those cases involve sophisticated insureds and negotiated, commercial insurance policies. They do not indicate that subjective understanding of a form policy by an individual insured would be admissible to resolve an ambiguity, thus potentially resulting in different meanings of the same form policy for different owners. That leap cannot be made, especially because Spegele cited cases applying New York law in this very context—interpreting the COI provisions of standardized universal life insurance—and construing ambiguities against the insured without resort to extrinsic evidence. *See* Doc. 63 at 34-35.

Furthermore, Spegele previously explained why USAA's sales agent declarations did not support a finding that any UL3 or UL4 policyholder was actually told USAA's COI Rates were loaded with undisclosed factors. *Id.* at 30-31. USAA left this point unaddressed as well, and the vague disclosures of its employees should not be permitted to defeat certification here.[10]

### B.   Spegele's Tolling Allegations Can Be Resolved Class-Wide.

Spegele alleges in his Complaint that no policyholder could have known USAA was loading undisclosed amounts in its COI Charges because USAA does not disclose its COI Rates or the determination of those rates to policyholders, and thus, the discovery rule applies to toll the statute of limitations. Doc. 1 at ¶ 40. Spegele also alleges USAA fraudulently concealed its wrongful conduct. *Id.* at ¶ 41. Spegele argued that tolling the statute of limitations under either theory could be resolved class-wide. *See* Doc. 63 at 28-32. Once again, USAA fails to address Spegele's

---

[10] The district court in *Bally* also rejected the argument that individualized sales pitches defeat commonality or cause individualized issues to predominate. 2020 WL 1643681, at *9.

discovery rule allegations. Instead, USAA challenges only whether fraudulent concealment is subject to common proof. *See* Doc. 61 at 19-24.[11] Accordingly, the Court should conclude Spegele's discovery-rule allegations can be resolved class-wide because for all class members "the nature of the injury is inherently undiscoverable and the evidence of injury is objectively verifiable." *Archer v. Tregellas*, 566 S.W.3d 281, 290 (Tex. 2018). Class-wide proof will show that USAA did not disclose its COI Rates, its expectations as to future mortality experience, or its process for determining COI Rates.

As for fraudulent concealment, USAA contends it cannot be resolved class-wide because the doctrine includes a reliance element,[12] which USAA contends is "inherently individualized." *Id.* at 22.[13] Even where questions of reliance are at issue, however, the Fifth Circuit has indicated that under recent Supreme Court precedent, class certification should not be denied on the basis of conjecture that a small number of class members would lose on an affirmative defense. *See Torres*, 838 F.3d at 645-46 & n.74 ("That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate." (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014))). In

---

[11] To the extent USAA's arguments regarding class member knowledge that mortality expectations were generally improving could be seen as relevant to the discovery rule, for the reasons explained at Part I(C), *supra*, such knowledge does not put any policyholder on notice of their claims.

[12] Under Texas law, reliance is not a requirement to establish tolling by fraudulent concealment. *See* Doc. 73 at 33-34, n.19; *compare Taylor v. Midland Nat'l Life Ins. Co.*, 2019 WL 7500238, at *12-13 (S.D. Iowa May 3, 2019) (applying "the requirements for fraudulent concealment under Iowa law," which include the plaintiff's reliance on the defendant's fraudulent concealment).

[13] The discovery rule does not have a reliance element, so USAA's arguments as to fraudulent concealment do not apply to the discovery rule. *See Via Net v. TIG Ins. Co.*, 211 S.W. 3d 310, 313-14 (Tex. 2006). While the discovery rule requires the plaintiff to have acted with due diligence, *id.*, where common evidence indicates no class member had any way to know of USAA's wrongful conduct, there is no basis to conclude any class member failed to act with due diligence to discover their claim. USAA's reliance on four agent declarations is misplaced for the reasons explained in Spegele's opening brief (Doc. 63 at 30-31), to which USAA provides no response.

holding that reliance on a misrepresentation as to an amount owed can be presumed where class members pay an overcharge, the *Torres* court cited approvingly to other circuits that have reached similar conclusions in comparable cases. *See id.* at 642 & n.56 (citing *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 120-22 (2d Cir. 2013) (holding that customers who were allegedly overbilled by a food distributor's inflated invoices scheme could be certified as a class; reasoning that "customers who pay the amount specified in an inflated invoice would not have done so absent reliance upon the invoice's implicit representation that the invoiced amount was honestly owed")); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004)). Notably, each of the Fifth Circuit cases on which USAA relies predates *Torres*.[14] When *Torres* is applied here, the only reasonable inference is that policyholders would not have acquiesced to excessive COI Charges if USAA had disclosed that it was hiding unauthorized charges. Thus, *Torres* supports certification here.

**C.      Texas Law Applies to the Class.**

**1.      The Class Policies' Conformity with Laws Provision Is Not a Choice of Law Provision.**

In his opening brief, Spegele cited cases addressing the specific issue here: is a contractual "Conformity with Laws" provision that states the contract is "subject to" the laws of a specific state a choice of law provision? The cases Spegele cited all concluded that the answer is a definitive

---

[14] Even if this Court were to conclude the question of tolling cannot be resolved class-wide, certification of the common liability issues would still be appropriate. *See Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 100 F. App'x 296, 301 (5th Cir. 2004) (stating the problem of individualized issues related to fraudulent concealment can be solved "by bifurcating the case into class issues and a phase two determination of individual damages"). Moreover, because each excessive COI Charge was a new breach of contract that restarted the statute of limitations, each policyholder who had a COI Charge deducted within the four years prior to the filing of the Complaint has timely claims for which damages can be determined on a class basis. *See* Doc. 63 at 29 n.16; Doc. 80 at 13. At a minimum then, the Court should certify the Class for purposes of a liability determination, and for the calculation of damages incurred from the four years prior to the filing of the Complaint to the date of judgment. In that scenario, class members could be notified of their right to come forward individually to prove their tolling allegations to obtain damages for claims accruing prior to that.

"no"—such provisions are not choice of law provisions. *See* Doc. 63 at 13-14. Yet, USAA argues this is not the law in Texas, citing six cases that it contends show Texas courts construe "subject to" conformity-with-laws provisions as a choice of law. Doc. 61 at 25-26. But not one of USAA's cases even addresses the issue. Instead, while the courts in those cases characterized such provisions as choice of law clauses in passing, no one argued otherwise—i.e., the issue was not in dispute. These cases provide no support for USAA's contention that Texas courts would construe the Class Policies' conformity-with-laws provision as a choice of law provision if the issue were contested, and USAA has given the Court no other basis to disagree with the reasoned decisions Spegele cited for his argument that these provisions do *not* operate as a choice of law. Further, USAA's contention fails to address the plain language of this provision, which merely explains that illegal provisions are void. Accordingly, the Court should reject USAA's contention that each class member's home state law applies on the basis of the conformity-with-laws provision.

> **2.      Texas Has the Most Significant Relationship to the Parties and Issues in Dispute.**

USAA also contends the presumption in Section 192 of the Restatement requires that each class member's home state law apply to his or her claims. Doc. 61 at 27-28. While Section 192 provides that the validity of a life insurance policy and the rights created thereby will generally be determined "by the local law of the state where the insured was domiciled at the time the policy was applied for," this section does not apply where, "*with respect to the particular issue*, some other state has a more significant relationship under the principles stated in § 6[15] to the transaction and the parties." Restatement (Second) of Conflict of Laws § 192 (1971) (emphasis added).

As a threshold matter, the comments to Section 192 make clear that it "does not apply to

---

[15] The most-significant-relationship tests set forth in Restatement Sections 145 and 188 incorporate the Section 6 factors. *See id.* §§ 145(2) & 188(2).

questions involving details of performance which are governed by the local law of the state where the performance either has taken, or is to take place." *Id.* at cmt. a; *see also* Restatement (Second) of Conflict of Laws § 206 ("Issues relating to details of performance of a contract are determined by the local law of the place of performance."). For example, circumstances surrounding the payment of life insurance premiums would be considered details of performance governed by the local law where the life insurance premiums are to be paid. *See* Restatement (Second) of Conflict of Laws § 192, cmt. a. USAA's determination of COI Rates is a detail of performance. There is no dispute that USAA's determination of COI Rates and assessment of COI Charges using those rates occurred in Texas. Doc. 63 at 12. Section 192 is therefore inapplicable and Texas law applies to the parties' dispute about USAA's determination of COI Rates.

Even setting aside that the determination of COI Rates is a detail of performance governed by Texas law, the exception to the presumption in Section 192 applies because this case is not about the life insurance portion of the Class Policies.[16] Instead, it is about the investment feature, and specifically, the deductions taken from policyholders' Cash Values in excess of those permitted by the Class Policies. With respect to this "particular issue," the question is whether Texas has the most significant relationship to the parties and transactions in question. The answer is yes.

USAA's truncated analysis of the Section 6 factors cursorily mentions only two of them: the

---

[16] The Fifth Circuit cases USAA cites applying Section 192 (Doc. 61 at 27-28) each involved issues related to the life insurance itself. *See Conestoga Tr. v. Columbus Life Ins. Co.*, 759 F. App'x 227, 228 (5th Cir. 2019) (alleging insurer failed to comply with termination provisions of the policy); *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 402 (5th Cir. 2004) (dispute over death benefit proceeds); *Ohio Nat. Life Assur. Corp. v. Riley-Hagan*, 2008 WL 5158089, at *1 (S.D. Tex. Dec. 9, 2008) (insurance coverage dispute); *Primerica Life Ins. Co. v. Baccus*, 2007 WL 9697630, at *2 (N.D. Tex. May 14, 2007) (dispute over death benefit proceeds). USAA also relies on *Taylor*, 2019 WL 7500238, at *8-10, and *Glover v. Connecticut General Life Ins. Co.*, No. 16-cv-827, Doc. 145 (D. Conn. Jan. 11, 2019), but the courts in those cases failed to address whether the issues in dispute involved life insurance, as distinct from the investment feature of the policies.

expectations of the parties and the policies of other states. Doc. 61 at 29-30. Yet both of those factors favor application of Texas law in this case. For the "justified expectations" of the parties, USAA speculates each class member would assume their home state's law would apply to the COI Rate provision, despite contracting with a Texas company. Ex. 11 at Bates 26503 (stating the Policy was issued and signed by USAA in Texas). But there is no evidence before the Court that any policy owner ever considered what state's law would apply in the event of a dispute over whether USAA was properly calculating COI Charges.[17] On the other hand, policy owners reasonably expected to be treated the same as other policy owners. *See* Restatement (Second) of Contracts § 211(2) (1981) (explaining standardized form contracts should treat "alike all those similarly situated"); Ex. 11 at Bates 26516 ("changes to cost of insurance rates will apply to all persons of the same age, sex and rate class"). As for USAA, whether it specifically contemplated the uniform application of Texas law to this provision is unknown. What is known, however, is that USAA expected its standardized COI Rate provision to be interpreted the same way regardless of where USAA issued the Policy. Ex. 3 at 132:12-19. That is why USAA issues standard form policies with minimal "state deviations." Ex. 6 at 40:13-22, 42:11-43:1. That is also why USAA's conduct regarding the COI Rate provision was uniform, irrespective of where it sold each Class Policy. Witt Dec. at ¶¶ 20-43. This factor supports the uniform application of a single state's law to resolve this dispute. And the only law that could be applied uniformly is that of Texas.[18]

---

[17] USAA points to alleged admissions from Spegele that he understood New York law would apply to his Policy. Doc. 61 at 8 & 30. But like the interpretation of the Class Policies themselves, context matters. At his deposition, Spegele was asked to construe the "Conformity with Laws" provision. Doc. 61-17 at 40:11-17, 41:5-42:5. The resulting testimony, provided over Spegele's counsel's objection, does not show Spegele's "justified expectations" (indeed he was not asked about his expectations at all); rather, at most, it shows a layman's interpretation of a legal provision. That interpretation is best left to the Court.

[18] Another Section 6 factor, "the basic policies underlying the particular field of law," typically aligns with the "the protection of justified expectations" factor in contract cases. *See Chesapeake*

"[T]he relevant policies of other interested states and the relative interests of those states in the determination of the particular issue," likewise favors applying Texas law to the class claims. As USAA points out, each class member's home jurisdiction has a policy interest in the "just recovery for its citizens." Doc. 61 (quoting *Guillory v. United States*, 699 F.2d 781, 785 (5th Cir. 1983)). USAA also argues each state's department of insurance "reviewed and approved" the Class Policies. Doc. 61 at 30. These arguments go hand in hand because state insurance departments are charged with protecting their consumers. *See In re Gen. Agents Ins. Co. of Am., Inc.*, 224 S.W. 3d 806, 822 n.14 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (noting "state insurance departments' duty of protecting consumers"). Here, Spegele's breach of contract claim under Texas law seeks to recover the amount USAA overcharged each class member plus interest at the contractual rate.[19] Witt Dec. at ¶ 19(d). This is the same amount a class member would be able to recover in his or her home state—no more and no less. *See* Ex. BB (compendium of cases showing that recovery for breach of contract claims are the damages that would place the injured party in the position they would be in if the contract had not been breached).[20] In such a situation, when the result is the same no matter which state's law applies, even USAA's own cited case recognizes

---

*Operating, Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 176 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("In contract cases, these two [factors] usually agree, as '[p]rotection of the justified expectations of the parties is the basic policy underlying the field of contracts.'" (quoting Restatement (Second) of Conflict of Laws § 188, cmt. b (1971))); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990).

[19] The damages under the conversion claim are the same as the breach of contract overcharge, because that claim seeks to recover the amount wrongfully converted by USAA. Witt Dec. at ¶ 74.

[20] It is unsurprising that the recovery available for breach of contract is similar across the states, because "[c]ontract law is not at its core diverse, nonuniform, and confusing." *American Airlines v. Wolens*, 513 U.S. 219, 233, n.8 (1995) (quotations and citation omitted); *see also Klay*, 382 F.3d at 1262-63; *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 672 (S.D. Fla. 1997); *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 529 (N.D. Cal. 2010) (stating, in similar analysis of life insurance contracts, that all breach of contract law is materially uniform nationwide); *see also* Ex. CC (Compendium of State Laws).

"[n]o true 'conflict of laws' exists."[21] *Guillory*, 699 F.2d at 786; *see Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985) ("There can be no injury in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this suit."). Thus, this factor points to the application of Texas law.

USAA fails to address the other Section 6 factors, which also support the application of Texas law. For instance, the relevant policies of the forum state, in this case Texas, must be considered. *See* Restatement (Second) of Conflict of Laws § 6(b) (1971). Texas undoubtedly has a strong interest in applying its own law, because USAA is a Texas corporation with its principal place of business in Texas, employs thousands of Texans, issued more Class Policies in Texas than in any other state, took unlawful actions in Texas, and made decisions in Texas to conceal its actions. Doc. 63 at 11-12; Ex. F at 16-40 (showing more Class Policies sold in Texas compared to other states). Consequently, the interests of the forum state firmly support the application of Texas law.

Additionally, the "certainty, predictability and uniformity of result" factor points to Texas law. *See* Restatement (Second) of Conflict of Laws § 6(f) (1971). The same words appearing in a standardized form contract issued to more than 80,000 people should not be interpreted in more than 80,000 (or even 50) different ways. *See, e.g.*, *In re Conseco*, 920 F. Supp. 2d at 1065

---

[21] USAA's other cited cases are distinguishable. *See Casa Orlando Apartments, Ltd. v. Federal Nat'l Mortg. Ass'n*, 624 F.3d 185, 193 (5th Cir. 2010) (finding "that the District of Columbia cannot have the most significant relationship to the issues unless the fiduciary relationship was created and maintained there," which materially differs from this case where the Class Policies were entered into and breached in Texas); *Spence v. Glock, Ges.m.b.H*, 227 F.3d 308, 313 (5th Cir. 2000) (explaining "the most significant relationship test requires that the policies of each state" with respect to the particular issue "be examined," but noting the plaintiffs in that case, unlike Spegele here, had "not undertaken this analysis"); *Nat'l Western Life Ins. Co. v. Rowe*, 164 S.W. 3d 389, 391-92 (Tex. 2005) (reversing class certification because the lower court did not consider "whether laws in states in which class members reside would provide them greater relief, or whether those states have a particular interest in the claims being made, especially considering a state's interest in regulating the business of insurance," in contrast to Spegele, who analyzes both herein as supporting the application of Texas law to the Class's claims).

(Standardized universal life insurance policies are drafted "precisely in order to avoid the problem [the insurer] now invites—that thousands of policyholders have thousands of different understandings of a standard form."). Indeed, Restatement Section 211(2) says just that. *See* Restatement (Second) of Contracts § 211(2) (1981) (interpreting standardized contracts to treat "alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing"). Moreover, USAA drafted the disputed policy language in Texas and then proceeded as if the language meant the same thing for each Class Policy it issued, regardless of where. Doc. 63 at 12. Applying Texas law to the standardized contractual language ensures "certainty, predictability and uniformity of result." Because Texas has the most significant relationship to the parties and issues, the Court should apply Texas law.

Restatement Sections 145 and 188 also make clear that Texas law applies to this case. For example, the Class Policies were entered into in Texas, the wrongful conduct occurred in Texas, and any injury occurred in Texas. *See* Doc. 63 at 11-12. In arguing to the contrary, USAA relies on the inapposite decision in *Taylor v. Midland National Life Insurance Co*. Doc. 61 at 32. *Taylor* was specifically limited to "Iowa law" and the insurance policy at issue there, which is why that court determined "the place of contracting" was wherever the first premium was paid, which could have been to an agent in the policy owner's home state. *See* 2019 WL 7500238, at *9. Although it is questionable whether *Taylor* was even an accurate pronouncement of Iowa law (the case settled prior to appeal), it is "common knowledge" under Texas law "that an insurance policy does not issue until it is received in the home office and the underwriting department approves it." *In re Great S. Life Ins. Co. Sales Practices Litig.*, 192 F.R.D. 212, 218 (N.D. Tex. 2000); *see also In re Farmers & Ranchers Mut. Ins. Co.*, 2008 WL 2133116, at *2 (Tex. App.—San Antonio May 21, 2008, no pet.) ("An insurance contract does not arise unless and until an application for insurance

is accepted by the insurance company and a policy is issued"); *Inglish v. Prudential Ins. Co. of Am.*, 928 S.W.2d 702, 706 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (same).[22] And the Class Policies say as much. *See* Ex. 11 at 26527 (noting USAA will not incur any liability until it issues the policy). Here, policy approval and issuance were in Texas.

Moreover, the wrongful conduct and injury also occurred in Texas. The policy premiums were paid to and received at USAA's Home Office in San Antonio and that is where USAA drafted the COI Rate provision, decided to load the COI Rates with factors not disclosed in the COI Rate provision, and deducted the COI Charges from class members' Cash Values.[23] Doc. 63 at 11-12. These factors strongly favor applying Texas law. *See, e.g.*, *Great Southern*, 192 F.R.D. at 218-19 (applying Texas law because, among other factors, the premiums were paid at the life insurer's home office in Texas, the policy accountings were done at the home office, and the alleged decisions resulting in breach of the policy contracts occurred at the home office).

Instead of addressing the most significant relationship factors, USAA relies on *Gyarmathy & Assocs., Inc. v. TIG Ins. Co.*, and its mischaracterization of the *Great Southern* court's choice of law analysis as a "defendant lives here approach." 2003 WL 21339279, at *2. But the *Great*

---

[22] USAA misreads *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Am. Eurocopter Corp.*, claiming it states that a Texas choice of law provision in that case somehow "means that the relationship of the parties is centered in each policyholder's state of residence." Doc. 61 at 31 (citing *Nat'l Union*, 692 F.3d 405, 409 (5th Cir. 2012)). USAA's illogical leap is neither relevant—because there is no choice of law provision in the Class Policies—nor an accurate reading of *National Union*, as the Fifth Circuit only noted the inclusion of a Texas choice-of-law clause was a factor showing the parties to the contract intended for Texas law to apply, even though the claims at issue were torts. *See Nat'l Union*, 692 F.3d at 409. As stated herein and in Spegele's opening brief, the place where USAA's relationship with the class members is centered is Texas, where the Class Policies were entered into and where the ensuing premium payments were made. Doc. 63 at 11-12.

[23] Remarkably, USAA claims the location of the "conduct causing the injury" is "inconclusive" on the grounds that class members made decisions and took actions related to their Policies in their home states. Doc. 61 at 31. USAA misses the point. It is the conduct of *USAA* in improperly loading its COI Rates with undisclosed non-mortality loads that injured the Class. That conduct indisputably occurred in San Antonio.

*Southern* court conducted a "thorough legal analysis" of Restatement Sections 6 and 188 as applied to the parties' disputed life insurance policies. *See* 192 F.R.D. at 217-19. The Texas Supreme Court and the Fifth Circuit have since confirmed this is the correct approach, including very recently. *See E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 299-300 (5th Cir. 2020) (applying Texas law to dispute involving insurance policy after analyzing Sections 6 and 188); *Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 271 S.W. 3d 228, 233-36 (Tex. 2008) (analyzing Sections 6 and 188 to determine which state's law applied to breach of insurance policy claim). These are the same Restatement sections the parties agree frame this Court's choice of law analysis, and under them, the law of Texas governs these claims.[24]

## III.      RULE 23(B)(2) IS SATISFIED.

USAA's arguments against certification under Rule 23(b)(2) also fail. *See* Doc. 61 at 32-34. First, USAA's argument that an injunction would hurt some class members fails for the reasons explained at Part I(A), *supra*. USAA's further contention that injunctive relief certification is not appropriate because some class members no longer have active policies due to death or other policy

---

[24] Likewise, USAA's reliance on two out-of-circuit cases to distinguish *Great Southern* is misplaced, as neither case is on point. *See CLN Props., Inc. v. Republic Servs., Inc.*, 688 F. Supp. 2d 892, 897-98 (D. Ariz. 2010) (finding the contract was not "created, negotiated, or to be performed" in Arizona, facts that differ materially from the life insurance policies formed and breached in *Great Southern*); *In re Jackson Nat'l Life Ins. Co. Premium Litig.*, 193 F.R.D. 505, 510-12 (W.D. Mich. 2000) (disagreeing with *Great Southern* extending "presumed reliance" to a Texas common law fraud claim, which is not a claim asserted in this lawsuit). Additionally, USAA recently submitted as supplemental authority *Cruson v. Jackson Nat'l Life Ins. Co.*, where the Fifth Circuit reversed certification of a nationwide class of annuity policy owners. *See* Doc. 77. But the Fifth Circuit reversed the district court's order not because individualized issues related to extrinsic evidence on class members' understandings of the form policy would predominate, but because the court did not consider the potential differences in state law on the issue. 2020 WL 1443531, at *9-10. That issue does not exist in this case because only one state's law will apply (Texas or New York). And, the Fifth Circuit did not rule that affirmative defenses defeated predominance, only that the district court's legal conclusion that class members must understand the defendant was breaching the contract, which could not be known until the issue was adjudicated, for the defendant to prevail on its waiver and ratification defenses, was error. *Id.* at *10-12.

termination, and therefore would not benefit from an injunction, is not supported by any case on point. If the rule was that every single class member must benefit from an injunction, no class could be certified under (b)(2) because some unknown number of class members would routinely die or move in any type of case and be unable to benefit from the forward-looking relief. That is not the law.[25] In addition, Spegele seeks a declaration of his and class members' rights under the Class Policies at Count V, not just an injunction. USAA does not argue that former policyholders would not benefit from this declaratory relief.

Second, USAA's contention that this case mainly seeks money damages is irrelevant even if correct. Spegele seeks to certify only his claim for declaratory and injunctive relief (Count V), not his claims for money damages (Counts I-IV), under Rule 23(b)(2). *See* Doc. 63 at 33. Certification of Count V under (b)(2) will benefit class members by allowing for a definitive interpretation of their policies, and, for current policyholders, an injunction against future COI Charges in excess of USAA's mortality cost. This relief would benefit the Class regardless of whether the Court certifies Counts I-IV for money damages.

Third, because USAA is incorrect that any class member would be worse off by the requested declaratory or injunctive relief, notice and opt-out rights are not necessary (though if the Court certifies Counts I-IV under Rule 23(b)(3) as requested, notice and opt-out rights exist and will be upheld). Thus, USAA is incorrect that the lack of notice and opt-out rights under Rule 23(b)(2) makes certification inappropriate for Spegele's requests for declaratory and injunctive relief.

## **CONCLUSION**

For the foregoing reasons, Spegele's Motion for Class Certification should be granted.

---

[25] Even if USAA were correct, the Court should certify a subclass of current policyholders under (b)(2).

Dated: April 13, 2020                    Respectfully submitted,

                                         STUEVE SIEGEL HANSON LLP

                                         */s/ Norman E. Siegel*
                                         Norman E. Siegel (*pro hac vice*)
                                         siegel@stuevesiegel.com
                                         Ethan M. Lange (No. 24064150)
                                         lange@stuevesiegel.com
                                         David A. Hickey (*pro hac vice*)
                                         hickey@stuevesiegel.com
                                         460 Nichols Road, Suite 200
                                         Kansas City, Missouri 64112
                                         Tel: 816-714-7100
                                         Fax: 816-714-7101

                                         John J. Schirger (*pro hac vice*)
                                         jschirger@millerschirger.com
                                         Matthew W. Lytle (*pro hac vice*)
                                         mlytle@millerschirger.com
                                         Joseph M. Feierabend (*pro hac vice*)
                                         jfeierabend@millerschirger.com
                                         MILLER SCHIRGER, LLC
                                         4520 Main Street, Suite 1570
                                         Kansas City, Missouri 64111
                                         Tel: 816-561-6500
                                         Fax: 816-561-6501

                                         Daniel C. Girard (*pro hac vice*)
                                         dcg@girardgibbs.com
                                         GIRARD GIBBS LLP
                                         601 California Street, Suite 1400
                                         San Francisco, California 94108
                                         Tel: 415-981-4800
                                         Fax: 415-981-4846

                                         Larry R. Veselka
                                         lveselka@skv.com
                                         SMYSER KAPLAN & VESELKA, L.L.P.
                                         700 Louisiana Street, Suite 2300
                                         Houston, Texas 77002
                                         Tel: (731) 221-2325
                                         Fax: (713) 221-2320

                                         *Attorneys for Plaintiff Roy C. Spegele*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 13, 2020, a copy of the foregoing document was sent via CM/ECF to all counsel of record.

*/s/ Norman E. Siegel*
Norman E. Siegel
