# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | |
|---|---|
| ROY C. SPEGELE, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>   v.<br><br>USAA LIFE INSURANCE COMPANY,<br><br>            Defendant. | Case No. 5:17-cv-967-OLG |

**UNOPPOSED MOTION PURSUANT TO RULE 23(E) TO PERMIT ISSUANCE OF CLASS NOTICE OF PROPOSED CLASS ACTION SETTLEMENT AND <u>MEMORANDUM IN SUPPORT THEREOF</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... iii

I.     INTRODUCTION ................................................................................................ 1

II.    SUMMARY OF THE LITIGATION.................................................................... 3

     A.    Procedural History and Discovery ......................................................... 3

     B.    Settlement Negotiations .......................................................................... 7

III.   SUMMARY OF THE SETTLEMENT.................................................................. 8

IV.   THE SETTLEMENT CLASS ............................................................................... 9

V.    ISSUING NOTICE TO THE CLASS IS JUSTIFIED. ......................................... 9

     A.    Standard for Issuance of Notice ............................................................. 9

     B.    The Proposed Settlement Is Fair, Reasonable, and Adequate Pursuant to the Rule 23(e) and Fifth Circuit *Reed* Factors. ...................................... 12

          1.    The Class Representative and Class Counsel Have Provided Excellent Representation to the Class. ......................................... 12

          2.    The Settlement Is the Product of Arm's Length Negotiations.................... 13

          3.    The Relief Provided by the Settlement Is Excellent. .................................. 14

          4.    The Stage of the Proceedings and the Amount of Discovery Completed Supports Approval of the Settlement. ............................................... 19

          5.    Plaintiff's Probability of Success on the Merits Supports Approval of the Settlement. ................................................................ 21

          6.    The Range and Certainty of Recovery Supports Approval of the Settlement. ...................................................................... 22

          7.    The Respective Opinions of Class Counsel, the Class Representative, and the Absent Class Members, Support Approval of the Settlement......... 24

          8.    The Settlement Treats Class Members Equitably Relative to Each Other, Supporting Approval of the Settlement. ........................................... 25

VI.   THE SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION FOR PURPOSES OF SETTLEMENT.................................................................. 25

     A.    Standard for Certifying Settlement Class .............................................. 26

     B.    The Court's Order Certifying the Class of UL3 and UL4 Policy Owners............... 26

     C.    The Settlement Class Satisfies the Requirements of Rule 23. ................................ 27

          1.    The Settlement Class meets each of the requirements of Rule 23(a). ......... 27

          2.    The Settlement Class meets the requirements of Rule 23(b)(3). ................. 30

          3.    Plaintiff no longer seeks certification under Rule 23(b)(2). ........................ 31

VII.   THE COURT SHOULD APPOINT PLAINTIFF'S COUNSEL AS INTERIM
       CLASS COUNSEL. ............................................................................................ 31

VIII.  THE NOTICE SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS ........... 32

IX.    THE COURT SHOULD APPOINT ANALYTICS CONSULTING LLC AS
       SETTLEMENT ADMINISTRATOR. ............................................................... 34

X.     PROPOSED TIMELINE OF EVENTS ............................................................ 34

CONCLUSION ............................................................................................................ 34

APPENDIX A ............................................................................................................. 347

# TABLE OF AUTHORITIES

Cases

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
  No. H-17-3852, 2019 WL 387409 (S.D. Tex. Jan. 30, 2019)............................................. 11, 17

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997)........................................................................................................... 30

*Ayers v. Thompson*,
  358 F.3d 356 (5th Cir. 2004) ......................................................................................... 14, 19, 20

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)........................................................................................................... 17

*Burford v. Cargill, Inc.*,
  No. 05-0283, 2012 WL 5471985 (W.D. La. Nov. 8, 2012)................................................... 18

*Campton v. Ignite Restaurant Group, Inc.*,
  No. 4:12–2196, 2015 WL 12766537 (S.D. Tex. June 5, 2015) ............................................. 18

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ......................................................................................... 11, 24

*DeHoyos v. Allstate Corp.*,
  240 F.R.D. 269 (W.D. Tex. 2007) .................................................................................. 21, 24

*Dyson v. Stuart Petroleum Testers, Inc.*,
  No. 1-15-CV-282 RP, 2016 WL 815355 (W.D. Tex. Feb. 29, 2016) ................................... 17

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  No. 02-CV-1152-M, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ................................. 11, 18

*Fairway Med. Ctr., LLC v. McGowan Enterprises, Inc.*,
  No. 16-3782, 2018 WL 1479222 (E.D. La. Mar. 27, 2018) ................................................. 18

*Frew v. Hawkins*,
  No. 3:93-CA-065 WWJ, 2007 WL 2667985 (E.D. Tex. Sept. 5, 2007).............................. 24

*Frost v. Oil States Energy Servs.*,
  No. 4:15-cv-1100, 2015 WL 12780763 (S.D. Tex. Nov. 19, 2015)....................................... 17

*Hays v. Eaton Grp. Attorneys, LLC*,
  No. 17-88-JWD-RLB, 2019 WL 427331 (M.D. La. Feb. 4, 2019) ............................. 11, 12, 15

*In re Catfish Antitrust Litig.*,
   939 F. Supp. 493 (N.D. Miss. 1996) ........................................................ 19

*In re Checking Acct. Overdraft Litig.*,
   830 F. Supp. 2d 1130 (S.D. Fla. 2001) .................................................... 16

*In re Combustion, Inc.*,
   968 F. Supp. 1116 (W.D. La. 1997)......................................................... 18

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981) .................................................................. 22

*In re Corrugated Container Antitrust Litig.*,
   659 F.2d 1322 (5th Cir. Unit A Oct. 1981)............................................... 21

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching,
   Grades 7-12 Litig.*, 447 F. Supp. 2d 612 (E.D. La. 2006) ......................... 15, 16, 21

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ................................................... 11, 14

*In re Katrina Canal Breaches Litig.*,
   628 F.3d 185 (5th Cir. 2010) .................................................................. 11, 32

*In re Mexico Money Transfer Litig.*,
   267 F.3d 743 (7th Cir. 2001) .................................................................. 29

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex.*,
   910 F. Supp. 2d 891 (E.D. La. 2012) ...................................................... 12

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................. 10

*In re Pool Prod. Distribution Mkt. Antitrust Litig.*,
   No. MDL 2328, 2014 WL 7407492 (E.D. La. Dec. 31, 2014)................... 29

*In re Pool Prods. Distribution Mkt. Antitrust Litig.*,
   MDL No. 2328, 2015 WL 4528880 (E.D. La. July 27, 2015)................... 18

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004).................................................................... 29

*Jenkins v. Trustmark Nat'l Bank*,
   300 F.R.D. 291 (S.D. Miss. 2014) .......................................................... 18

*Johnson v. Georgia Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) .................................................................. 18

*Kincade v. Gen. Tire & Rubber Co.*,
   635 F.2d 501 (5th Cir. 1981) ............................................................... 11

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex. 2010) ................................. 14, 18, 22, 23

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ............................................................... 22

*Norem v. Lincoln Ben. Life Co.*,
   737 F.3d 1145 (7th Cir. 2013) ............................................................. 15

*ODonnell v. Harris Cty., Texas*,
   No. CV H-16-1414, 2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) .................................. passim

*Parker v. Anderson*,
   667 F.2d 1204 (5th Cir. Unit A 1982) .................................................. 21

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ............................................................. 32

*Reed v. General Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ........................................................ passim

*Rodriguez v. Stage 3 Separation, LLC*,
   No. 5:14-CV-00603-RP, 2015 WL 12866212 (W.D. Tex. Dec. 23, 2015) ............................ 17

*Santinac v. Worldwide Labor Support of Ill., Inc.*,
   No. 15-CV-25, 2017 WL 1098828 (S.D. Miss. Mar. 23, 2017) ............................. 21

*Schwartz v. TXU Corp.*,
   No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ........................ 17

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
   91 F. Supp. 2d 942 (E.D. Tex. 2000) .................................................... 19

*Smith v. Tower Loan of Miss., Inc.*,
   216 F.R.D. 338 (S.D. Miss. 2003) ....................................................... 33

*Stott v. Capital Fin. Servs., Inc.*,
   277 F.R.D. 316 (N.D. Tex. 2011) ........................................................ 24

*Turner v. Murphy Oil USA, Inc.*,
   472 F. Supp. 2d 830 (E.D. La. 2007) ..................................... 23, 24, 26

*United States v. Armour*,
   402 U.S. 673 (1971) ......................................................................... 24

*Vela v. City of Houston*,
   276 F.3d 659 (5th Cir. 2001) ........................................................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)............................................................... 32

*Welsh v. Navy Fed. Credit Union*,
   No. 16-CV-1062-DAE, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) ................................ 13

*Wolfe v. Anchor Drilling Fluids USA Inc.*, No. 4:15-CV-1344,
   2015 WL 12778393 (S.D. Tex. Dec. 7, 2015)........................................................... 17

*Yates v. Collier*,
   868 F.3d 354 (5th Cir. 2017) ........................................................... 26, 29

Rules

Fed. R. Civ. P. 23 ...................................................................passism

Other Authorities

2 McLaughlin on Class Actions § 6:7 (15th ed. 2018) .................................. 10

4 Newberg on Class Actions § 13:14 (5th ed. 2019) .................................. 10

Manual for Complex Litigation § 30.212 (3d ed. 1995)............................... 33

Manual for Complex Litigation § 30.44 (3d ed. 1995)............................... 10

Principles of the Law of Aggregate Litigation § 3.04(a) (2010) ................................. 32

## I.    INTRODUCTION

Plaintiff Roy G. Spegele ("Spegele" or "Plaintiff") brought this action against Defendant USAA Life Insurance Company ("USAA Life") for repeatedly violating the terms of its universal life insurance policies by deducting cost of insurance charges ("COI Charges") from owners' policy accounts in amounts greater than the policies authorize. Doc. 1. After extensive discovery into Plaintiff's claims and USAA Life's defenses thereto, and after the Court certified a nationwide class of policy owners, the Parties have now agreed to settle this matter (the "Settlement"), having executed a binding Settlement Agreement ("Agreement") requiring USAA Life to create a non-reversionary Settlement Fund in the amount of $90,000,000, and provide payments to members of the Settlement Class[1] without the need to make a claim. As explained below, the Agreement is an outstanding result for the Settlement Class and should ultimately be approved as fair, reasonable and adequate.

Pursuant to Federal Rule of Civil Procedure 23(e)(1)(B), the first step in effectuating the terms of the Settlement is to issue notice to the Settlement Class. Directing notice to the class is justified where the Court concludes it will likely be able to (1) approve the Settlement as fair, reasonable, and adequate, and (2) certify the Settlement Class for purposes of judgment on the Settlement. Notice should issue because the terms of the Agreement satisfy the requirement that

---

[1] The Settlement Class includes the persons or entities who own or owned one of approximately 39,000 Universal Life 1 or Universal Life 2 life insurance policies issued or administered by USAA Life or its predecessors in interest, and in force on or after March 1, 1999; and the persons or entities who own or owned one of approximately 83,000 Universal Life 3 or Universal Life 4 life insurance policies issued or administered by USAA Life or its predecessors in interest, and in force on or after March 1, 1999. The Settlement Class excludes USAA Life; any entity in which USAA Life has a controlling interest; any of the officers, directors, or employees of USAA Life; the legal representatives, heirs, successors, and assigns of USAA Life; anyone employed with Plaintiff's law firms; and any Judge to whom this case is assigned, and his or her immediate family. Also excluded from the Settlement Class are persons or entities who own or owned Universal Life 3 and Universal Life 4 policies issued in New Jersey and policies issued by USAA Life Insurance Company of New York. Agreement, ¶ 1.31.

the Settlement be fair, reasonable, and adequate and the proposed Settlement Class satisfies the requirements of Rule 23. The Agreement is the product of arm's length negotiations between the Parties, reached only after extensive discovery and litigation in this Court, and with the assistance of a respected neutral mediator. The pre-settlement risks that the class could be ordered decertified by the Fifth Circuit on USAA Life's pending Rule 23(f) appeal, and that Plaintiff and the certified class would not prevail on the merits at trial, make the non-reversionary cash Settlement Fund in the amount of $90,000,000 an excellent result for the Settlement Class Members.

The Settlement Fund will be used to pay (1) all payments to Settlement Class Members; (2) fees and expenses incurred in providing Class Notice and administering the Settlement including those fees and expenses incurred by the Settlement Administrator; (3) any service award to Mr. Spegele awarded by the Court; and (4) any attorneys' fees and reimbursement of expenses awarded by the Court. Importantly, Settlement Class Members are not required to submit a "claim" or otherwise perform any steps to receive this relief. Settlement checks will be issued upon final approval of the Settlement. Finally, dissemination of class notice by first-class mail is appropriate and the Parties have engaged a third-party administrator, Analytics Consulting LLC, with extensive experience in this area to administer the Settlement and Class Notice plan.

Accordingly, pursuant to Rule 23(e), Plaintiff requests that the Court permit the issuance of notice to the Settlement Class, approve the form and manner of notice to the Settlement Class, appoint Analytics Consulting LLC to administer the class notice plan and to fulfill the duties of the Settlement Administrator as outlined in the Agreement, and schedule a Fairness Hearing to determine whether the Settlement should be finally approved.

## II.    SUMMARY OF THE LITIGATION

### A.    Procedural History and Discovery

Plaintiff filed his Class Action Complaint and Demand for Jury Trial on September 29, 2017, alleging causes of action for breach of contract, conversion, and declaratory and injunctive relief on behalf of himself and similarly situated owners of USAA Life universal life insurance policies that state that the policies' cost of insurance rates ("COI Rates") will be determined by USAA Life "based on its expectations as to future mortality experience." Doc. 1. In Count I, Plaintiff alleged that USAA Life breached the terms of the Class Policies by including unauthorized factors beyond its "expectations as to future mortality experience," such as expenses and profit, in determining the monthly COI Rates used to calculate COI Charges, which impermissibly caused those charges to be higher than authorized. *Id.* ¶¶ 53-60. In Count II, Plaintiff alleged that USAA Life breached the Class Policies by loading the monthly COI Rates with undisclosed maintenance and administrative expense factors above the fixed amount authorized by the policies. *Id.* ¶¶ 61-64. In Count III, Plaintiff alleged that USAA Life breached the terms of the Class Policies by failing to incorporate its improving expectations as to future mortality experience into the COI Rates, which would have resulted in lower rates for the policies. *Id.* ¶¶ 65-69. In Count IV, Plaintiff alleged that through the conduct alleged in Counts I – III, USAA Life misappropriated funds held in trust for the benefit of Plaintiff and the putative class, which constituted the tort of conversion. *Id.* ¶¶ 70-78. In Count V, Plaintiff sought a declaration that the conduct alleged in Counts I – III constitutes a breach of the Class Policies and sought an order enjoining USAA Life from continuing to collect impermissibly inflated charges.

USAA Life maintains that the COI Charges were appropriate and permissible under the terms of the universal life insurance policies and has asserted additional defenses, including that

the claims are barred by the statute of limitations. *E.g.*, Doc. 36 (Answer); Doc. 67 (Mot. for Summary Judgment).

Soon after the inception of the case, the Parties began a lengthy and thorough discovery process. Plaintiff served and USAA Life responded to three sets of interrogatories totaling 28 separate interrogatories, and USAA also provided multiple supplements to those responses. USAA Life served and Plaintiff responded to and verified one set of interrogatories totaling twelve separate interrogatories, and Plaintiff also provided one supplement to that response. Plaintiff served and USAA Life responded to two sets of requests for production of documents totaling 74 separate categories of documents. USAA Life served and Plaintiff responded to one set of requests for production of documents totaling 30 separate categories of documents. In response to those requests, USAA Life produced over 20,000 documents, including over 156,000 pages of documents in addition to more than 5,400 spreadsheets. Plaintiff collected and produced 145 pages of documents. Plaintiff served, and USAA Life responded to, two sets of requests for admission totaling 20 separate requests, two of which each had 176 subparts (with those two related to the admissibility of key documents). The written discovery process also entailed a significant number of meet-and-confer conversations and several formal stipulations regarding discovery and evidentiary issues. Ex. 2 (Siegel Decl.), ¶ 7.

Plaintiff also took the depositions of six USAA Life witnesses, including Phillip Beyer (USAA Life's Assistant Vice President of Innovation and former Assistant Vice President of Pricing); Elizabeth Branaum (an actuary with 43 years of experience at USAA Life who was involved in designing and pricing the Universal Life 1, Universal Life 2, and Universal Life 3 products); Nadeem Chowdhury (Assistant Vice President at USAA Life and Chair of its Life Actuarial Modeling Forum), Amanda Hamala (USAA Life's head of pricing and reinsurance),

Jeffrey Nordstrom (former President and former Chief Actuary of USAA Life), and Rebecca Rosser (USAA Life's Senior Financial Officer and former Director of Life Insurance Pricing). Plaintiff deposed three of these witnesses in their capacity as Rule 30(b)(6) representatives for USAA Life. Specifically, Amanda Hamala was deposed regarding USAA Life's knowledge as to the repricing of the universal life products, financial projections, and discovery responses. Nadeem Chowdhury was deposed regarding USAA Life's knowledge as to its mortality experience and assumptions. Rebecca Rosser was deposed regarding USAA Life's knowledge as to pricing the universal life products, communications with state regulators, policy owner data, and disclosures to policy owners. USAA Life's employees and former employees also testified that they each spent significant time preparing for their depositions, including as much as thirty hours for some witnesses. USAA Life deposed Mr. Spegele and Plaintiff's actuarial expert, Scott J. Witt, each of whom likewise spent significant amounts of time preparing for their depositions. All of these depositions were taken over the course of seven months from June 2019 through January 2020. Siegel Decl., ¶¶ 8-10.

On December 20, 2019, Mr. Spegele filed his motion for class certification, requesting that this Court certify a nationwide class of current and former Universal Life 3 ("UL3") and Universal Life 4 ("UL4") policy owners, with certain limited exceptions. Doc. 54. On February 24, 2020, USAA Life filed its opposition to class certification, arguing that issues relating to adequacy, predominance, USAA Life's affirmative defenses, choice of law, and Plaintiff's damages model precluded class certification. Doc. 61. Additionally, on February 24, 2020, USAA Life filed its motion to exclude the expert report of Mr. Witt. Doc. 59. Plaintiff filed his opposition to USAA Life's motion to exclude Mr. Witt's report on March 16, 2020 (Doc. 71), and his reply in support of class certification on April 13, 2020 (Doc. 81). On March 2, 2020, USAA Life filed its motion

for summary judgment, arguing its universal life policies' COI Rates provision authorizes USAA Life to include factors in addition to its expectations of future mortality experience in its COI Rates and that it had no obligation to lower COI Rates when its mortality expectations improved. Doc. 67. USAA Life also argued that Plaintiff's claims were barred by the statute of limitations and the doctrine of laches. *Id.*

On September 23, 2020, the Court granted Plaintiff's motion for class certification and denied USAA Life's motion to exclude Mr. Witt's report, thereby certifying the class of UL3 and UL4 policy owners as to Counts I – IV under Rule 23(b)(3) and Count V under Rule 23(b)(2). Doc. 89.

On October 7, 2020, USAA Life filed in the United States Court of Appeals for the Fifth Circuit its petition for leave to appeal under Rule 23(f). *See* Fifth Circuit Case No. 20-90039. On October 19, 2020, Plaintiff filed his opposition to USAA Life's petition for leave to appeal. On October 26, 2020, USAA Life filed its reply. On October 29, 2020, the Fifth Circuit granted USAA Life's petition for leave to appeal. On January 25, 2021, USAA Life filed its principal brief on appeal. *See* Fifth Circuit Case No. 20-50909. On February 1, 2021, the Washington Legal Foundation, the Chamber of Commerce of the United States of America, and the American Council of Life Insurers filed amicus briefs in the Fifth Circuit supporting USAA Life's request that this Court's order certifying the class be reversed. Plaintiff's answer brief is presently due May 10, 2021.[2]

---

[2] The Parties advised the Fifth Circuit Mediator that the case has settled, and the appeal has been taken off the active calendar pending the conclusion of settlement approval proceedings in this Court. Siegel Decl., ¶ 13.

## B.    Settlement Negotiations

The Parties engaged in intermittent settlement talks at various points in the early stages of the case that were not fruitful. After the Court concluded this case satisfied the requirements of Rule 23 and certified a nationwide class of UL3 and UL4 policy owners on September 23, 2020 (Doc. 89), however, settlement negotiations began in earnest. On October 30, 2020, at USAA Life's request, Plaintiff made a formal settlement demand and provided a general description of his expert's methodology for calculating classwide damages. On November 30, 2020, USAA Life submitted questions about Plaintiff's damages methodology and requested a phone conference to ask additional questions. On December 3, 2020, the Parties participated in a video conference where Plaintiff's counsel answered questions about the damages methodology. Following the phone conference, the Parties agreed to mediation before Professor Eric Green. Both Parties submitted mediation statements and participated in phone conferences with Professor Green prior to the mediation. On January 12, 2021, the Parties participated in a full day mediation wherein multiple proposals and counterproposals were exchanged; however, they were unsuccessful in resolving the case that day. The Parties continued to negotiate directly over the course of the next several weeks and on February 2, 2021, were successful in agreeing to the material terms of the Settlement Agreement now submitted for approval. Siegel Decl., ¶¶ 14-15.

Throughout the process, the settlement negotiations were conducted by highly qualified and experienced counsel on both sides at arm's length. Plaintiff's counsel was well informed of the material facts and the negotiations were hard-fought and non-collusive. Plaintiff's counsel analyzed all of the contested legal and factual issues to thoroughly evaluate USAA Life's contentions, advocated in the settlement negotiation process for a fair and reasonable settlement that serves the best interests of the Class, and made fair and reasonable settlement demands of USAA Life. *Id.* ¶ 16.

### III.    SUMMARY OF THE SETTLEMENT

The Agreement represents a compromise between Plaintiff and the proposed Settlement Class and USAA Life regarding the claims pled in the Class Action Complaint. If the Settlement is finally approved, USAA Life will fund a non-reversionary cash Settlement Fund in the amount of $90,000,000. Under the Agreement, Class Counsel will move for an attorneys' fee award to be paid from the Settlement Fund not to exceed 30 percent of the Settlement Fund and reimbursement of expenses from the Settlement Fund not to exceed $300,000. Agreement, ¶ 8.1. Class Counsel will also move for a service award for Mr. Spegele to be paid from the Settlement Fund in an amount not to exceed $20,000. *Id.* ¶ 8.2.[3] The Settlement Fund will also cover the fees and expenses of the Settlement Administrator, which shall be fixed at $200,000. *Id.* ¶ 1.29.

There is no "claims process." Each Settlement Class Member will receive their share of the Net Settlement Fund pursuant to a distribution plan developed by Class Counsel and subject to approval by the Court. *Id.* ¶¶ 2.3, 2.4.[4] In exchange for these benefits, the Parties will seek the entry of judgment on the claims asserted in this case and Settlement Class Members agree to release all claims arising out of the facts asserted in this case. *Id.* ¶¶ 3.1-3.7.

The Agreement allocates the value of the Settlement Fund across the Settlement Class pursuant to an objective distribution plan that is designed to provide each Settlement Class Member a minimum payment of $50 plus an approximate pro rata portion of the Net Settlement

---

[3] Pursuant Rule 23(h), Class Counsel will file their motion for attorneys' fees, costs, and expenses and for a service award no later than 14 days after the Notice Date. Agreement, ¶¶ 1.16, 10.2.

[4] Although the Settlement is designed to distribute 100% of the Settlement Fund, where any Settlement Class Members do not cash their checks within 180 days of issuance, such checks will be cancelled and the check amounts sent to the unclaimed property division of the state in which each such Settlement Class Member was last sent Notice. However, checks shall be re-issued by the Settlement Administrator if requests to do so are received from Settlement Class Members prior to the date when the transfer to the unclaimed property divisions has occurred. Agreement, ¶ 2.5.

Fund according to the amount of COI Charges paid by each Settlement Class Member. *See* Agreement, at Ex. B.

The Agreement permits any Settlement Class Member to file an objection to the Settlement terms or opt-out of the Settlement Class within 35 days after the date the Notice is mailed. *Id.* ¶¶ 5.1, 5.5.

## IV.    THE SETTLEMENT CLASS

The proposed Settlement Class includes the persons or entities who own or owned one of approximately 39,000 Universal Life 1 or Universal Life 2 life insurance policies issued or administered by USAA Life or its predecessors in interest, and in force on or after March 1, 1999; and the persons or entities who own or owned one of approximately 83,000 Universal Life 3 or Universal Life 4 life insurance policies issued or administered by USAA Life or its predecessors in interest, and in force on or after March 1, 1999.[5] *Id.* ¶ 1.31.

## V.    ISSUING NOTICE TO THE CLASS IS JUSTIFIED.

### A.    Standard for Issuance of Notice

Under Rule 23(e)(1), as amended effective December 1, 2018, giving notice to the class of a class action settlement is justified when the Court concludes it will likely be able to approve the settlement and certify the class for purposes of judgment on the settlement. Rule 23(e)(2) provides that a proposed settlement may be approved only upon a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "A proposed settlement 'will be preliminarily approved unless

---

[5] The Settlement Class excludes USAA Life; any entity in which USAA Life has a controlling interest; any of the officers, directors, or employees of USAA Life; the legal representatives, heirs, successors, and assigns of USAA Life; anyone employed with Plaintiff's law firms; and any Judge to whom this case is assigned, and his or her immediate family. Also excluded from the Settlement Class are persons or entities who own or owned Universal Life 3 and Universal Life 4 policies issued in New Jersey and policies issued by USAA Life Insurance Company of New York. Agreement, ¶ 1.31.

there are obvious defects in the notice or other technical flaws, or the settlement is outside the range of reasonableness or appears to be the product of collusion, rather than arms-length negotiation.'" *ODonnell v. Harris Cty., Texas*, No. CV H-16-1414, 2019 WL 4224040, at *7 (S.D. Tex. Sept. 5, 2019) (quoting 2 McLaughlin on Class Actions § 6:7 (15th ed. 2018)). "A lower degree of scrutiny" applies where, as here, the Court certified a class "before any settlement was reached or negotiated." *Id.* (quoting *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 122 (S.D.N.Y. 1997) (citing Manual for Complex Litigation § 30.44 (3d ed. 1995))).

Under the 2018 amendments to Rule 23(e)(2), in determining whether a settlement is fair, reasonable, and adequate, courts look to whether:

    (A) the class representatives and class counsel have adequately represented the class;

    (B) the proposal was negotiated at arm's length;

    (C) the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)  any agreement required to be identified under Rule 23(e)(3); and

    (D) the proposal treats class members equitably relative to each other.

*ODonnell*, 2019 WL 4224040, at *8 (citing Fed. R. Civ. P. 23(e)(2); 4 Newberg on Class Actions § 13:14 (5th ed. 2019) (in adopting the 2018 amendments to Rule 23(e), "Congress essentially codified [the] prior practice")).

Prior to the codification of the settlement approval factors in Rule 23, the Fifth Circuit identified six factors for courts to consider in determining the fairness, reasonableness, and

adequacy of a proposed class settlement in *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th

Cir. 1983):

> (1) evidence that the settlement was obtained by fraud or collusion; (2) the
> complexity, expense, and likely duration of the litigation; (3) the stage of the
> litigation and available discovery; (4) the probability of plaintiffs' prevailing on the
> merits; (5) the range of possible recovery and certainty of damages; and (6) the
> opinions of class counsel, class representatives, and absent class members.

*All Plaintiffs v. All Defendants*, 645 F.3d 329, 334 (5th Cir. 2011) (quoting *In re Katrina Canal

Breaches Litig.*, 628 F.3d 185, 194-95 (5th Cir. 2010)). "Because the Rule 23 and case-law factors

overlap, courts in this circuit often combine them in analyzing class settlements." *ODonnell*, 2019

WL 4224040, at *8 (citing *Hays v. Eaton Grp. Attorneys, LLC*, No. 17-88-JWD-RLB, 2019 WL

427331, at *9 (M.D. La. Feb. 4, 2019); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. H-

17-3852, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019)); *see also* Fed. R. Civ. P. 23(e)(2)

Committee Notes to 2018 amendments ("The goal of this amendment [to Rule 23(e)(2)] is not to

displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core

concerns of procedure and substance that should guide the decision whether to approve the

proposal.").

    "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement

reached in arm's-length negotiations between experienced, capable counsel after meaningful

discovery." *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 02-CV-1152-M, 2018 WL 1942227,

at *4 (N.D. Tex. Apr. 25, 2018) (quoting *In re Heartland Payment Sys., Inc. Customer Data Sec.

Breach Litig.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012)). "This presumption reflects the strong

public interest in settling class actions." *ODonnell*, 2019 WL 4224040, at *8 (citing *Kincade v.

Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981) ("Particularly in class action suits,

there is an overriding public interest in favor of settlement.") (quoting *Cotton v. Hinton*, 559 F.2d

1326, 1331 (5th Cir. 1977)); *Hays*, 2019 WL 427331, at *8 ("Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable[,] and adequate.") (quoting *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex.*, 910 F. Supp. 2d 891, 930-31 (E.D. La. 2012)).

**B.    The Proposed Settlement Is Fair, Reasonable, and Adequate Pursuant to the Rule 23(e) and Fifth Circuit *Reed* Factors.**

As shown below, the Settlement in this Case is fair, reasonable, and adequate under the factors identified in Rule 23(e) and the Fifth Circuit's *Reed* opinion such that the Court should conclude issuing notice to the Settlement Class is justified.

**1.    The Class Representative and Class Counsel Have Provided Excellent Representation to the Class.[6]**

The adequacy of representation factor supports finding that the Settlement will ultimately be approved and thus that notice to the Settlement Class should issue. First, Plaintiff Spegele has shown his dedication to representing the Settlement Class by providing information, documents, and testimony in connection with the lawsuit, and working with counsel to advance the litigation on behalf of himself and all members of the proposed Settlement Class. *See* Ex. I to Doc. 54 (Spegele Decl.) at ¶¶ 2, 4-6; *see* Order Granting Class Cert. (Doc. 89) at 26 (finding "Plaintiff has diligently prosecuted this lawsuit and he has a personal monetary interest at stake, suggesting he will continue to adequately protect the interests of the proposed class members.").

Second, Class Counsel are competent, experienced and qualified with expertise in class actions and cost of insurance cases and have vigorously prosecuted the claims asserted in this case. As demonstrated in connection with Plaintiff's motion for class certification, Stueve Siegel Hanson, Miller Schirger, and Girard Sharp LLP have extensive experience handling class actions

---

[6] *See* Fed. R. Civ. P. 23(e)(2)(A).

in state and federal court, including cases alleging similar cost of insurance overcharges. Siegel Decl., ¶¶ 3-4; *see also* Doc. 55 at Exs. J-L (Declarations of Norman Siegel, John Schirger, and Daniel Girard in support of class certification). In certifying the class for trial, the Court recognized that "Plaintiff's counsel—Stueve Siegel, Miller Schirger, and Girard Sharp—have extensive experience in these kinds of lawsuits." Doc. 89 at 26. Thus, this factor supports finding the Settlement will likely be approved, and therefore, that notice should issue to the Settlement Class.

### 2.    The Settlement Is the Product of Arm's Length Negotiations.[7]

As explained in Part II.B., *supra*, the proposed Settlement is the product of significant negotiation by experienced counsel on both sides with the assistance of a neutral mediator, culminating in the execution of the Agreement attached as Exhibit 1. Siegel Decl., ¶¶ 14-16. The arm's length nature of the negotiations amongst experienced counsel supports a finding that the Settlement is fair, reasonable, and adequate and will likely be approved such that issuing notice to the Settlement Class is justified. *See* Comment to December 2018 Amendment to Fed. R. Civ. P. 23(e) ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); *see also Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062-DAE, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018) ("The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary."). Accordingly, this factor supports issuing notice of the Settlement to the Settlement Class.

---

[7] *See* Fed. R. Civ. P. 23(e)(2)(B); *Reed*, 703 F.2d at 172.

### 3. The Relief Provided by the Settlement Is Excellent.[8]

#### a. The duration, costs, risks, and delay of trial and appeal support approval of the Settlement.[9]

The $90,000,000 cash settlement is an excellent result for the Settlement Class in light of the duration, costs, risks, and delay of trial and appeal, supporting a finding that the Settlement will likely be approved, and thus, that notice should issue. "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Heartland*, 851 F. Supp. 2d at 1064 (quoting *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010)); *see also Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) ("[S]ettling ... avoids the risks and burdens of potentially protracted litigation.").

While Plaintiff was successful in obtaining certification of a class for trial and believes his interpretation of the policies' COI Rates provision is correct and that damages can be established on a classwide basis, there are many issues on which Plaintiff and the class would have to prevail to obtain a classwide judgment for the full damages allegedly suffered. First, the Fifth Circuit has granted USAA Life's petition pursuant to Rule 23(f) to appeal this Court's order certifying the class for trial, and thus, Plaintiff faces risk that the class certified by the Court will be ordered decertified. In that event, a significantly smaller class would be certifiable, or, depending on the Fifth Circuit's rationale, it is possible no class could be certified. In contrast, approval of the proposed Settlement will ensure that a nationwide group of policy owners will obtain relief.

Second, Plaintiff will have to establish that his reading of the policies is correct, and that, therefore, USAA Life has repeatedly breached them by including non-mortality factors in its COI

---

[8] *See Reed*, 703 F.2d at 172.

[9] Fed. R. Civ. P. 23(e)(2)(C)(i).

Rates. USAA Life contends that its inclusion of such factors in the COI Rates was proper under the policies, and it has some support for its interpretation. For example, insurance defendants have sometimes been successful in arguing that cost of insurance provisions that require rates to be "based on" certain factors do not limit the companies to using only the factors disclosed. *See Norem v. Lincoln Ben. Life Co.*, 737 F.3d 1145, 1146 (7th Cir. 2013) (holding that insurer was not precluded from loading non-mortality expenses and profit in cost of insurance rates that policy stated would be "based on the insured's sex, issue age, policy year, and payment class"). USAA Life has moved for summary judgment on this basis. Doc. 67. Although Plaintiff contends that those cases are distinguishable because they involved materially different policies than the one at issue here, the risk that this Court or an appellate court would disagree cannot be ignored. If this Court or an appellate court were to adopt USAA Life's interpretation, policy owners would be entitled to nothing.

In addition, if the Settlement is not approved, the Parties will ultimately have to undertake expensive trial preparations. Even if Plaintiff were to prevail at trial, USAA Life would likely appeal, resulting in significant delay to the class in obtaining any relief. By reaching a favorable settlement prior to the resolution of dispositive motions or trial, Plaintiff is avoiding expense and delay and ensuring recovery for the Settlement Class. *See Hays*, 2019 WL 427331, at *10 ("[A]pproval of settlement is favored where settling 'avoids the risks and burdens of potentially protracted litigation.'") (quoting *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006)).

In light of these serious risks, the proposed Settlement, which returns to class members a significant percentage of the total potential overcharges without the necessity of making a claim,

is an outstanding result (*see* Siegel Decl., ¶¶ 19-21), and easily satisfies the requirements for issuing notice to the Settlement Class.

> **b.    The effectiveness of the proposed method of distributing relief to the Settlement Class supports approval of the Settlement.[10]**

Subject to Court approval, the Net Settlement Fund will be distributed pursuant to a proposed distribution formula that will provide each Settlement Class Member a minimum payment of $50 plus an approximate pro rata portion of the fund according to the amount of COI Charges paid by the Settlement Class Member. *See* Agreement, ¶ 2.3, *id.*, Ex. B. Settlement checks will be delivered by U.S. mail, first-class postage prepaid, without the submission of a claim. Agreement, ¶ 2.4. That each Settlement Class Member is receiving an equitable portion of the Settlement Fund according to the amount of alleged loss suffered *without* needing to submit a claim supports approval of the Settlement. *See, e.g.*, *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1351 (S.D. Fla. 2011) ("The absence of a claims-made process further supports the conclusion that the Settlement is reasonable."). Given the simplified process for paying each Settlement Class Member and the fact that no funds will revert to USAA Life, this factor weighs in favor of approval.

> **c.    The terms for the award of attorneys' fees, including the timing of payment, support approval of the Settlement.[11]**

Class Counsel will seek their fee as a percentage of the $90,000,000 Settlement Fund created for the Settlement Class. USAA Life has agreed not to oppose any fee request that is not more than thirty percent of the fund. Agreement, ¶ 8.1. Class Counsel will file their fee motion no later than 14 days after the Notice Date, which is sufficiently before the deadline for class members

---

[10] Fed. R. Civ. P. 23(e)(2)(C)(ii).

[11] Fed. R. Civ. P. 23(e)(2)(C)(iii).

to file objections or to exclude themselves from the Settlement. *Id.* ¶¶ 1.16, 5.1, 5.5, 10.2. The Agreement's provision for an attorneys' fee award paid from the Settlement Fund is fair and reasonable under the common fund doctrine. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *see also* Fed. R. Civ. P. 23(h) (permitting the court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement").

In addition, the Agreement's provision for an award of up to thirty percent of the fund is reasonable. District courts in the Fifth Circuit frequently assess the reasonableness of an attorney fee award paid from a common fund by the percentage sought, and frequently approve awards of thirty percent. *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (noting district court found thirty percent contingency fee "is a reasonable rate"); *Dyson v. Stuart Petroleum Testers, Inc.*, No. 1-15-CV-282 RP, 2016 WL 815355, at *5 (W.D. Tex. Feb. 29, 2016) ("Because a benchmark fee of 30% is more common and the parties have not proffered exceptional circumstances that justify raising the benchmark and thereby reducing Plaintiffs' recovery, this Court applies a benchmark fee of 30%."); *Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-CV-00603-RP, 2015 WL 12866212, at *5 (W.D. Tex. Dec. 23, 2015) (thirty percent); *see also Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *27 (N.D. Tex. Nov. 8, 2005) (noting that "courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method"); *Al's Pals Pet Care*, 2019 WL 387409, at *4 (awarding one-third of $15 million settlement fund).[12] Accordingly, the

---

[12] *See also Wolfe v. Anchor Drilling Fluids USA Inc.*, No. 4:15-CV-1344, 2015 WL 12778393, at *3 (S.D. Tex. Dec. 7, 2015) (awarding forty percent); *Frost v. Oil States Energy Servs.*, No. 4:15-cv-1100, 2015 WL 12780763, *2 (S.D. Tex. Nov. 19, 2015) (one-third); *Campton v. Ignite*

Agreement's provision for an award of up to thirty percent of the fund is within the range generally deemed reasonable.[13]

Class Counsel will provide a thorough analysis of the reasonableness of their forthcoming attorneys' fee and expense award request in their fee motion. But importantly, the Parties' Agreement is not conditioned upon the Court's approval of the fee award. Agreement, ¶ 8.4. Accordingly, at this stage, the Court can and should conclude that it is likely to approve the Settlement for purposes of sending notice to the Settlement Class, without regard to the issue of attorneys' fees and expenses.[14]

---

*Restaurant Group, Inc.*, No. 4:12-2196, 2015 WL 12766537, at *3 (S.D. Tex. June 5, 2015) (one-third); *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 307 (S.D. Miss. 2014) (one-third); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1139-40 (W.D. La. 1997) (thirty-six percent); *Erica P. John Fund, Inc.*, 2018 WL 1942227, at *12-13 (one-third); *Fairway Med. Ctr., LLC v. McGowan Enterprises, Inc.*, No. 16-3782, 2018 WL 1479222, at *2-3 (E.D. La. Mar. 27, 2018) (one-third); *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, MDL No. 2328, 2015 WL 4528880, at *23 (E.D. La. July 27, 2015) (one-third); *Burford v. Cargill, Inc.*, No. 05-0283, 2012 WL 5471985, at *5 (W.D. La. Nov. 8, 2012) (awarding one-third and noting "a review of analogous precedent indicates that an award of one-third of the common fund is reasonable and typical").

[13] Courts in this circuit analyze the following "*Johnson* factors" to evaluate the reasonableness of an award based on a particular percentage of the fund: "(1) the time and labor required for the litigation; (2) the novelty and complication of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case was 'undesirable;' (11) the type of attorney-client relationship and whether that relationship was long-standing; and (12) awards made in similar cases." *Klein*, 705 F. Supp. 2d at 674 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). Class Counsel will address these factors as appropriate in their fee motion.

[14] Similarly, Class Counsel will request a service award of up to $20,000 for Mr. Spegele in their forthcoming motion. Agreement, ¶ 8.2. Service awards of this size have been found reasonable. *See, e.g.*, *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000) ("approving incentive awards of $25,000 to each of two named plaintiffs"); *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 504 (N.D. Miss. 1996) (approving $10,000 incentive awards to each of the four named plaintiffs). In addition, the Parties' Agreement is not conditioned on the Court's approval of this request. Agreement, ¶ 8.4.

> **d.    There is no agreement required to be identified under Rule 23(e)(3).[15]**

Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." There is no agreement between the Parties here, except those set forth or explicitly referenced in the Settlement Agreement. Accordingly, this factor is not relevant to whether the Settlement is likely to be approved.

> **4.    The Stage of the Proceedings and the Amount of Discovery Completed Supports Approval of the Settlement.[16]**

This factor requires the court to look to whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Ayers*, 358 F.3d at 369. As explained in Part II.A., *supra*, substantial discovery took place prior to the consummation of the Agreement, including the production and review of thousands of documents and depositions of numerous witnesses, including Mr. Spegele and Plaintiff's expert Mr. Witt, and multiple fact and Rule 30(b)(6) deponents from USAA Life. This information allowed Plaintiff to determine, among other things, that USAA Life was including in its COI Rates a load for factors unrelated to its expectations as to future mortality experience. Siegel Decl., ¶ 18. In addition, with the policy-by-policy transactional data produced by USAA Life, Plaintiff's expert was able to develop a damages model to calculate the lost cash value suffered by policy owners resulting from USAA Life's inclusion of undisclosed factors in the COI Rates. *Id.* Much of the discovery material was presented with or relied on in the class certification-related briefing, upon which this Court ruled that Mr. Witt's damages model was well-tethered to Plaintiff's theory of liability. Doc. 89. Likewise, the merits of Plaintiff's theory of liability and USAA Life's defenses thereto are fully

---

[15] Fed. R. Civ. P. 23(e)(2)(C)(iv).

[16] *Reed*, 703 F.2d at 172.

briefed in USAA Life's motion for summary judgment. Docs. 67, 72, 80. Thus, the Parties were well-informed of the facts and legal issues in this case.

In addition, Class Counsel's significant experience litigating class actions involving similar alleged cost of insurance overcharges provided useful benchmarks to evaluate the merits of this case and to thus allow Class Counsel to evaluate the reasonableness of the Settlement here. Siegel Decl., ¶¶ 3-4; *see also* Doc. 55 at Exs. J-L (Declarations of Norman Siegel, John Schirger, and Daniel Girard in support of class certification). In 2018, Class Counsel settled a similar case against John Hancock Life Insurance Company, obtaining $59.75 million for a class of approximately 103,000 whole life insurance policy owners. *See Larson v. John Hancock Life Ins. Co*., No. RG16813803 (Alameda Cty., Cal.). In 2016, Stueve Siegel and Miller Schirger settled another similar case against Lincoln National Life Insurance Company, obtaining $2.25 billion of guaranteed term life insurance with a market value of approximately $171.8 million for a class of approximately 85,000 universal life policy owners. *See Lincoln Nat'l Life Ins. Co. v. Bezich*, No. 02C01-0906-PL-73 (Allen Cty., Ind.) In June 2018, Stueve Siegel and Miller Schirger successfully tried a class action COI overcharge case like this against State Farm Life Insurance Company, securing a jury verdict of $34,333,495.81 for approximately 24,000 Missouri policy owners, which was affirmed on appeal by the Eighth Circuit Court of Appeals. *See Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL at Docs. 358 & 360 (W.D. Mo. June 6, 2018), *aff'd*, 963 F.3d 753 (8th Cir. 2020). Siegel Decl., ¶¶ 3-4.

The Court should thus conclude that "[t]he parties, and the court, have ample factual and legal information with which to evaluate the merits of their competing positions and to 'make a reasoned judgment about the desirability of settling the case on the terms proposed.'" *ODonnell*, 2019 WL 4224040, at *10 (quoting *In re Educ. Testing Serv.*, 447 F. Supp. 2d at 620). Thus, this

factor supports the conclusion that the Settlement will ultimately be approved as fair, reasonable, and adequate, and therefore, that issuing notice to the Settlement Class is justified.

### 5. Plaintiff's Probability of Success on the Merits Supports Approval of the Settlement.[17]

"The probability of the plaintiffs' success on the merits is the most important *Reed* factor, 'absent fraud and collusion.'" *ODonnell*, 2019 WL 4224040, at *11 (quoting *Santinac v. Worldwide Labor Support of Ill., Inc.*, No. 15-CV-25, 2017 WL 1098828, at *3 (S.D. Miss. Mar. 23, 2017) (citing *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. Unit A 1982))). "This factor relates to the 'risks ... of trial and appeal,'" the Rule 23(e)(2) consideration discussed at Part V.B.3.a., *supra*. *See id.* (citing Fed. R. Civ. P. 23(e)(2)(C)(i)). "In evaluating the likelihood of success, the Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007) (citing *Reed*, 703 F.2d at 172). "This factor favors approving a settlement even when the likelihood of success on the merits is not certain." *Id.* (citing *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326-27 (5th Cir. Unit A Oct. 1981) ("A district court need not establish the plaintiffs' likelihood of prevailing to a certainty.")).

As explained in Part V.B.3.a., *supra*, while Plaintiff is confident in the merits of his theory of liability and ability to prove the claims of the absent class members, there remain significant obstacles to a classwide judgment in favor of the class on liability and damages. The propriety of class certification is now before the Fifth Circuit, and even if Plaintiff prevails and the class remains certified, Plaintiff will still have to establish that his reading of the Class Policies is correct and that his claims are not barred by the statute of limitations or the doctrine of laches. Then,

---

[17] Fed. R. Civ. P. 23(e)(2)(C)(i); *Reed*, 703 F.2d at 172.

Plaintiff must convince a jury that his damages methodology correctly measures the harms class members have suffered. Even if Plaintiff prevails at trial on behalf of the class, there is the significant risk that, after years-long litigation, the Fifth Circuit could reverse on the merits. Given these significant risks that could result in policy owners receiving nothing, the Settlement, which returns to Settlement Class Members a substantial percentage of the overcharges Plaintiff claims they have suffered, is a fair, reasonable, and adequate result. Siegel Decl., ¶¶ 17-22. Thus, this factor supports issuing notice to the Settlement Class.

> **6.      The Range and Certainty of Recovery Supports Approval of the Settlement.[18]**

This factor requires the district court to "establish the range of possible damages that could be recovered at trial, and, then, by evaluating the likelihood of prevailing at trial and other relevant factors, determine whether the settlement is pegged at a point in the range that is fair to the plaintiff settlors." *Maher v. Zapata Corp.*, 714 F.2d 436, 460 (5th Cir. 1983) (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 213 (5th Cir. 1981)). "The court's consideration of this factor 'can take into account the challenges to recovery at trial that could preclude the class from collecting altogether, or from only obtaining a small amount.'" *ODonnell*, 2019 WL 4224040, at *12 (quoting *Klein*, 705 F. Supp. 2d at 656). "The question is not whether the parties have reached 'exactly the remedy they would have asked the Court to enter absent the settlement,' but instead 'whether the settlement's terms fall within *a reasonable range of recovery*, given the likelihood of the plaintiffs' success on the merits." *Id.* (quoting *Klein*, 705 F. Supp. 2d at 656; *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 849-50 (E.D. La. 2007)) (emphasis in original).

---

[18] *See* Fed. R. Civ. P. 23(e)(2)(C)(i); *Reed*, 703 F.2d at 172.

As explained in Parts V.B.3.a. and V.B.5., *supra*, there are significant hurdles Plaintiff would have to overcome before class members would receive any recovery if the case were to proceed without settlement. Any of the obstacles to a classwide judgment's ultimate affirmance on appeal— which, even if it came to pass, would not occur for years[19]—could result in class members taking nothing or obtaining significantly less in damages than requested. For example, even if Plaintiff's interpretation of the Class Policies prevails and the issue of damages is tried to a jury, if the jury were to accept USAA Life's challenges to Plaintiff's damages methodology, the jury could award damages significantly less than requested, or nothing. While Plaintiff is giving up the possibility of the full recovery of damages and potential injunctive relief to prevent overcharges in the future, by settling, Plaintiff is ensuring the recovery for policy owners of a significant percentage of the overcharges they have suffered and without delay, obtaining now more than what they could have recovered at trial if the jury accepted one or more of USAA Life's challenges to Plaintiff's damages calculations, such as its arguments regarding the statute of limitations, which could limit damages to just four years despite conduct reaching back into the 1980s. *See* Doc 67-1 at 23-29; Doc. 89 at 30-31. "Parties give and take to achieve settlements. Typically neither Plaintiffs nor Defendants end up with exactly the remedy they would have asked the Court to enter absent the settlement." *Frew v. Hawkins*, No. 3:93-CA-065 WWJ, 2007 WL 2667985, at *6 (E.D. Tex. Sept. 5, 2007) (internal citations omitted) (citing *United States v. Armour*, 402 U.S. 673, 681 (1971)). The Settlement here is an excellent result given the range and

---

[19] For example, the jury verdict Class Counsel obtained in *Vogt v. State Farm Life Insurance Company* <u>nearly three years ago</u> in 2018 is still being challenged. It is presently before the United States Supreme Court on a petition raising the issue of the propriety of class certification. *See State Farm Life Insurance Co. v. Vogt*, Case No. 20-1008.

certainty of recovery. Thus, this factor supports issuing notice of the Settlement to the Settlement Class.

### 7.    The Respective Opinions of Class Counsel, the Class Representative, and the Absent Class Members, Support Approval of the Settlement.[20]

As explained above, Class Counsel believes the Settlement is an excellent result for the Settlement Class, especially given the risks and delay of continued litigation, as detailed above. Siegel Decl., ¶¶ 17-22. "The endorsement of class counsel is entitled to deference, especially in light of class counsels' significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims." *DeHoyos*, 240 F.R.D. at 292; *see also Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 346 (N.D. Tex. 2011) ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'") (quoting *Cotton*, 559 F.2d at 1330). Thus, while the "[C]ourt may not simply defer to class counsels' opinion," because the other factors also support a finding that the proposed Settlement is fair, adequate, and reasonable, Class Counsel's recommendation that the Settlement satisfies the requirements for approval is entitled to substantial weight. *See Turner*, 472 F. Supp. 2d at 852.

Here, Class Counsel not only has the benefit of a complete understanding of the risks and potential ranges of recovery in this case, but has litigated several other similar cases that allow Class Counsel to fairly consider the merits of the claims here and the value of the Settlement to the Settlement Class. In addition, the Class Representative, Mr. Spegele, also supports and approves the Settlement, believing it to be in the best interests of the Settlement Class. Siegel Decl., ¶ 23. While the Settlement Class Members have not yet had the opportunity to provide their

---

[20] *See Reed*, 703 F.2d at 172.

views on the proposed Settlement, Class Counsel believe it will be well received, and any objections thereto will be provided to the Court and addressed in advance of the Fairness Hearing. Accordingly, this factor supports issuing notice of the Settlement to the Settlement Class.

### 8. The Settlement Treats Class Members Equitably Relative to Each Other, Supporting Approval of the Settlement.[21]

The Settlement's proposed distribution formula determines each Settlement Class Member's recovery under the Settlement according to the actual or estimated COI Charges each paid under the class policies. Accordingly, the Settlement treats the Settlement Class Members equitably relative to each other, supporting a finding that the Settlement will likely be approved, and thus, justifying issuing notice of the Settlement to the Settlement Class.

\*       \*       \*

Accordingly, the Rule 23(e) and Fifth Circuit *Reed* factors support a finding that the Settlement will likely be approved, and that therefore, notice of the Settlement should issue to the Settlement Class.

## VI.    THE SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION FOR PURPOSES OF SETTLEMENT.

The second requirement in Rule 23(e)(1) for issuance of notice to the class is a finding that the Court will "likely be able to . . . certify the class for purposes of judgment" on the proposed settlement. Because the Court has already certified a class in this case, the class certification issues at this settlement stage are "whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P. 23(e)(1) Committee Notes to 2018 amendments.

---

[21] *See* Fed. R. Civ. P. 23(e)(2)(D).

The Court previously certified a class of approximately 80,000 policy owners of USAA Life's UL3 and/or UL4 policies that were active as of March 1999, subject to a few discrete exclusions. Doc. 89 at 36. Plaintiff now seeks to certify a Settlement Class comprised of the UL3 and UL4 policy owners and, in addition, owners of USAA Life's similar UL1 and UL2 policies. Because the Court already certified a class in this case, Plaintiff's analysis will focus on explaining why including the additional policy owners in the Settlement Class satisfies Rule 23, consistent with the Court's prior analysis in certifying the class of UL3 and UL4 owners.

### A.    Standard for Certifying Settlement Class

A motion for class certification under Federal Rule of Civil Procedure 23 involves a two-part analysis. First, under Rule 23(a), the proposed class must satisfy the requirements of numerosity, commonality, typicality, and fair and adequate representation. Second, the proposed class must meet at least one of the three requirements of Rule 23(b). *See* Doc. 89 (Order granting class certification) at 13. A district court has broad discretion in deciding whether a particular action complies with the requirements of Rule 23. *Id.* (citing *Yates v. Collier*, 868 F.3d 354, 359-60 (5th Cir. 2017)).

### B.    The Court's Order Certifying the Class of UL3 and UL4 Policy Owners

In its order certifying the class, the Court concluded that a class of UL3 and UL4 policy owners satisfies Rule 23 for each of Plaintiff's claims. To start, there was no question that the class of approximately 80,000 UL3 and UL4 policy owners satisfied Rule 23(a)(1)'s numerosity requirement. *Id.* In addition, the Court concluded that because each policy would be interpreted the same way under Texas law, and USAA Life's performance under the policies was uniform, Rule 23's commonality, typicality, and predominance requirements were satisfied. *Id.* at 20-21, 26-29; *see* Fed. R. Civ. P. 23(a)(2)-(3), (b)(3). The Court further found that USAA Life's statute of limitations defense did not defeat typicality or predominance. Doc. 89 at 21-22, 30-33; *see* Fed.

R. Civ. P. 23(a)(3), (b)(3). The Court also concluded that Plaintiff is an adequate representative because his theory of liability, which requires USAA Life to return any overcharges but does not require or compel USAA Life to raise rates on any policy owners, benefits all policy owners. Doc. 89 at 23-25; *see* Fed. R. Civ. P. 23(a)(4). Finally, the Court found that proceeding as a class action was superior to other means of litigating policy owners' claims, finding that separate actions would be impracticable given the size of policy owners' alleged damages, and that a class action would be manageable because the policies and USAA Life's conduct was uniform as to all policy owners. Doc. 89 at 34; *see* Fed. R. Civ. P. 23(b)(3). The Court also certified Plaintiff's claim for declaratory and injunctive relief under Rule 23(b)(2), finding that USAA Life had acted uniformly as to all policy owners and therefore that a single declaration or injunction would apply equally to all policy owners. Doc. 89 at 34-36.

As explained below, including owners of USAA Life's UL1 and UL2 policies in the Settlement Class satisfies Rule 23(a) and (b)(3), consistent with the Court's analysis in certifying the class of UL3 and UL4 policy owners. Therefore, the Court should conclude that it will "likely be able to . . . certify the class for purposes of judgment" on the proposed settlement, and therefore, that notice of the Settlement should issue to the Settlement Class.

### C.    The Settlement Class Satisfies the Requirements of Rule 23.

#### 1.    The Settlement Class meets each of the requirements of Rule 23(a).

The Settlement Class satisfies Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements. First, the Settlement Class satisfies the numerosity requirement because it is comprised of the approximately 83,000 UL3 and UL4 policy owners and approximately 39,000

UL1 and UL2 policy owners. Siegel Decl., ¶ 24; *see* Doc. 89 (finding numerosity satisfied for UL3 and UL4 class).

Second, commonality, typicality, and adequacy of representation are satisfied because UL1 and UL2 policies have the same COI Rates provision as the UL3 and UL4, and USAA Life likewise performed those policies uniformly as to all policy owners. *See* Doc. 55-9 at 147-48 (no state-by-state differences); Doc. 55-16 at 1 ("All other aspects of the Ratebook 5 U-Life [UL3] are the same as the Ratebook 4 U-Life [UL1 & UL2]."); Doc. 55-21 at 4 (identifying pricing documents applying uniformly to UL1-3); Doc. 55-37 at 4 (using same projection assumptions for UL1-3); Doc. 55-48 (single Universal Life Product Information sheet identifying only minimal differences between UL1-4 products).[22] In addition, Plaintiff Spegele is an owner of a UL2 policy and was an owner of two additional, now-terminated UL2 policies, in addition to his UL3 policy, Siegel Decl., ¶ 25, demonstrating that his claims are typical of the Settlement Class and that his interests are aligned with those policy owners.

The UL1 and UL2 also contain materially identical "conformity with laws" provisions as the UL3 and UL4, and therefore, the Court's conclusion that these provisions do not act as choice of law provisions (Doc. 89 at 14-17) applies equally to the UL1 and UL2 policies. Further, the Court's subsequent conclusion that under a common law choice of law analysis, Texas law applies to the class's breach of contract and conversion claims (Doc. 89 at 17-20), likewise applies to the UL1 and UL2 policies because, like the UL3 and UL4, the UL1 and UL2 policies were entered

---

[22] The class as previously certified excluded UL3 and UL4 policies issued in Montana and UL3 policies issued in Massachusetts. *See* Doc. 89 at 36 n.10. These policies contain the same provision requiring USAA Life to determine the COI Rates "based on its expectations as to future mortality experience," and USAA Life performed them uniformly with its other UL policies, except the male and female COI Rates were aggregated into unisex rates. Therefore, Plaintiff moves to include owners of these policies in the Settlement Class, and thus, for notice to issue to them.

into in Texas; USAA Life, a Texas citizen, drafted the UL1 and UL2 in Texas; USAA Life received policy owners payments in Texas; and Texas is where UL1 and UL2 policy owners were allegedly injured because USAA Life calculated the COI Rates and deducted COI Charges from their cash values in Texas. *See id.*; *see also* Doc. 55-6 at 20-21, 50-55, 80-82 (policy forms, COI rates, and expectations as to future mortality experience all developed in San Antonio); Doc. 55-15 (identifying various activities to take place at USAA Life's "Home Office" in San Antonio).[23]

Further, USAA Life maintains similar policy-level transactional data for UL1, UL2, UL3, and UL4 policy owners, allowing calculation of their COI overcharges using a simplified version of Plaintiff's expert's damages methodology proposed in support of class certification. Plaintiff has determined that the average COI overcharge percentage is nearly identical for the UL1 through UL4 products, so the amount of COI Charges paid by each policy owner will be proportional to their ultimate damages. *See* Siegel Decl., ¶ 18. Plaintiff is capable of determining an estimate of the COI Charges each policy owner paid to a reasonable degree of actuarial certainty by summing the COI Charges occurring during the last twenty-four years using available transactional data and, for the period where transactional data is unavailable, by extrapolating charges for policy owners using USAA Life's COI Rate tables and policy-specific characteristics. *See* Ex. 3, Bakos Decl., ¶¶ 13-14, Ex. B. This extrapolation technique is consistent with the methodology employed by

---

[23] Moreover, because Plaintiff now seeks class certification for purposes of settlement, variations in state laws "are irrelevant" because "the same concerns with regards to case manageability that arise with litigation classes are not present with settlement classes." *In re Pool Prod. Distribution Mkt. Antitrust Litig.*, No. MDL 2328, 2014 WL 7407492, at \*9 (E.D. La. Dec. 31, 2014) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529 (3d Cir. 2004)); *see also In re Mexico Money Transfer Litig.*, 267 F.3d 743, 746-47 (7th Cir. 2001). That is especially so because the Court has already concluded there are no material differences among the states in the measure of damages for breach of contract (Doc. 89 at 19), so no Settlement Class Member would have any interest in the application of a different state's law regarding the calculation or estimate of their alleged overcharges. *See* Doc. 89 at 19.

Plaintiff's expert at class certification. *See* Doc. 89 at 7-12 (denying USAA Life's motion to strike Mr. Witt's damages methodology and finding it relevant and reliable in calculating damages on a classwide basis). Furthermore, Mr. Spegele is an owner of UL2 policies along with his UL3 policy, so Mr. Spegele has a personal interest in ensuring that damages estimated for UL1 and UL2 policy owners is fair and reasonable—just as he does for the previously certified class of UL3 and UL4 policy owners.

Thus, the Settlement Class satisfies the Rule 23(a) requirements consistent with the Court's analysis in certifying the class of UL3 and UL4 policy owners.

### 2.    The Settlement Class meets the requirements of Rule 23(b)(3).

The Court's analysis and resulting conclusion that Rule 23(b)(3)'s predominance and superiority requirements were satisfied as to the UL3 and UL4 policy owners (Doc. 89 at 26-34) applies to the UL1 and UL2 policy owners as well because, as explained above, these policies contain the same COI Rates provision and USAA Life performed under these policies the same way it performed under the UL3 and UL4. In addition, the Court's conclusion that USAA Life's statute of limitations defense does not defeat predominance (Doc. 89 at 30-33) applies equally to UL1 and UL2 policy owners as well because, like the UL3 and UL4 policy owners, there is no indication USAA Life disclosed that it was including non-mortality related factors in its determination of COI Rates for these policies either. *See* Doc. 55-1 at 29-30. Furthermore, the Court's conclusion that there are no problems related to managing the case as a class action for purposes of trial (Doc. 89 at 34) undoubtedly applies where the Parties' proposed Settlement eliminates the need for a trial. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ.

Proc. 23(b)(3)(D), for the proposal is that there be no trial."). Thus, the Settlement Class satisfies Rule 23(b)(3).

### 3.    Plaintiff no longer seeks certification under Rule 23(b)(2).

Under the Settlement, USAA Life does not admit that Plaintiff's interpretation of the Class Policies is correct, and the Settlement provides no forward-looking relief. Therefore, while the Court previously certified Plaintiff's claim for declaratory and injunctive relief under Rule 23(b)(2), under the Settlement, the Settlement Class has forgone obtaining declaratory or injunctive relief in exchange for the excellent and certain result described above that will be provided without the delay and risk associated with continued litigation. Therefore, the Court need not consider whether certification of the Settlement Class under Rule 23(b)(2) is appropriate.

\*    \*    \*

Therefore, because the proposed Settlement Class satisfies the requirements for class certification, the Court should conclude that it will "likely be able to . . . certify the class for purposes of judgment" on the Settlement, and therefore that issuing notice to the Settlement Class is justified.

## VII.    THE COURT SHOULD APPOINT PLAINTIFF'S COUNSEL AS INTERIM CLASS COUNSEL.

When the Court certified the class for trial, the Court found that the law firms of Stueve Siegel Hanson, Miller Schirger, and Girard Sharp, were experienced and adequate to represent the class. Doc. 89 at 26. Because Plaintiff now seeks to certify an amended class for purposes of the Settlement, Plaintiff requests that these counsel be appointed as interim Class Counsel pursuant to Rule 23(g)(3) pending certification of the Settlement Class at Final Approval, for purposes of the dissemination of notice to the Settlement Class.

## VIII.    THE NOTICE SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS.

Under Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a [settlement] proposal." Likewise, in directing notice "to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)--the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(c)(2)(B).

"There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements." *ODonnell*, 2019 WL 4224040, at *26 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)). "Instead, 'a settlement notice need only satisfy the 'broad reasonableness standards imposed by due process.'" *Id.* (quoting *In re Katrina*, 628 F.3d at 197 (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999))). "Due process is satisfied if the notice provides class members with the 'information reasonably necessary for them to make a decision whether to object to the settlement.'" *Id.* (quoting *In re Katrina*, 628 F.3d at 197); *see also* American Law Institute, Principles of the Law of Aggregate Litigation § 3.04(a) (2010) ("The purpose of a notice of a proposed class settlement is to set forth the major contours of the proposal and to inform class members of their right to attend the fairness hearing and to lodge written objections by a prescribed date should they so desire.").

The *Manual for Complex Litigation* states that courts should evaluate whether the proposed notice:

(1) describe[s] the essential terms of the proposed settlement;

(2) disclose[s] any special benefits provided to the class representatives;

(3) provide[s] information regarding attorneys' fees . . . ;

(4) indicate[s] the time and place of the hearing to consider approval of the settlement, and the method for objecting to (or, if permitted, for opting out of) the settlement;

(5) explain[s] the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set[s] out those variations; and

(6) prominently display[s] the address and phone number of class counsel and the procedure for making inquiries.

*Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 352 (S.D. Miss. 2003), *aff'd sub nom. Smith v. Crystian*, 91 F. App'x 952 (5th Cir. 2004) (quoting Manual for Complex Litigation § 30.212 (3d ed. 1995)).

The proposed Notice (Exhibit A to the Settlement Agreement) readily meets these requirements, and the notice program, using direct mail delivery, constitutes the best practicable notice under the circumstances of this case. *See* Ex. 4, Simmons Decl., ¶¶ 12-13.[24] The Notice uses "plain English" to inform Settlement Class Members of, among other things, the nature of the class claims, the essential terms of the Settlement, the date, time and place of the Fairness Hearing, how to object or opt-out of the Settlement, and the binding effect of the Settlement on Settlement Class Members. The Notice also contains information regarding Class Counsel's forthcoming request for fees and expenses, and the proposed service award to Mr. Spegele. Thus, the Notice satisfies the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), informs Settlement Class Members of the terms of the proposed Settlement and their available options, is the best notice that is practicable under the circumstances, and should be approved by the Court.

---

[24] In addition, the Settlement Administrator will establish, maintain, and update a Settlement Website to provide relevant information regarding the Settlement to Settlement Class Members. Agreement, ¶¶ 1.33, 4.6.

## IX.   THE COURT SHOULD APPOINT ANALYTICS CONSULTING LLC AS SETTLEMENT ADMINISTRATOR.

Plaintiffs also request that the Court appoint Analytics Consulting LLC to serve as Settlement Administrator. Analytics Consulting LLC is well-versed in administering class action settlements, including in the cost of insurance litigation context (*see generally* Simmons Decl.), and is willing, able, and prepared to fulfill the role of Settlement Administrator in this case.

## X.   PROPOSED TIMELINE OF EVENTS

In connection with its determination on whether it is likely to approve the Settlement, the Court should set a Fairness Hearing date; dates for notice; deadlines for objecting or opting-out of the Settlement, and a schedule for further court submissions, among other items. The Parties propose the schedule set forth in Appendix A hereto, which is keyed off of the date of the order permitting the issuance of notice.

### <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the Proposed Order at Exhibit C to the Agreement permitting issuance of notice of the proposed Settlement, appointing the undersigned counsel as interim Class Counsel of the proposed Settlement Class, directing dissemination of the Notice, appointing Analytics Consulting LLC as Settlement Administrator, and setting a Fairness Hearing for the purpose of deciding whether to grant final approval of the Settlement.

Date: April 9, 2021

Respectfully submitted,

By: /s/ *Norman E. Siegel*
Norman E. Siegel (pro hac vice)
Ethan M. Lange (State Bar No. 24064150)
David A. Hickey (pro hac vice)
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
*siegel@stuevesiegel.com*
*lange@stuevesiegel.com*
*hickey@stuevesiegel.com*

John J. Schirger (pro hac vice)
Matthew W. Lytle (pro hac vice)
Joseph M. Feierabend (pro hac vice)
MILLER SCHIRGER, LLC
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
Telephone: (816) 561-6500
Facsimile: (816) 561-6501
*jschirger@millerschirger.com*
*mlytle@millerschirger.com*
*jfeierabend@millerschirger.com*

Daniel C. Girard (pro hac vice)
GIRARD SHARP LLP
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
*dgirard@girardsharp.com*

Larry R. Veselka
State Bar No. 20555400
SMYSER KAPLAN & VESELKA, L.L.P.
700 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (731) 221-2325
Facsimile: (713) 221-2320
*lveselka@skv.com*

*Counsel for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 9, 2021, a copy of the foregoing motion was sent via CM/ECF to all counsel of record.


<em>/s/ Norman E. Siegel</em>

**APPENDIX A**

| EVENT | TIMING |
|---|---|
| Deadline for Settlement Administrator to disseminate CAFA notices | [10 days from filing of motion to issue notice] |
| Deadline for USAA Life to provide Notice List to Settlement Administrator | [14 days after order permitting issuance of Class Notice] |
| Deadline for the Settlement Administrator to mail Court-approved Notice to Settlement Class ("Notice Date") | [45 days after order permitting issuance of Class Notice] |
| Deadline to file Class Counsel's motion for attorneys' fees, costs, expenses and service award | [14 days after Notice Date] |
| Deadline for Class Counsel to file motion for final approval of Settlement and motion for Class Counsel's Fees and Expenses and Plaintiff's Service Award | [14 days after Notice Date] |
| Objection deadline | [35 days after Notice Date] |
| Opt-out deadline | [35 days after Notice Date] |
| Deadline for Class Counsel to file with the Court all objections served on the Settlement Administrator | [5 days after Objection deadline] |
| Deadline for responses to any timely objections | Anytime prior to Fairness Hearing |
| Fairness Hearing | [No earlier than 90 days after CAFA notices disseminated] |